David R. Marriott (SBN 2682565)
Noah Joshua Phillips (*pro hac vice*)
Vanessa A. Lavely (*pro hac vice*)
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

Christopher C. Wheeler (SBN 224872)
**FARELLA BRAUN + MARTEL LLP**
One Bush Street, Suite 900
San Francisco, California 94104
Telephone:  (415) 954-4979
Facsimile:  (415) 954-4480

*Counsel for Defendant Tesla, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| VIRGINIA M. LAMBRIX, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>               Plaintiffs,<br><br>   v.<br><br>TESLA, INC.,<br>              Defendant. | Case No. 3:23-cv-1145-TLT (Lead Case)<br>Case No. 3:23-cv-1496-TLT<br>Case No. 3:23-cv-1543-TLT<br>Case No. 3:23-cv-2035-TLT<br>Case No. 3:23-cv-2352-TLT<br><br>Judge:       Honorable Trina L. Thompson<br>Hearing Date:  September 5, 2023<br>Hearing Time:  2:00 p.m.<br><br>**DEFENDANT TESLA, INC.'S MOTION TO (1) COMPEL ARBITRATION AND STAY PROCEEDINGS OR (2) DISMISS** |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

NOTICE OF MOTION AND MOTION TO
(1) COMPEL ARBITRATION AND STAY PROCEEDINGS OR (2) DISMISS ........................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 3

PRELIMINARY STATEMENT ................................................................................................... 3

STATEMENT OF RELEVANT FACTS ...................................................................................... 4

ARGUMENT ................................................................................................................................ 8

    I.      Because the Arbitration Plaintiffs Agreed To Delegate Arbitrability to
           Arbitrators, the Court Should Compel Arbitration and Stay the Proceedings. ........ 8

    II.     Alternatively, Because the Arbitration Plaintiffs' Claims Are Within the
           Scope of Their Arbitration Clauses, the Court Should Dismiss. .......................... 10

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bagley v. Mt. Bachelor, Inc.*,
  340 P.3d 27 (Or. 2014) ...................................................................................................9

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) ........................................................................................10

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ......................................................................................10

*Cordas v. Uber Techs., Inc*,
  228 F. Supp. 3d 985 (N.D. Cal. 2017) ............................................................................9

*Forrest v. Spizzirri*,
  62 F.4th 1201 (9th Cir. 2023) .......................................................................................12

*Gravillis v. Coldwell Banker Residential Brokerage Co.*,
  143 Cal. App. 4th 761 (2006) .........................................................................................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019).....................................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..........................................................................................................10

*Ohring v. UniSea, Inc.*,
  No. 21-35591, 2022 WL 1599127 (9th Cir. May 20, 2022)..........................................10

*Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*,
  869 P.2d 369 (Or. 1994) ..................................................................................................9

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*,
  497 F. App'x 740 (9th Cir. 2012) ...........................................................................8, 10, 11

**Statutes & Rules**

Cal. Civ. Code § 1550.............................................................................................................9

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ......................................................................2

