**FREED KANNER LONDON & MILLEN LLC**
Matthew W. Ruan (SBN 264409)
Douglas A. Millen (appearing pro hac vice)
Michael E. Moskovitz (appearing pro hac vice)
Nia-Imara Atu Barberousse Binns (appearing pro hac vice)
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com
nbinns@fklmlaw.com

**SAVERI & SAVERI, INC.**
R. Alexander Saveri (SBN 173102)
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

*Attorneys for Plaintiffs and the Proposed Class*
[Additional counsel listed on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| VIRGINIA M. LAMBRIX, *et al.*, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>TESLA, INC.,<br><br>            Defendant. | Case No. 3:23-cv-1145-TLT (Lead Case)<br>Case No. 3:23-cv-1496-TLT<br>Case No. 3:23-cv-1543-TLT<br>Case No. 3:23-cv-2035-TLT<br>Case No. 3:23-cv-2352-TLT<br><br>**PLAINTIFFS CARY PHILLIPS, LEVI STOFFAL, AND DANIELLE THYS' OPPOSITION TO DEFENDANT'S MOTION TO (1) COMPEL ARBITRATION AND (2) DISMISS** |

# TABLE OF CONTENTS

Page

INTRODUCTION AND STATEMENT OF ISSUES ................................................1

BACKGROUND ................................................................................................4

LEGAL STANDARD ........................................................................................6

ARGUMENT ...................................................................................................6

I.   Tesla Fails to Establish the Existence of an Enforceable Arbitration Agreement Related to the MTC Plaintiffs' Purchases of Tesla Repair Services and Tesla-Compatible Parts. ...................................................................................6

     A.   No Matter How Broadly Worded, An Arbitration Agreement Is Legally Incapable of Encompassing Claims Arising Out of a Separate, Independent Transaction. ......................................................................................6

     B.   Tesla Fails to Show Any Valid, Enforceable Arbitration Agreement With Plaintiff Phillips Whatsoever (Let Alone One Arising Out of the Transactions at Issue). ........................................................................9

     C.   Under the *McGill* Rule, Plaintiffs' Claims Seeking Public Injunctive Relief Are Not Arbitrable. ..................................................................10

II.  Even if an Agreement to Arbitrate Did Exist, Tesla Fails to Meet Its Burden of Establishing Plaintiffs "Clearly and Unmistakably" Delegated the Scope of Arbitrability to an Arbitrator. .......................................................................12

     A.   Plaintiffs Phillips and Stoffal. ..........................................................13

     B.   Plaintiff Thys. ...................................................................................14

III. No Matter How Broadly Worded, the Antitrust Claims at Issue Do Not—and Legally Cannot—Fall Within the Scope of an Arbitration Clause From an Earlier, Independent Transaction. ......................................................................16

CONCLUSION ..............................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ajamian v. CantorCO2e, L.P.*,
    203 Cal. App. 4th 771 (2012) ................................................................. 15

*AT-&-T Techs. v. Commc'ns Workers*,
    475 U.S. 643 (1986) ............................................................................ 12

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ........................................................ 2, 9, 10

*Blair v. Rent-a-Car, Inc.*,
    928 F.3d 819 (9th Cir. 2019) ............................................................... 11

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) ........................................................... 3, 13

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ..................................................... 3, 13, 14

*In re: Deere & Company Repair Services Antitrust Litig.*,
    Case No. 3:22-cv-50188 (N.D. Ill.) ......................................................... 1

*Dennison v. Rosland Capital LLC*,
    47 Cal.App.5th at 204, 209 (2020) ........................................................ 15

*Eiess v. USAA Fed. Sav. Bank*,
    404 F. Supp. 3d 1240 (N.D. Cal. 2019) ................................................ 14

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995) .............................................................................. 6

*Forrest v. Spizzirri*,
    62 F.4th 1201 (9th Cir. 2023) ............................................................... 18

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010) .............................................................................. 6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .......................................................................... 6, 7

*Ingalls v. Spotify USA, Inc.*,
    2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) ...................................... 14

*Jackson v. Amazon.com, Inc.*,
    65 F.4th 1093 (9th Cir. 2023) ............................................................... 16

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.*,
    847 F. Supp. 2d 1253 (S.D. Cal. 2012) ........................................................... 16, 17

*Johnmohammadi v. Bloomingdale's, Inc.*,
    755 F.3d 1072 (9th Cir. 2014) ........................................................................ 18

*Johnson v. Walmart*,
    57 F.4th 677 (9th Cir. 2023) ................................................................... *passim*

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. 2014) ............................................................................ 6

*Lee v. Tesla, Inc.*,
    No. SACV2000570JVSKESX, 2020 WL 10573281 (C.D. Cal. Oct. 1, 2020) ..................... 11

*Conservatorship of Link*,
    158 Cal. App. 3d 138 (1984) ........................................................................... 10

*MacClelland v. Cellco P'ship*,
    609 F. Supp. 3d 1024 (N.D. Cal. 2022) ............................................................. 14

*Magill v. Wells Fargo Bank*,
    N.A., No. 4:21-cv-01877-YGR, 2021 WL 6199649 (N.D. Cal. June 25, 2021) ................... 14

*McGill v. Citibank, N.A.*,
    2 Cal.5th 945 (2017) ........................................................................... *passim*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................................... 18

*Nager v. Tesla Motors, Inc.*,
    Case No. 19-2382, 2019 WL 4168808 (D. Kan. Sept. 3, 2019) ................................ 10

*Nguyen v. Tesla, Inc.*
    2020 WL 2114937 (C.D. Cal. Apr. 6, 2020) ....................................................... 12

*Norcia v. Samsung Telecomms. Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017) .......................................................................... 9

*Oracle Am., Inc. v. Myriad Group, A.G.*,
    724 F.3d 1069 (9th Cir. 2013) .................................................................... 12, 13

*Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*,
    862 F.3d 981 (9th Cir. 2017) ............................................................................ 6

*Revitch v. DirecTV, LLC*,
    No. 18-CV-01127-JCS, 2018 WL 4030550 (N.D. Cal. Aug. 23, 2018), *aff'd*,
    977 F.3d 713 (9th Cir. 2020) .......................................................................... 17

*Roman v. Jan-Pro Franchising Int'l, Inc.*,
    342 F.R.D. 274 (N.D. Cal. 2022) ........................................................................ 13

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ............................................................................... 16