1

2

**NOTICE OF MOTION AND MOTION TO**

**(1) COMPEL ARBITRATION AND STAY PROCEEDINGS OR (2) DISMISS**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

PLEASE TAKE NOTICE THAT, on September 5, 2023 at 2:00 pm, or as soon thereafter as the matter may be heard, in Courtroom 9 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, before the Hon. Trina L. Thompson, Defendant Tesla, Inc. ("Tesla") will, and hereby does, move the Court to (1) stay the proceedings and compel arbitration with respect to the claims for relief in the Consolidated Amended Class Action Complaint ("Complaint" or "CAC") filed on July 17, 2023 by Plaintiffs Danielle Thys, Cary Phillips, and Levi Stoffal (together, "Arbitration Plaintiffs"); and alternatively, to (2) dismiss those claims. This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities below; the accompanying Declarations of Jasjit Ahluwalia ("Ahluwalia Declaration" or "Ahluwalia Decl."), Minu Sinha ("Sinha Declaration" or "Sinha Decl."), and Adrian Castaneda ("Castaneda Declaration" or "Castaneda Decl"); Plaintiff Thys's Retail Installment Sale Contract ("Thys Agreement"), Plaintiff Phillips's Motor Vehicle Order Agreement ("Phillips Agreement"), Plaintiff Stoffal's Motor Vehicle Order Agreement ("Stoffal Order Agreement"), and Plaintiff Stoffal's Lease Agreement ("Stoffal Lease Agreement"), which are provided as Exhibits to the Ahluwalia Declaration (together, "Arbitration Plaintiffs' Agreements"); the Complaint; all other documents on file in this case; all other matters of which the Court may take judicial notice; any oral argument of counsel; and any other matter the Court properly may consider.

21

The issues to be decided on this Motion are:

22

23

24

1.  Whether the Court should stay the proceedings and compel arbitration of the Arbitration Plaintiffs' claims because the Arbitration Plaintiffs agreed to delegate analysis of the scope of the arbitration provisions within the Arbitration Plaintiffs' Agreements to arbitrators.

25

26

27

2.  Whether, in the alternative, the Court should dismiss the Arbitration Plaintiffs' claims because those claims fall within the scope of the arbitration provisions in the Arbitration Plaintiffs' Agreements.

28

The answers to these questions are both yes. Pursuant to Sections 2, 3, and 4 of the Federal Arbitration Act ("FAA"), Tesla respectfully seeks an order that (1) stays the proceedings and compels arbitration with respect to the Arbitration Plaintiffs' claims for relief, or, in the alternative, (2) dismisses those claims.

DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION OR DISMISS
Case No. 3:23-CV-1145-TLT

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### PRELIMINARY STATEMENT

3

4

5

6

7

8

9

10

When purchasing or leasing their Tesla vehicles, the Arbitration Plaintiffs entered agreements to arbitrate disputes with Tesla. In particular, the Arbitration Plaintiffs agreed that arbitrators, not courts, should resolve any disputes about the scope or validity of the arbitration provisions in the Arbitration Plaintiffs' Agreements. That ends the analysis. The Court need not analyze whether the Arbitration Plaintiffs' claims come within the scope of their arbitration provisions, assess the validity of the Arbitration Plaintiffs' Agreements, or make any other inquiry. The Court should compel arbitration of the Arbitration Plaintiffs' claims and stay proceedings with respect to those claims.

11

12

13

14

15

16

17

18

19

20

21

22

If, however, the Court reaches the question of whether the Arbitration Plaintiffs' claims fall within the scope of the arbitration provisions in the Arbitration Plaintiffs' Agreements, the answer is clearly yes. Plaintiff Thys agreed to arbitrate "[a]ny claim or dispute" with Tesla that "arises out of or relates to" the "purchase or condition of [her] vehicle, this contract or any resulting transaction or relationship." Plaintiffs Phillips and Stoffal agreed to arbitrate "any dispute arising out of or relating to any aspect of the relationship between [them] and Tesla." In all of their claims, the Arbitration Plaintiffs assert that they paid too much for parts and services that repaired the condition of the Tesla vehicles that they purchased or leased from Tesla through the Arbitration Plaintiffs' Agreements. Thus, their claims fall squarely within the broad scope of their respective arbitration provisions. Therefore, if the Court reaches the issue of arbitrability (and it need not), it should find that the arbitration provisions apply to the Arbitration Plaintiffs' claims. In that scenario, the Court should dismiss the Arbitration Plaintiffs' claims.[1]

23

24

25

26

27

28

---

[1] In the alternative, Tesla is concurrently filing a Motion to Dismiss all Plaintiffs' claims (including the Arbitration Plaintiffs' claims) pursuant to Federal Rules of Civil Procedure 12(b)(6) and (1).Tesla respectfully submits that the Court should first resolve this Motion before the Motion to Dismiss. If the Court grants this Motion, it should stay the case as to the Arbitration Plaintiffs and need not resolve the Motion to Dismiss as to those Plaintiffs.