*Smith v. Steinkamp*,
    318 F.3d 775 (7th Cir.2003) ............................................................................... 17

*Treinish v. iFit Inc.*,
    No. CV 22-4687-DMG (SKX), 2023 WL 2230431 (C.D. Cal. Feb. 2, 2023) ..................... 7, 9

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960) ........................................................................................ 18

*Vasquez v. Cebridge Telecom CA, LLC*,
    569 F. Supp. 3d 1016 (N.D. Cal. 2021), *appeal dismissed*, No. 21-17009, 2022
    WL 20033128 (9th Cir. Dec. 9, 2022) ................................................................. 11

*Veribi, LLC v. Compass Mining, Inc.*,
    No. 222-CV-04537M-EMFJPR, 2023 WL 375680 (C.D. Cal. Jan. 20, 2023) .................... 8, 9

*Wexler v. AT & T Corp.*,
    211 F. Supp. 3d 500 (E.D.N.Y. 2016) .................................................................. 17

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*,
    497 F. App'x 740 (9th Cir. 2012) ....................................................................... 18

**Statutes**

9 U.S.C. § 2 ...................................................................................................... 6

California Civil Code § 1654 ................................................................................ 15

**Other Authorities**

Local Rule 36-3(a) ............................................................................................ 18

## INTRODUCTION AND STATEMENT OF ISSUES

Electric vehicles ("EVs") are complex, durable goods requiring maintenance and repairs over their lifetimes. Sometimes, those repairs are minor and inexpensive; other times, Tesla charges you $22,500 to replace a battery pack.[1] As a result, consumers want and expect companies offering those parts and services to compete for their business. But when it comes to repair and maintenance services ("Tesla Repair Services") and replacement parts ("Tesla-Compatible Parts") for Tesla EVs, Tesla has managed to thwart such competition, leaving consumers with no choice but Tesla—and, for collision repairs, its limited network of authorized collision shops—for all their repair and maintenance needs. That is what this lawsuit is about.[2]

When Plaintiffs Phillips, Stoffal, and Thys (the "MTC Plaintiffs") agreed to purchase or lease their Tesla EVs, they did not agree to *also* purchase Tesla Repair Services and Tesla-Compatible Replacement Parts from Tesla. That's because (1) the purchase of an EV and (2) the purchase of parts and services to repair and maintain those EVs, are—*as a matter of law*—two separate transactions: independently negotiated and entered, each supported by their own mutual assent and consideration. Nonetheless, Tesla asks the Court to compel the MTC Plaintiffs to arbitrate their antitrust claims, which arise out of injuries they sustained when purchasing Tesla Repair Services and Tesla-Compatible Parts (in some instances, not even from Tesla but rather its Tesla-authorized collision centers), even though they never agreed to an arbitration clause in connection with those transactions. Rather, the arbitration clauses Tesla seeks to enforce were allegedly agreed to in an entirely separate transaction—*i.e.*, when the MTC Plaintiffs purchased/leased their EVs.

Accordingly, Tesla's Motion to (1) Compel Arbitration and Stay Proceedings or (2) Dismiss (ECF No. 75) ("Motion" or "MTC") fails and should be denied for at least five reasons.

---

[1] (*See* Consolidated Amended Class Action Complaint (ECF No. 63) ("CAC" or "Complaint") ¶ 138.)

[2] It is also what President Biden's Executive Order on Promoting Competition in the American Economy, (*see* CAC ¶¶ 86-87), the right-to-repair lawsuit against John Deere currently pending in the Northern District of Illinois, (*In re: Deere & Company Repair Services Antitrust Litig.*, Case No. 3:22-cv-50188, (N.D. Ill.)), and the U.S. Department of Justice Antitrust Division's Statement of Interest of the United States filed therein, (*id.*, ECF No. 120) are about.

First and foremost, the Ninth Circuit recently addressed this very issue. In *Johnson v. Walmart*, 57 F.4th 677, 683 (9th Cir. 2023) ("*Johnson*"), the Ninth Circuit held that a broadly worded arbitration provision, agreed to at the time the plaintiff purchased tires from Walmart, did not—and, more importantly, *could not* (*i.e.*, no matter what the scope)—apply to the plaintiff's subsequent purchase of tire-related services from Walmart because those were two separate, independent transactions *as a matter of law*. *Id*. In arriving at its decision, the court explicitly held that this was an issue of the <u>*existence*</u>, not <u>*scope*</u>, of a relevant and valid agreement to arbitrate; thus, no judicial presumption in favor of arbitration applied. *Id*. at 681. Tesla's Motion fails to even address, let alone attempt to distinguish, this directly on-point and controlling decision. Since *Johnson* precludes any possibility of even the existence of a valid, relevant arbitration provision whose scope or delegation of arbitrability could be determined, the Court's analysis should end there: since there is no agreement to arbitrate in the first place, it is impossible to find any claims within its scope or to delegate those decisions to an arbitrator.

*Second*, regarding Plaintiff Phillips, Tesla additionally fails to meet its burden of establishing, by a preponderance of the evidence, that he agreed to arbitrate any claims at all. Tesla did not produce an agreement signed by Plaintiff Phillips; instead, Tesla produced screenshots from its website that Tesla asserts are "substantially similar" to what Plaintiff Phillips likely *would* have seen when he ordered his Tesla EV *if* he placed that order on his desktop (which, coincidentally, Tesla acknowledges it has no idea if he did). That screenshot shows small text containing hyperlinks that Tesla claims, if clicked, open a document with an arbitration provision (but, once again, Tesla acknowledges it has no idea if Plaintiff Phillips actually did so). Even assuming for sake of argument that this in fact accurately describes the transaction by which Plaintiff Phillips ordered his EV, this showing falls far short of the "reasonably conspicuous notice" required to establish inquiry notice on a clickwrap agreement.[3]

*Third*, Tesla fails to account for the *McGill* Rule, which prohibits the MTC Plaintiffs'

---

[3] A "clickwrap agreement" is an agreement "in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Unfair Competition Law ("UCL") claims from being arbitrated because they seek public injunctive relief that would enjoin Tesla's anticompetitive practices and promote competition in the Tesla Repair Services and Tesla-Compatible Parts aftermarkets. Such injunctive relief would not just benefit the MTC Plaintiffs and the class members they seek to represent, but also the general public at large.