DEFENDANT TESLA, INC.'S MOTION TO COMPEL ARBITRATION OR DISMISS
Case No. 3:23-CV-1145-TLT

### STATEMENT OF RELEVANT FACTS

**Danielle Thys**

Plaintiff Thys entered into the Thys Agreement with Tesla to purchase her vehicle on January 5, 2019. (Ahluwalia Decl. ¶ 6.) Under a section entitled "Arbitration Provision," the Thys Agreement states that the parties agree to arbitration in bolded, capitalized font: "**EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL**." (*Id.* ¶ 7.) On the first page of the Thys Agreement, there is an "Agreement to Arbitrate" section that states: "By signing the below, you agree that, pursuant to the Arbitration Provision . . . of this contact, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action." (*Id.* ¶ 13.) Plaintiff Thys signed that section. (*Id.*)

Additional language in the Arbitration Provision reinforces that Tesla may elect to arbitrate claims brought by Plaintiff Thys and also delegates any dispute about the scope and validity of the Arbitration Provision to the arbitrator:

> Any claim or dispute, whether in contract, tort, statute or otherwise (*including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute*), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. (*Id.* ¶ 8 (emphasis added).)

Plaintiff Thys's signature appears on every page of the Thys Agreement, including on the pages that set forth the Arbitration Provision, and her full signature appears on page 6 under the bolded text stating "**YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE THAT YOU HAVE READ ALL PAGES OF THIS CONTRACT, INCLUDING THE ARBITRATION PROVISION ON PAGE 7 OF THIS CONTRACT, BEFORE SIGNING BELOW**." (*Id.* ¶ 14.)

**Cary Phillips**

Plaintiff Cary Phillips entered into the Phillips Agreement with Tesla for a Model Y vehicle on June 7, 2022. (Ahluwalia Decl. ¶ 15.) In order for Plaintiff Phillips to complete the purchase of his Model Y vehicle, he had to click "Place Order" upon accessing the Order Payment screen on his desktop or mobile device. (Sinha Decl. ¶¶ 4, 5, 9.) Before completing his order, Plaintiff Phillips had an opportunity to review the language and agreements that accompanied the "Place Order" button. The accompanying language states "[b]y placing this order, I agree to the Model Y Order Agreement, Terms of Use, and Privacy Notice." (*Id.* ¶ 5.) The text "Model Y Order Agreement" is a direct hyperlink to an online copy of the referenced agreement, as indicated by bolded and colored text. (*Id.*) The hyperlinked agreements include a provision entitled "Agreement to Arbitrate." This provision authorizes the arbitration of "any dispute between you and Tesla Inc. and its affiliates" in the following terms:

> If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com. If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products. (Ahluwalia Decl. ¶ 16.)

This same provision contains information on how Plaintiff Phillips could have opted out of this Agreement to Arbitrate. (Castaneda Decl. ¶ 5.) The Agreement to Arbitrate provides that "[y]ou may opt out of arbitration within 30 days after signing this Agreement by sending a letter to [Tesla]" and that "[i]f you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract." (*Id.*) Plaintiff Phillips did not mail an opt-out request letter. (*Id.* ¶ 6.)

**Levi Stoffal**

Plaintiff Levi Stoffal entered into the Stoffal Order Agreement for a Model 3 vehicle on January 30, 2021, and then signed the Stoffal Lease Agreement with Tesla that was entered into as of delivery on March 24, 2021. (Ahluwalia Decl. ¶ 18.) Because the Stoffal Order Agreement predates the Stoffal Lease Agreement, and because the Stoffal Lease Agreement says that its arbitration provision "overrides any different arbitration agreement between us," the Stoffal Lease Agreement provides the governing arbitration provision here. (Ahluwalia Decl. Ex. D at 3.) (In any event, the arbitration provisions in the Stoffal Order Agreement and the Stoffal Lease Agreement are the same.) (*Id.* ¶¶ 19-20.)