*Fourth*, even if the Court found that there was an agreement to arbitrate between Tesla and each of the MTC Plaintiffs that could hypothetically cover their claims in this case, Tesla's delegation of arbitrability argument fails to account for the numerous courts in this District[4] that have rejected the precise argument Tesla puts forward here—*i.e.*, that parties "clearly and unmistakably" elect to have arbitrators determine arbitrability whenever the arbitration provision incorporates the American Arbitration Association's ("AAA") Consumer Rules. Instead, Tesla relies on two cases that *undermine*, rather than support, its Motion: *Brennan* expressly limited its holding to arbitration agreements "between sophisticated parties"; and *Blanton* involved the AAA's National Rules for the Resolution of Employment Disputes, not the AAA Consumer Rules Tesla insists were incorporated into Plaintiffs Phillip's and Stoffal's supposed arbitration agreements."[5]

*Fifth*, Tesla's argument that—should the Court decide the scope of arbitrability, it must interpret the alleged arbitration clause broadly enough to encompass the MTC Plaintiffs' antitrust claims—again completely ignores the Ninth Circuit's on-point and controlling decision in *Johnson*. Moreover, even if the arbitration clauses the MTC Plaintiffs allegedly entered into when purchasing/leasing their EVs were valid, mutually agreed upon, and relevant (which they are not), the MTC Plaintiffs' antitrust claims clearly do not fall within the scope—no matter how broadly worded—of arbitration agreements allegedly entered into in connection with a separate, independent transaction from the ones underlying the MTC Plaintiffs' claims. Tesla's

---

[4] (*See* discussion § III, below.)

[5] *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020).

unreasonable interpretation not only flies in face of *Johnson*, but it also requires a literal reading of the phrase "any dispute" that: (a) if true, would render the provision unconscionably broad; and (b) has been repeatedly rejected by courts as inevitably leading to "absurd results" (*e.g.*, like the one Tesla is seeking here).

For these and the additional reasons discussed below, Tesla' Motion should be denied in its entirety.

## BACKGROUND[6]

Each of the MTC Plaintiffs purchased or leased an EV from Tesla. (CAC ¶¶ 15, 17-18.) At the time of that purchase/lease, none of them agreed to also buy Tesla Repair Services or Tesla-Compatible Parts from Tesla. Nonetheless, Tesla claims that in the course of negotiating and entering into those purchase or lease transactions for their Tesla EVs, each of the MTC Plaintiffs agreed to an arbitration clause that would cover any disputes arising out of all subsequent dealings not only with Tesla, but its affiliates and third parties. (MTC at 4:15-19, 5:11-17.) Plaintiff Thys purportedly signed a Retail Installment Sales Contract containing such a clause, (Ahluwalia Decl. ¶¶ 6-14, Ex. A);[7] Plaintiffs Phillips and Stoffal purportedly clicked on a button on a website or mobile application—Tesla does not know which—when ordering their Tesla EVs, which Tesla claims contained text underneath stating: "By placing this order, I agree to the Model Y Order Agreement, Terms of Use, and Privacy Notice.". (Sinha Decl. ¶¶ 8-10, Ex. A.)[8] The text for "Model Y Order Agreement" was, according to Tesla, a hyperlink that could have directed Plaintiffs Phillips and Stoffal to an auto-generated Motor Vehicle Order Agreement which, Tesla further asserts, would have contained an arbitration clause. (Ahluwalia Decl. ¶¶ 15-22.) Notably,

---

[6] This Background focuses on the facts most relevant to Tesla's Motion. For a fuller description of the MTC Plaintiffs' claims, the MTC Plaintiffs respectfully refer the Court to both the Complaint and Plaintiffs' Opposition to Defendant Tesla, Inc.'s Motion to Dismiss Consolidated Class Action Complaint (filed concurrently herewith).

[7] Declarations of Jasjit Ahluwalia In Support of Defendant Tesla, Inc.'s Motion to (1) Compel Arbitration and Stay Proceedings or (2) Dismiss Claims (ECF No. 75-1) ("Ahluwalia Decl.").

[8] Declaration of Minu Sinha In Support of Defendant Tesla, Inc.'s Motion (1) to Compel Arbitration and Stay Proceedings or (2) Dismiss the Claims (ECF No. 75-6) ("Sinha Decl.").

Tesla does not assert that Plaintiffs Phillips or Stoffal *actually* clicked on that hyperlink; thus, Tesla fails to establish that either of them ever *actually* saw the arbitration clauses Tesla is trying to enforce in this Motion.

At some later point, each of the MTC Plaintiffs—in a completely independent transaction requiring separate negotiation, separate mutual assent, separate consideration and, at least in some instances, involving separate parties—purchased Tesla Repair Services and Tesla-Compatible Parts from Tesla or one of its authorized collision centers. (CAC ¶¶ 3, 15, 17-18.) Tesla does not even attempt to argue, because it cannot, that any of the MTC Plaintiffs entered into an arbitration agreement with Tesla in connection with any of these subsequent Tesla Repair Services or Tesla-Compatible Parts transactions. Moreover, Tesla fails to provide any evidence—because there isn't any—suggesting that, in the course of those transactions, the MTC Plaintiffs' earlier EV-purchase/lease transactions and related contracts were relied upon, implicated, or relevant in any way.

On July 31, 2023, the MTC Plaintiffs (together with other named plaintiffs), filed the Complaint, which alleges that Tesla—through a variety of anticompetitive policies, acts, and restrictions—has leveraged its market power in the United States EV market to enhance and maintain its market power in the aftermarkets for Tesla Repair Services and Tesla-Compatible Parts for its EVs. (*Id*. ¶ 4.) As a result, the MTC Plaintiffs allege they were harmed when they purchased Tesla Repair Services and Tesla-Compatible Parts, as they were each forced to pay supracompetitive prices for those parts and services and suffered lengthy delays in receiving them. (*Id*. ¶ 7.)

In short: none of the Complaint's claims arise out of the MTC Plaintiffs' prior EV purchase/lease transactions, nor does the Complaint allege that the MTC Plaintiffs were harmed by such EV transactions. The MTC Plaintiffs' claims would be exactly the same, and the Complaint would look no different at all, if they had in fact purchased their EVs from CarMax or won them in a raffle. This case is *only* about antitrust injuries the MTC Plaintiffs sustained in connection with their purchases of Tesla Repair Services and Tesla-Compatible Parts. For these and other reasons discussed below, Tesla's Motion should be denied in its entirety.