The Stoffal Lease Agreement's arbitration provision is entitled "Agreement to Arbitrate." This section authorizes the arbitration of "any dispute between you and Tesla Inc. and its affiliates" in the following terms:

> If you have a concern or dispute, please send a written notice describing it and your desired resolution to resolutions@tesla.com. If not resolved within 60 days, you agree that any dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration administered by the American Arbitration Association (AAA) under its Consumer Arbitration Rules. This includes claims arising before this Agreement, such as claims related to statements about our products. (*Id.* ¶ 20.)

This same provision contains information on how Plaintiff Stoffal could opt out of this "Agreement to Arbitrate." (Castaneda Decl. at 5.) The Agreement to Arbitrate Provision provides that "[y]ou may opt out of arbitration within 30 days after signing this Agreement by sending a letter to [Tesla]" and that "[i]f you do not opt out, this agreement to arbitrate overrides any different arbitration agreement between us, including any arbitration agreement in a lease or finance contract." (*Id.*) Plaintiff Stoffal did not mail an opt-out request letter. (*Id.* ¶ 6.)

1

**Arbitration Plaintiffs' Claims**

2

The Arbitration Plaintiffs' claims all fall within their respective arbitration provisions. All

3

of those claims assert that Plaintiffs "have been forced to pay supracompetitve prices and suffer

4

exorbitant wait times" in order to "to maintain and repair" the condition of their Tesla vehicles.

5

(CAC ¶¶ 1, 7.) More specifically:

6

- Count I (Sherman Act § 2) alleges that Tesla monopolized the putative "Tesla

7

Repair Services market" and that this alleged monopolization caused Plaintiffs to

8

"pay[] supracompetitive prices for Tesla Repair Services." (*Id.* ¶¶ 197-98.)

9

- Count II (Sherman Act § 2) alleges that Tesla attempted to monopolize the

10

putative "Tesla Repair Services market," and that this alleged attempted

11

monopolization caused Plaintiffs to "pay[] supracompetitive prices for Tesla

12

Repair Services." (*Id.* ¶¶ 202-03.)

13

- Count III (Sherman Act § 2) alleges that Tesla monopolized the putative "Tesla-

14

Compatible Parts market," and that this alleged monopolization caused Plaintiffs

15

to "pay[] supracompetitive prices for Tesla-Compatible Parts." (*Id.* ¶¶ 208-209.)

16

- Count IV (Sherman Act § 2) alleges that Tesla attempted to monopolize the

17

putative "Tesla-Compatible Parts market," and that this alleged attempted

18

monopolization caused Plaintiffs to "pay[] supracompetitive prices for Tesla-

19

Compatible Parts." (*Id.* ¶¶ 213-14.)

20

- Count V (Sherman Act § 1) alleges that Tesla "leverage[d] its market power" in

21

various putative markets to "coerce" Plaintiffs "into purchasing Tesla Repair

22

Services and Tesla-Compatible Parts . . . only from or through Tesla," which

23

allegedly caused Plaintiffs to "pay[] supracompetitive prices for Tesla Repair

24

Services and Tesla-Compatible Parts." (*Id.* ¶¶ 220-22, 226.)

25

- Count VI (California Cartwright Act § 16720) alleges that Tesla "leverages its

26

market power" in three putative markets to "coerce" Plaintiffs into purchasing

27

28

"Tesla Repair Services and Tesla-Compatible Parts . . . only from or through Tesla and its authorized collision centers." (*Id.* ¶¶ 231-33, 237.)

- Count VII (California Cartwright Act § 16720) alleges that Tesla "has market power" in both the putative "Tesla Repair Services" market and "Tesla-Compatible Part" market and "forecloses competition" in those putative markets, causing Plaintiffs to "pay[] supracompetitive prices for Tesla-Compatible Parts." (*Id.* ¶¶ 245-46.)