**LEGAL STANDARD**

"The 'first principle' of a court's arbitration decision is that '[a]rbitration is strictly a matter of consent…and thus is a way to resolve disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.'" *Johnson*, 57 F.4th at 681 (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original)). Tesla, as the party seeking to compel arbitration, bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014).

Where the existence, rather than the scope, of an arbitration agreement is at issue, there is no presumption in favor of arbitrability. *Johnson*, 57 F.4th at 680-81; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.,* 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.") (*citing* 9 U.S.C. § 2).

If a court determines that a valid arbitration agreement exists, whether it applies to a given controversy is a "gateway" issue also reserved for the court, unless the parties "clearly and unmistakably" agreed to delegate the question to an arbitrator. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co*., 862 F.3d 981, 985 (9th Cir. 2017); *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so.") (cite and internal quotation marks omitted).

**ARGUMENT**

I.     **Tesla Fails to Establish the Existence of an Enforceable Arbitration Agreement Related to the MTC Plaintiffs' Purchases of Tesla Repair Services and Tesla-Compatible Parts.**

    A.     **No Matter How Broadly Worded, An Arbitration Agreement Is Legally Incapable of Encompassing Claims Arising Out of a Separate, Independent Transaction.**

Tesla argues that, because all three MTC Plaintiffs delegated questions regarding the scope of arbitration to the arbitrator, the Court's hands are essentially tied and it must compel the MTC Plaintiffs to arbitration (even if Tesla's arguments are "wholly groundless"). (MTC 8:17-23

6

(quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)).) But Tesla's analysis fails regarding all three MTC Plaintiffs for the same reason: it rests on the flawed presumption that there is an agreement to arbitrate in the first place. There is not. The Ninth Circuit's recent decision in *Johnson* is instructive, directly on point, and controlling.

In *Johnson*, the plaintiff purchased a set of tires from Walmart's website and, while making that online purchase, agreed to terms of use containing a broadly worded arbitration provision. *Johnson*, 57 F.4th at 679. That provision stated: "…*all disputes* arising out of or related to these Terms of Use *or any aspect of the relationship between you and Walmart*…will be resolved through final and binding arbitration." *Id*. (emphasis added). Shortly afterwards, while waiting for the tires to be installed on his vehicle, the plaintiff separately purchased a lifetime service agreement from Walmart for tire balancing and rotation services for his recently purchased tires. *Id*. at 680. When Walmart later refused to provide such tire services, the plaintiff filed a class action lawsuit, and Walmart moved to compel arbitration based on the broadly worded arbitration provision plaintiff agreed to when he purchased his tires. *Id.* The Ninth Circuit affirmed the district court's denial of Walmart's motion. *Id*. at 683.

In arriving at its decision, the Ninth Circuit explicitly rejected the exact argument Tesla is making here: namely, that the issue was one of *scope* and, thus, a presumption in favor of arbitrability should apply. *Id*. at 681 ("We agree with the district that that [plaintiff] contests the existence, not the scope, of an arbitration agreement that would encompass this dispute."); *see also Treinish v. iFit Inc*., No. CV 22-4687-DMG (SKX), 2023 WL 2230431, at *5 (C.D. Cal. Feb. 2, 2023) (denying motion to compel arbitration based on lack of existence, not scope, of arbitration provision where plaintiff's claims arose from purchase of treadmill and defendant sought to enforce broadly worded arbitration clause agreed to during separate purchase of treadmill-related services).

The Ninth Circuit concluded that the two transactions in *Johnson* were separate and independent because: (1) the plaintiff's purchase of tire services was "negotiated and entered into separately" from his purchase of tires; (2) the two transactions involved "separate consideration"; and (3) proof of the plaintiff's claims related to tire services, did not involve a breach of the tire

purchase agreement, or an interpretation of the agreement containing the arbitration clause

defendant sought to enforce. 57 F.4th at 683; *see also Veribi, LLC v. Compass Mining, Inc*., No.

222-CV-04537M-EMFJPR, 2023 WL 375680, at *10 (C.D. Cal. Jan. 20, 2023) (denying motion

to compel where movant sought to enforce arbitration agreement that was contained in a separate

contract involving a separate transaction from the contract under which nonmovant's claim arose,

despite arbitration agreement in original contract being broadly written to cover "any dispute

between or among them").

Each of these three factors identified in *Johnson* is equally true here. Tesla offers no

evidence in support of its Motion, because there is none, that any of the MTC Plaintiffs' claims:

(1) are based on the purchase of parts or services negotiated at the same time as they purchased or

leased their Tesla EV; (2) involve Tesla Repair Services or Tesla-Compatible Parts provided by

Tesla[9] as part of the purchase or lease of the MTC Plaintiffs' EVs[10]; or (3) allege a breach of the

EV purchase/lease documents Tesla asserts contain an arbitration clause, nor do they rely upon

them in any way. (*See* CAC, *in passim*.) In fact, as demonstrated by Tesla's own Statement of

Relevant Facts, all the MTC Plaintiffs' claims are based on harms suffered when purchasing

"Tesla Repair Services" and Tesla-Compatible Parts," not EVs. (*See* MTC at 7:6-8:11 (describing

each count in the CAC without mentioning the term "EV" once).) Moreover, those Tesla Repair

Services and Tesla-Compatible Parts purchases involve transactions not just with Tesla, but also

its authorized collision centers. (CAC ¶ 1, 3, 177-78, 193-261.)

Just as in *Johnson*, the issue before the Court is not one of *scope,* but of the *existence* of an

---

[9] The MTC Plaintiffs, like all plaintiffs in this action, do not limit their claims to Tesla Repair Services and Tesla-Compatible Parts purchased from Tesla; rather, their claims also include purchases of Tesla Repair Services and Tesla-Compatible Parts made in connection with collision repairs performed by Tesla-authorized collision centers. (CAC ¶ 1 (defining "Tesla-Repair Services" and "Tesla-Compatible Parts" without limiting them to purchases from Tesla); *id*. ¶¶ 177-78 (defining classes without limiting them to those purchasing from Tesla); *id*. ¶¶ 193-261 (alleging causes of action without limiting them to purchases from Tesla).)