- Count VIII (California Unfair Competition Law § 17200) alleges that as a result of Tesla's alleged violations of the Sherman Act and Cartwright Act, and alleged "unfair" conduct, Plaintiffs were "forced to pay supra-competitive prices for Tesla Repair Services and Tesla-Compatible Parts." (*Id.* ¶¶ 250, 257-58.)

## **ARGUMENT**

### I.  **Because the Arbitration Plaintiffs Agreed To Delegate Arbitrability to Arbitrators, the Court Should Compel Arbitration and Stay the Proceedings.**

Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). If there is "clear and unmistakable evidence" that the parties have "delegate[d] threshold arbitrability questions to the arbitrator," then those "gateway" questions—"such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"—must not be addressed by the court, and must instead be delegated to the arbitrator. *Id.* at 529-30 (quotation marks omitted). "In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* at 529. So where the party moving to compel arbitration cites an agreement to delegate, the court's inquiry is narrow. The court should simply confirm that there is clear evidence that the parties agreed to arbitrate arbitrability under the "state-law contract principles" of the state chosen by the parties' agreement. *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 741 (9th Cir. 2012).

- 8 -

California law governs the inquiry as to Plaintiffs Phillips and Thys, and Oregon law governs the inquiry as to Plaintiff Stoffal. (Ahluwalia Decl. Ex. A at 5; Ex. B at 3; Ex. C at 4; CAC ¶¶ 15, 17-18.) Both California and Oregon provide straightforward principles of contract formation. If the parties were capable of contracting, consented, had a lawful object in their agreement, and agreed for consideration, they formed a valid agreement. Cal. Civ. Code § 1550; *Bagley v. Mt. Bachelor, Inc.*, 340 P.3d 27, 33 (Or. 2014). Once an agreement is formed, both California and Oregon provide that it must then be "liberally" construed to *favor arbitration*. *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 771 (2006) (explaining that California has a "strong public policy in favor of arbitration" that requires arbitration agreements in particular to be "liberally interpreted"); *Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 869 P.2d 369, 372 (Or. 1994) ("We are bound to construe the arbitration agreement liberally to enhance arbitrability.").

Applying these principles, the Arbitration Plaintiffs clearly entered their respective agreements. Plaintiff Thys indicated her assent to the Thys Agreement, and Plaintiff Stoffal indicated his assent to the Stoffal Lease Agreement, through signature. (Ahluwalia Decl. ¶¶ 6, 19.) Plaintiff Phillips indicated his assent to the Phillips Agreement by clicking "Place Order" next to language that states: "By placing this order, I agree to the . . . Order Agreement." (Sinha Decl. ¶¶ 5, 9.) *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990-91 (N.D. Cal. 2017) (holding that a consumer assented to arbitration by clicking "DONE" next to a notice that "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy").

It is also clear that the Arbitration Plaintiffs agreed to arbitrate arbitrability. The Thys Agreement says so on its face: "Any claim or dispute . . . including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute . . . between you and us . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action." (Ahluwalia Decl. ¶ 8.) The Phillips Agreement and Stoffal Lease Agreement state that "*any* dispute arising out of or relating to any aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration

administered by the American Arbitration Association (AAA) *under its Consumer Arbitration Rules*." (Ahluwalia Decl. ¶¶ 16, 20 (emphasis added).) The Ninth Circuit, like every other circuit, has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases for the proposition that "every" circuit that has addressed this issue "has found that the incorporation of the AAA Rules" provides "'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability'").

Because the Arbitration Plaintiffs entered agreements to arbitrate arbitrability, the Court should compel arbitration and stay proceedings with respect to their claims. *Ohring v. UniSea, Inc.*, No. 21-35591, 2022 WL 1599127, at *1 (9th Cir. May 20, 2022) (enforcing agreement to arbitrate arbitrability).