[10] The MTC Plaintiffs, like all plaintiffs in this action, also specifically allege that their claims do not include purchases of Tesla Repair Services or Tesla-Compatible Parts covered under warranty. (CAC ¶¶ 44-45 ("this case addresses only repair and maintenance services that are not covered under warranty"); *id*. at ¶¶ 15, 17-18 (stating the MTC Plaintiffs each paid for Tesla Repair Services and Tesla-Compatible Parts outside of warranty).)

agreement to arbitrate. Tesla's Motion fails as a matter of law because, like the movant in *Johnson* (and the movants in *Treinish*, and *Veribi*), Tesla offers no evidence of an arbitration agreement associated with the transactions at issue. Without an arbitration agreement, there is no scope for the Court to analyze. That's because, no matter how broadly worded, an arbitration clause cannot—as a matter of law—encompass claims arising from a totally separate and independent transaction for which there was no agreement to arbitrate. This alone requires denying Tesla's entire Motion.

### B. Tesla Fails to Show Any Valid, Enforceable Arbitration Agreement With Plaintiff Phillips Whatsoever (Let Alone One Arising Out of the Transactions at Issue).

The arbitration clause that Tesla seeks to enforce against Plaintiff Phillips was not signed, rather it was clickwrap Tesla claims was part of the online transaction by which Plaintiff Phillips ordered his EV. Accordingly, even assuming that arbitration clause were valid and relevant to this case (which it is not), Tesla must establish by a preponderance of the evidence that Plaintiff Phillips was on inquiry notice of its terms and agreed to them under state-law principles of contract formation. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).[11] Since this case involves online activity, establishing inquiry notice requires a showing that: "(1) the website provides reasonably conspicuous notice of the terms to which [Plaintiff Phillips] will be bound;" and (2) Plaintiff Phillips took "some action, such as clicking a button or checking a box, that unambiguously manifests his [] assent to those terms." *Berman*, 30 F.4th at 856. Tesla fails to establish either factor.

First, Tesla does not provide the Court with copies of what Plaintiff Phillips actually saw or when he allegedly agreed to arbitrate. Instead, Tesla provides an *example* of an order screen that Tesla claims—but fails to prove by a preponderance of the evidence—is "substantially similar" to what a consumer *like* Plaintiff Phillips *would* have seen at the time he placed his Tesla EV order *if* Plaintiff Phillips were on a desktop (though Tesla acknowledges it doesn't even know if Plaintiff

---

[11] The parties agree that California law applies to the arbitration analysis regarding Plaintiff Phillips. (*See* MTC at 9:1-3.)

Phillips placed his order from a desktop). (*See* Sinha Decl. at ¶¶ 9-10.) This parade of assumptions and "maybes" is grossly insufficient to establish Plaintiff Phillips was on inquiry notice of the alleged arbitration provision. *See Nager v. Tesla Motors, Inc.*, Case No. 19-2382, 2019 WL 4168808, at *3 (D. Kan. Sept. 3, 2019) (denying motion to compel arbitration on similar evidence, which the court characterized as "just some random document with no connection to plaintiffs or the transaction at issue in this case").

Second, even if Tesla were correct and the provided screen shots accurately reflect what Plaintiff Phillips might have seen, the language Tesla relies upon as providing inquiry notice— "[b]y placing this order, I agree to the Model Y Order Agreement, Terms of Use, and Privacy Notice"— is small and difficult to read even in the zoomed-in, full-page printout provided by Tesla. (Sinha Decl., Ex. A.) Thus, it would be legally inadequate to establish mutual assent even if Tesla presented evidence that Plaintiff Phillips actually saw it. *See Conservatorship of Link*, 158 Cal. App. 3d 138, 141 (1984) ("Typeface smaller than eight-point is an unsatisfactory reading medium."). But Tesla is not even sure if Plaintiff Phillips viewed the desktop or mobile version of Tesla's order screen, (Sinha Decl. ¶ 9), so the text could have been even smaller. Moreover, while the hyperlinks are in blue, they are not capitalized or underlined in the manner websites normally alert readers to the presence of hyperlinks. *Berman*, 30 F.4th at 857. Taken together, the record put forward by Tesla is grossly insufficient to establish that Plaintiff Phillips was on inquiry notice of the arbitration terms Tesla seeks to enforce.

**C.      Under the *McGill* Rule, Plaintiffs' Claims Seeking Public Injunctive Relief Are Not Arbitrable.**

In addition to the foregoing infirmities that bar Tesla's Motion with regards to all the MTC Plaintiffs' claims, the McGill rule additionally bars the Motion with regards to the MTC Plaintiffs' claims seeking injunctive relief arising out of Tesla's violations of California's Unfair Competition Law ("UCL").

Agreements to arbitrate claimed violations of the UCL seeking public injunctive relief— *i.e.*, "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public"—are unenforceable. *McGill v. Citibank, N.A.,* 2

Cal.5th 945, 951-53 (2017) ("the "*McGill* Rule"); *see also Lee v. Tesla, Inc.,* No.

SACV2000570JVSKESX, 2020 WL 10573281, at *6 (C.D. Cal. Oct. 1, 2020) (noting *McGill*

applies even where there is an opt-out provision). The California Supreme Court and the Ninth

Circuit agree that the *McGill* Rule is not preempted by the Federal Arbitration Act ("FAA"), and

therefore must be enforced by both federal and state courts. *McGill*, 2 Cal.5th at 966; *Blair v.*

*Rent-a-Car, Inc.*, 928 F.3d 819, 831 (9th Cir. 2019) ("[T]he FAA does not preempt the *McGill*

rule."). Consequently, if the Court determines that any claims in this case must be arbitrated, it

must nonetheless retain jurisdiction over the MTC Plaintiffs' UCL claims, which seek public

injunctive relief for alleged violations of the UCL. (CAC ¶¶ 248-60; Prayer for Relief § C.)

One of the primary goals of the MTC Plaintiffs' lawsuit is to dismantle Tesla's monopolies

in the Tesla Repair Services and Tesla-Compatible Parts aftermarkets by obtaining injunctive

relief that would prevent Tesla from continuing to engage in the anticompetitive practices

described in the Complaint. (*Id* ¶ 8.) To that end, the Complaint seeks:

> (i) [A]n order permanently enjoining and restraining Tesla, and its officers,
> directors, agents, servants, employees, attorneys, and all other persons acting
> or claiming to act on their behalf from continuing to engage in the wrongful
> acts described herein; and (ii) requiring Tesla to provide access to manuals,
> diagnostic tools, and vehicle telematic data, at a reasonable cost, to
> individuals and independent repair shops.