## II.  Alternatively, Because the Arbitration Plaintiffs' Claims Are Within the Scope of Their Arbitration Clauses, the Court Should Dismiss.

If the Court reaches the issue of whether the Arbitration Plaintiffs' claims are arbitrable, the plain language of the Arbitration Plaintiffs' Agreements compels the conclusion that those claims must be arbitrated. The Ninth Circuit has provided clear guidance for this interpretive task:

> Where a contract contains an arbitration clause, courts apply a presumption in favor of arbitrability as to particular grievances, and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable. That presumption applies with particular force where, as here, the arbitration clause is phrased in broad and general terms. In such circumstances, an order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*Wynn*, 497 F. App'x at 742-43 (citations and punctuation omitted); *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

Here, the arbitration provisions in the Arbitration Plaintiffs' Agreements are broadly phrased. The language in the Thys Agreement is as broad as can be: "**EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**" (Ahluwalia Decl. ¶ 7.) The additional language in the Thys Agreement is also broad: "*Any* claim or dispute . . . between you and us . . . which arises out of or relates to your . . . purchase or condition of this vehicle, this contract or *any* resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral binding arbitration and not by a court action." (Ahluwalia Decl. ¶ 8 (emphasis added).) And the language in the Phillips Agreement and Stoffal Lease Agreement is also broad: "*any* dispute arising out of or relating to *any* aspect of the relationship between you and Tesla will not be decided by a judge or jury but instead by a single arbitrator in an arbitration." (Ahluwalia Decl. ¶¶ 16, 20 (emphasis added).) All of the Arbitration Plaintiffs' claims assert that the Arbitration Plaintiffs paid too much and waited too long for "Tesla Repair Services" and "Tesla-Compatible Parts" to address the condition of the Tesla vehicles that they purchased from Tesla through the Arbitration Plaintiffs' Agreements. (CAC ¶¶ 8, 183, 198, 203, 209, 214, 226, 237, 246, 258.) As such, the Arbitration Plaintiffs' claims arise out of and relate to their "relationships" with Tesla, as well as the "condition" of their Tesla vehicles and transactions "resulting" from that condition. (Ahluwalia Decl. ¶¶ 8, 16, 19, 20.) If there could be any doubt about this, that doubt must be resolved in favor of arbitration. *Wynn*, 497 F. App'x at 742-43. It cannot be said—much less said "with *positive assurance*"—"that the arbitration clause[s] [are] not susceptible of an interpretation that covers the asserted dispute." *Id.* at 743 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

If the Court reaches the issue of arbitrability and determines with respect to each Arbitration Plaintiff "that all of the claims raised in the action are subject to arbitration," then a

stay is no longer the sole required remedy: the Court may stay or dismiss. *Forrest v. Spizzirri*, 62 F.4th 1201, 1204-05 (9th Cir. 2023) (quoting *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014)). In that event, the Court should dismiss the Arbitration Plaintiffs' claims.

## **CONCLUSION**

The Arbitration Plaintiffs agreed to arbitrate arbitrability. Thus, the Court should compel arbitration and stay proceedings with respect to their claims. If the Court reaches the question of whether the Arbitration Plaintiffs' claims fall within the scope of the arbitration clauses to which they agreed, the answer is clear: they do. In that event, the Court should dismiss the claims.

Dated: July 31, 2023

Respectfully Submitted,

By:  */s/ Vanessa A. Lavely*
David R. Marriott (SBN 2682565)
Noah Joshua Phillips (*pro hac vice*)
Vanessa A. Lavely (*pro hac vice*)
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Counsel for Defendant Tesla, Inc.*

Christopher C. Wheeler (SBN 224872)
**FARELLA BRAUN + MARTEL LLP**
One Bush Street, Suite 900
San Francisco, California 94104
Telephone:  (415) 954-4979
Facsimile:  (415) 954-4480

*Counsel for Defendant Tesla, Inc.*