(*Id*., Prayer for Relief, § C.)

Improved access to Tesla manuals, diagnostic tools, and telematics would benefit not only

class members, but also the general public—*i.e.*, anyone who needs Tesla parts or servicing in the

future; anyone considering opening, investing in, or working in a repair shop; or anyone with an

academic or hobbyist interest in Tesla vehicles. Thus, the scope of individuals who would benefit

from an injunction is much wider than the putative class itself. The public injunctive relief is a

fundamental aspect of the MTC Plaintiffs' case; the fact that they also seek damages does not

affect the Court's analysis. *See Vasquez v. Cebridge Telecom CA, LLC*, 569 F. Supp. 3d 1016,

1029 (N.D. Cal. 2021), *appeal dismissed*, No. 21-17009, 2022 WL 20033128 (9th Cir. Dec. 9,

2022).

The UCL claims were brought on behalf of a class. Compelling arbitration of the MTC Plaintiffs' UCL claims would deprive them of any opportunity to pursue these claims. (*See* Ahluwalia Decl., Ex. A at p. 7 ("You expressly waive any right you may have to arbitrate a class action.); *id*. at Ex. B, p. 3 ("The arbitrator cannot hear class or representative claims.") Accordingly, the MTC Plaintiffs cannot be compelled to arbitrate these claims. *Nguyen v. Tesla, Inc.* 2020 WL 2114937 at *6 (C.D. Cal. Apr. 6, 2020) (finding Tesla contract identical to that of Phillips and Stoffel as violating *McGill* Rule).

## II. Even if an Agreement to Arbitrate Did Exist, Tesla Fails to Meet Its Burden of Establishing Plaintiffs "Clearly and Unmistakably" Delegated the Scope of Arbitrability to an Arbitrator.

Since there is no valid, relevant arbitration agreement relating to the Tesla Repair Services and Tesla-Compatible Parts transactions at issue in this case, Tesla's Motion can and should be denied without any further discussion.

However, even where a valid and enforceable arbitration *does* exist, the Supreme Court recognizes a heightened standard for establishing that the parties to that agreement delegated the issue of arbitrability to the arbitrator: "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT-&-T Techs. v. Commc'ns Workers,* 475 U.S. 643, 649 (1986); *see also Oracle Am., Inc. v. Myriad Group, A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) ("there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor arbitration does not extend to deciding questions of arbitrability," therefore it is "an issue for judicial determination unless the parties *clearly and unmistakably provide otherwise*") (internal quotation markets omitted; emphasis in original).

Tesla nonetheless argues that, "[b]ecause the [MTC] Plaintiffs entered agreements to arbitrate arbitrability, the Court should compel arbitration and stay proceedings with respect to their claims." (MTC at 10:9-10.) But as discussed below, Tesla again falls far short of the heightened showing that is required and, in fact, its arguments rest on a legal argument—*i.e*., that incorporation of the AAA rules indicates "clear and unmistakable evidence" of intent to delegate arbitrability—that has been repeatedly and soundly rejected in this District.

## A. Plaintiffs Phillips and Stoffal.

Tesla argues that Plaintiffs Phillips and Stoffal agreed to delegate arbitrability to the arbitrator because the terms and conditions of their Motor Vehicle Order Agreements contained an arbitration clause that incorporated the AAA Consumer Arbitration Rules. (MTC at 9:21-10:8.)[12] As an initial matter, Tesla does not even provide a copy of the AAA Consumer Arbitration Rules, let alone the version in effect at the time Plaintiffs Phillips and Stoffal supposedly "agreed" to them. Thus, the Court cannot determine whether those rules—even assuming for sake of argument Plaintiffs Phillips and Stoffal in fact agreed to them—even contained a delegation clause. Therefore—even assuming for sake of argument that Plaintiffs Phillips and Stoffal actually agreed to them—Tesla fails to meet its burden of establishing, by a preponderance of the evidence, that Plaintiffs Phillips and Stoffal "clearly and unmistakably" agreed to delegate the issue of arbitrability to the arbitrator. *Oracle Am.*, 724 F.3d at 102.

Moreover, even if Tesla could have established that the AAA Consumer Arbitration Rules contained a delegation provision (which it did not), neither case Tesla cites actually supports the proposition that this constitutes "clear and unmistakable evidence" that Plaintiffs Phillips and Stoffal agreed to arbitrate arbitrability. The arbitration agreement in *Blanton* incorporated the AAA's National Rules for the Resolution of Employment Disputes, not its Consumer Arbitration Rules. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) ("The agreement also specifies that the arbitration will be conducted according to the American Arbitration Association National Rules for the Resolution of Employment Disputes."). Thus, *Blanton* says nothing about whether Plaintiffs Phillips or Stoffal agreed to delegate arbitrability to the arbitrator.

Tesla's reliance on *Brennan* fares not better. In *Brennan*, the Ninth Circuit expressly limited its holding to arbitration agreements "between sophisticated parties." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Oracle Am.*, 724 F.3d at 1075 & n.2); *see also*

---

[12] As noted above, as to Plaintiff Phillips, Tesla provides only an *example* of an order screen that Tesla claims is "substantially similar" to what a consumer *like* Plaintiff Phillips *would* have seen at the time he placed his Tesla EV order *if* Plaintiff Phillips were on a desktop.

*Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 291 (N.D. Cal. 2022) ("*Brennan* expressly limited its holding to commercial contracts between sophisticated parties."). Unsurprisingly, numerous courts in this District have expressly rejected the argument that *Brennan* applies in consumer cases like the one at issue. *See, e.g.*, *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1031 (N.D. Cal. 2022) ("Where at least one party is unsophisticated, courts in this district and elsewhere have routinely found that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability."); *Magill v. Wells Fargo Bank*, N.A., No. 4:21-cv-01877-YGR, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021) (incorporation of the AAA rules does not clearly and unmistakably establish an agreement to delegate questions of arbitrability where one party was unsophisticated); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1254 (N.D. Cal. 2019) (rejecting argument that incorporation of AAA rules evidences a clear and unmistakable intent to delegate arbitrability "in the absence of any evidence that [non-movant] possesses a heightened level of sophistication"); *Ingalls v. Spotify USA, Inc.*, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016) ("Every district court decision in our circuit to address the question since *Brennan* has held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party."). Thus, Tesla has provided zero evidence—let alone "clear and unmistakable evidence"— that Plaintiffs Phillips or Stoffal agreed to arbitrate arbitrability.

### B.    Plaintiff Thys.

Tesla's argument regarding Plaintiff Thys is equally flawed. Tesla asserts that Plaintiff Thys expressed her "clear and unmistakable" intent to arbitrate the arbitrability of her claims involving Tesla Repair Services and Tesla-Compatible Parts when she signed a "Retail Installment Sales Contract" in connection with the purchase of her Tesla EV. (MTC at 9:21-25.) But as discussed above, this arbitration agreement—which was purportedly entered into in connection with a separate, independent transaction from the transactions at issue in this case—does not apply here as a matter of law, irrespective of its scope. *See Johnson*, 57 F.4th at 681; (*supra* at § I(A)).

But even if that agreement existed and were valid and relevant (which it is not), Tesla's argument still fails. According to Tesla, California law governs the inquiry as to Plaintiff Thys,

(MTC at 9:1-3); and, like federal law, California law applies the same heightened "clear and unmistakable evidence" standard when deciding whether parties delegated arbitrability to the arbitrator. *Dennison v. Rosland Capital LLC*, 47 Cal.App.5th at 204, 209 (2020) ("Under California law, it is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability.")

In providing the arbitration language contained in Plaintiff Thys' "Retail Installment Sales Contract" for her EV, Tesla left out the following sentence, which comes immediately after the portion it quotes: "If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute." (*See* Ahluwalia Decl., Ex. B at p. 8.)[13] Notably, it does *not* say that "then this claim shall <u>*not be arbitrated*</u>"; it says the Arbitration Provision itself no longer applies at all (*i.e.*, including the delegation clause). Because this arbitration provision conflicts with the UCL, violates the *McGill* rule, and does not even exist under binding federal caselaw (*i.e., Johnson*), the entire arbitration provision does not apply to this dispute.

At the very least, this language creates an intrinsic ambiguity that must be construed against Tesla as drafter. *See* Cal. Civ. Code § 1654 ("the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist"). A consumer could reasonably interpret this provision to mean—in the event that, as here, federal precedent clearly establishes their UCL claims cannot be arbitrated and an agreement to arbitrate does not apply to transactions arising under a separate transaction or agreement—this arbitration provision, including its delegation clause, no longer applies. *See Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 792 (2012) ("Even broad arbitration clauses that expressly delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard.").

---

[13] *But see* MTC at 9:21-25 and Ahluwalia Decl.¶8 (excluding same language).

## III. No Matter How Broadly Worded, the Antitrust Claims at Issue Do Not—and Legally Cannot—Fall Within the Scope of an Arbitration Clause From an Earlier, Independent Transaction.

The MTC Plaintiffs are not suing Tesla over problems with their EVs at delivery; they are suing Tesla because of injuries they sustained in purchasing Tesla Repair Services and Tesla-Compatible Parts. Notably, the putative classes they seek to represent comprise:

> All persons or entities in the United States who paid for Tesla Repair Services or Tesla-Compatible Parts from March 2019 to the present (the "Class Period").

and;

> All persons or entities who paid for Tesla Repair Services or Tesla-Compatible Parts from March 2019 to the present (the "Class Period") in California.

(CAC ¶¶ 177-78.)

Neither of these proposed classes makes any reference to Tesla EVs and, if certified, purchasers of Tesla Repair Services and Tesla-Compatible Parts will qualify as class members even if they never purchased a Tesla EV at all (not to mention all the Tesla EV owners who purchased their vehicles in the secondary market from someone other than Tesla). To say that the MTC Plaintiffs' antitrust claims arise in any way from the purchase or financing of a separate product, in a separate transaction, both defies logic and contradicts the Ninth Circuit's decision in *Johnson*. 57 F.4th at 683; *see also Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023) ("We have held that even under broad arbitration clauses like this one, factual allegations must at least '"touch matters"' covered by the contract containing the arbitration clause.'") (quoting *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999)).

Tesla nevertheless argues that "the plain language of the [MTC] Plaintiffs' Agreements compels the conclusion that those claims must be arbitrated." (MTC at 10:15-17.) That's because, Tesla asserts, "the arbitration provisions are…as broad as can be," encompassing "**ANY DISPUTE**" with **ANY PARTY** (*Id.* at 11:3-6 (emphasis added on non-quoted portion); *id.* at 4:15-19, 5:11-17 (purporting to extend arbitration clause to "third parties" and "affiliates," respectively.) But courts regularly refuse to interpret arbitration clauses purporting to cover "any dispute" *literally*. For example, in *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d

1253, 1262-63 (S.D. Cal. 2012), when confronted with an arbitration clause purporting to cover "any and all disputes" between the plaintiff and defendant, the court stated: "[defendant] does not attempt to argue that the agreement can truly encompass 'any and all disputes' between the parties," as an agreement that broad "would clearly be unconscionable." For that very reason, courts often imply a "limiting clause" into such broadly worded provisions that intrinsically limits the scope to disputes arising from or related to the transaction or contract at issue. *Id.*; *see also Revitch v. DirecTV, LLC*, No. 18-CV-01127-JCS, 2018 WL 4030550, at *15-17 (N.D. Cal. Aug. 23, 2018), *aff'd*, 977 F.3d 713 (9th Cir. 2020) (denying motion to compel where arbitration clause purported to cover all "claims arising out of or relating to any aspect of the relationship between us," including those that arose before and arising after the agreement, because "[n]o reasonable consumer would enter into such a contract" if interpreted literally).

Judges have posited many poignant, humorous hypotheticals demonstrating the "absurd results" that would arise if the literal, "plain language" interpretation Tesla posits here were not intrinsically limited to the transaction or contract at issue. *See, e.g., Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir.2003) (stating in case involving loan agreement containing broadly worded arbitration clause that, "if Instant Cash murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against Instant Cash…Instant Cash could insist that the wrongful death claim be submitted to arbitration," and describing that as an "absurd result[]"); *Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 503 (E.D.N.Y. 2016) (in case involving broadly worded arbitration clause in wireless service contract, describing as an "absurd result[]" that "if [plaintiff] bought shares of stock in Mobility and later claimed a decrease in share price was the result of corporate malfeasance, her securities-fraud claim would have to go to arbitration").

Tesla, perhaps recognizing this potential for absurdity, later suggests that—at least with respect to Plaintiff Thys—her claims *do* in fact arise out of the Retail Installment Sales Contract she entered when purchasing her Tesla EV. (MTC at 11:6-20.) Her agreement, Tesla asserts, covered "[a]ny claim or dispute…which arises out of or relates to your…purchase or *condition* of this vehicle." (*Id.* (emphasis added).) Tesla argues that this language reveals the parties' intent, *at the time of Plaintiff Thys's EV purchase*, to arbitrate Plaintiff Thys's antitrust claims related to

*future* purchases of Tesla Repair Services and Tesla-Compatible Parts because those purchases "address the condition of the Tesla vehicle[] that [she] purchased from Tesla." (*Id.*)

Even with a presumption in favor of arbitrability, such an interpretation strains credulity when viewed in context. To the reasonable consumer entering into a Retail Installment Sales Contract for the purchase of an EV, the term "condition" clearly references the condition of the vehicle at time of purchase (*i.e.*, did it have any damage at time of delivery, was the odometer reading accurate, etc.). Tesla does not suggest that the Retail Installment Sales Contract created any additional, *future* rights regarding the condition of the vehicle.[14] Regardless, the Ninth's Circuit holding in *Johnson* explicitly rejects Tesla's interpretation. 57 F.4th at 683.

Tesla cites several cases in support of its argument that the MTC Plaintiffs' claims arising out of one transaction fall within the scope of an arbitration clause allegedly entered into in connection with an entirely separate, independent prior transaction (involving a completely different product, purchased from other parties, and requiring completely separate mutual assent and consideration). However, not a single one of these cases supports Tesla's conclusion. Rather, in each case, the dispute at issue arose out of the transaction governed by the agreement containing the arbitration provision the movant sought to enforce. *See Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 743 (9th Cir. 2012) (unpublished Ninth Circuit opinion finding claims within scope of arbitration clause where "[plaintiff's] claims not only relate to and touch matters covered by the agreement, they directly rise out of it")[15]; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) (claims arising from same construction contract containing arbitration clause); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960) (labor dispute arising under same collective bargaining agreement containing arbitration clause); *Forrest v. Spizzirri*, 62 F.4th 1201 (9th Cir. 2023) (employment claims arising under same employment agreement that parties all agreed were subject to mandatory arbitration);

[14] In fact, Plaintiff Thys's Retail Sales Installment Contract specifically disclaims any such warranties. (*See* Ahluwalia Decl., Ex. A at p.6 ("WARRANTIES SELLER DISCLAIMS").)

[15] Unlike unpublished district court opinions, unpublished opinions of the Ninth Circuit are not precedent. 9th Cir. L.R. 36-3(a).

*Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014) (overtime wages claims arising under same employment agreement containing arbitration provision). Thus, these authorities in no way help Tesla's argument that the Court should compel the MTC Plaintiffs to arbitrate their claims here.

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' respectfully request that the Court *deny* Tesla's Motion in its entirety.


Dated: August 14, 2023

**FREED KANNER LONDON & MILLEN LLC**

By: _/s/ Matthew W. Ruan_

Matthew W. Ruan (SBN 264409)
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com

Douglas A. Millen
Michael E. Moskovitz
Nia-Imara Binns
**FREED KANNER LONDON
& MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com
nbinns@fklmlaw.com

Kimberly A. Justice
**FREED KANNER LONDON
& MILLEN LLC**
923 Fayette Street
Conshohocken, Pennsylvania 19428
Telephone: (610) 234-6486
kjustice@fklmlaw.com

*Interim Lead Counsel for the Proposed Class*

R. Alexander Saveri (SBN 173102)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

*Interim Liaison Counsel for the Proposed Class*

Stuart G. Gross (SBN 251019)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Telephone: (415) 671-4628, ext.10
sgross@grossklein.com

Richard D. McCune
David C. Wright
**McCUNE LAW GROUP, McCUNE WRIGHT
AREVALO VERCOSKI KUSEL WECK
BRANDT, APC**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Tel: (909) 557-1250
rdm@mccunewright.com
dcw@mccunewright.com

Derek Y. Brandt
Leigh M. Perica
Connor P. Lemire
**McCUNE LAW GROUP, McCUNE WRIGHT
AREVALO VERCOSKI KUSEL WECK
BRANDT, APC**
231 North Main Street, Suite 20
Edwardsville, IL 62025
Tel: (618) 307-6116
dyb@mccunewright.com
lmp@mccunewright.com
cpl@mccunewright.com

Jill M. Manning (State Bar No. 178849)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94111
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
jmanning@pwfirm.com

PLAINTIFFS' OPPOSITION TO MOT. TO COMPEL ARBITRATION; Case No. 3:23-cv-1145-TLT (Lead Case)

Daniel L. Warshaw (State Bar No. 185365)
Michael H. Pearson (State Bar No. 277857)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pwfirm.com
mpearson@pwfirm.com

Jon A. Tostrud (State Bar No. 199502)
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 278-2640
Facsimile: (310) 278-2640
jtostrud@tostrudlaw.com

Brian P. Murray
Lee Albert
**GLANCY PRONGAY & MURRAY, LLP**
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
bmurray@glancylaw.com
lalbert@glancylaw.com

Blaine Finley
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., N.W., Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960
Facsimile: (202) 589-1813
bfinley@cuneolaw.com

Matthew S. Weiler (SBN 236052)
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
MWeiler@schneiderwallace.com

Michelle C. Clerkin
**SPIRO HARRISON & NELSON**
228 Park Avenue South
New York, NY 10003
Telephone: (917) 634-2244
mclerkin@shnlegal.com

Peggy Wedgeworth
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN**
100 Garden City Plaza
Garden City, NY 11530
Telephone: (646) 515-1269
pwedgeworth@milberg.com

Arthur Stock
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
astock@milberg.com

Brian D. Clark
Kyle Pozan
Eura Chang
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
bdclark@locklaw.com
kjpozan@locklaw.com
echang@locklaw.com

William G. Caldes
Jeffrey J. Corrigan
Icee N. Etheridge
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Fax: (215) 496-6611
BCaldes@srkattorneys.com
JCorrigan@srkattorneys.com
IEtheridge@srkattorneys.com

Garrett D. Blanchfield
Brant D. Penney
**REINHARDT WENORD & BLANCHFIELD**
First National Bank Building, Suite W1050
332 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 287-2100
g.blanchfield@rwblawfirms.com
b.penney@rwblawfirm.com

*Attorneys for Plaintiffs and the Proposed Class*