**FREED KANNER LONDON & MILLEN LLC**
Matthew W. Ruan (SBN 264409)
Douglas A. Millen (appearing pro hac vice)
Michael E. Moskovitz (appearing pro hac vice)
Nia-Imara Atu Barberousse Binns (appearing pro hac vice)
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com
nbinns@fklmlaw.com

**SAVERI & SAVERI, INC.**
R. Alexander Saveri (SBN 173102)
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

*Attorneys for Plaintiffs and the Proposed Class*
[Additional counsel listed on signature page.]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| VIRGINIA M. LAMBRIX, *et al.*, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br>     v.<br><br>TESLA, INC.,<br><br>           Defendant. | Case No. 3:23-cv-1145-TLT (Lead Case)<br>Case No. 3:23-cv-1496-TLT<br>Case No. 3:23-cv-1543-TLT<br>Case No. 3:23-cv-2035-TLT<br>Case No. 3:23-cv-2352-TLT<br><br>Judge:      Hon. Trina L. Thompson<br>Hearing Date:  February 20, 2024<br>Hearing Time:  2:00 pm<br><br>**PLAINTIFFS' [CORRECTED] MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ............................................................................................................. 2

BACKGROUND ............................................................................................................... 4

LEGAL STANDARD......................................................................................................... 5

ARGUMENT ................................................................................................................... 6

I.    The Court's Arbitration Order Involves Two Controlling Questions of Law. ...................... 6

II.   There are Substantial Grounds for Differences of Opinion on the Issues of Delegation and

Interrelatedness. ....................................................................................................... 7

       A.  There is Substantial Ground for Difference of Opinion As to Whether the Parties

            "Clearly and Unmistakably" Agreed to Arbitrate Arbitrability When Such

            Delegation Occurred By Incorporation of the Rules of an Arbitration Provider........ 8

       B.  There is Substantial Ground for Difference of Opinion on How *Johnson* Should be

            Applied When Claims Do Not Arise Out of Transactions Governed by Contracts

            Containing Arbitration Provisions, But Previous Transactions Are Governed by

            Contracts Which Do Contain Arbitration Provisions that Purportedly Cover "Any

            Aspect of the Relationship Between" the Parties and/or "Any Resulting Transaction

            or Relationship. ...................................................................................... 11

III.  An Immediate Appeal Will Ultimately Speed and Simplify this Litigation. ...................... 15

CONCLUSION................................................................................................................ 16

1

2

## **<u>TABLE OF AUTHORITIES</u>**

3

4

**Cases**

5

*Allstate Ins. Co. v. Toll Bros., Inc.,* 171 F. Supp. 3d 417 (E.D. Penn. 2016) ........................10, 11

6

*AT-&-T Techs. v. Commc'ns Workers*, 475 U.S. 643 (1986) ........................................................8

7

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ........................................................8, 11

8

*Compare Fallo v. High–Tech Institute,* 559 F.3d 874 (8th Cir.2009) .........................................11

9

*Contec Corp. v. Remote Solution Co*., 398 F.3d 205 (2d Cir.2005) ...........................................10

10

*Cordas v. Uber Techs., Inc.,* 228 F. Supp. 3d 985 (N.D. Cal. 2017) .............................................9

11

*Couch v. Telescope Inc.,* 611 F.3d 629 (9th Cir. 2010)..................................................... passim

12

*Eiess v. USAA Fed. Sav. Bank,* 404 F. Supp. 3d 1240 (N.D. Cal. 2019)..................................9, 10

13

*Flora v. Prisma Labs, Inc.,* No. 23-cv-00680-CRB, 2023 U.S. Dist. LEXIS 138119 (N.D. Cal. 2023)........................................................................................................................................9

14

*Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287 (2010)............................................12

15

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union,* 22 F.4th 1125 (9th Cir. 2022) .... 7, 8, 15

16

*In re Cement Antitrust Litigation,* 673 F.2d 1020 (9th Cir. 1982).................................................6

17

*In re Jiffy Lube Int'l, Inc., Text Spam Litig.,* 847 F. Supp. 2d 1253 (S.D. Cal. 2012)................15

18

*Ingalls v. Spotify USA, Inc.,* 2016 WL 6679561 (N.D. Cal. Nov. 14, 2016)................................9

19

*Int'l Ambassadors Prog. v. Archexpo,* 68 F.3d 377 (9th Cir. 1995)............................... 13, 14, 15

20

*Johnson v. Walmart,* 57 F.4th 677 (9th Cir. 2023) ..................................................... passim

21

*Knutson v. Sirius XM Radio Inc.,* 771 F.3d 559 (9th Cir. 2014)..................................................12

22

*Kuehner v. Dickinson & Co.,* 84 F.3d 316 (9th Cir. 1996)............................................................5

23

*Magill v. Wells Fargo Bank, N.A.,* No. 4:21-cv-01877-YGR, 2021 WL 6199649 (N.D. Cal. June 25, 2021)...................................................................................................................................9

24

*Meadows v. Dickey's Barbecue Rests., Inc.,* 144 F. Supp. 3d 1069 (N.D. Cal 2015)...................9

25

*Mikhak v. Univ. of Phoenix,* No. C16-00901 CRB, 2016 U.S. Dist. LEXIS 80705 (N.D. Cal. June 21, 2016) .........................................................................................................................9

26

27

28

*Moritz v. Universal City Studios LLC,* 54 Cal. App. 5th 238 (2020)............................................11

*Oracle Am., Inc. v. Myriad Group, A.G.*, 724 F.3d 1069 (9th Cir. 2013).....................................8

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671 (5th Cir.2012) .......10

*Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366 (Fed.Cir.2006) ...................................................10

*Reese v. BP Expl. (Alaska) Inc.,* 643 F.3d 681 (9th Cir. 2011) .....................................................7

*Revitch v. DirecTV, LLC*, No. 18-CV-01127-JCS, 2018 WL 4030550 (N.D. Cal. Aug. 23, 2018)
............................................................................................................................................15

*Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327 (11th Cir.2005) ..................................10

*Union County v. Piper Jaffray & Co.*, 525 F.3d 643 (8th Cir. 2008) ........................................10

*Vargas v. Delivery Outsourcing,* LLC, No. 15-cv-03408-JST, 2016 U.S. Dist. LEXIS 32634
(N.D. Cal. 2016).................................................................................................................9

*Zenelaj v. Handybook Inc.,* 82 F.Supp.3d 968 (N.D. Cal. 2015).................................................9

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................................passim

9 U.S.C. § 2.................................................................................................................11, 13

## <u>NOTICE OF MOTION AND MOTION TO CERTIFY ORDER FOR</u>
## <u>INTERLOCUTORY APPEAL</u>

PLEASE TAKE NOTICE that on Tuesday, February 20, 2024 at 2:00 p.m., in Courtroom 9 of the U.S. District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California, before the Honorable Trina L. Thompson, Plaintiffs, individually and on behalf of all others similarly situated, will and hereby do move the Court pursuant to 28 U.S.C. § 1292(b) to certify its September 27, 2023 order for interlocutory review to the United States Court of Appeals for the Ninth Circuit.

The issue to be decided on this motion is whether Plaintiffs have satisfied the three certification requirements of 28 U.S.C. § 1292(b). Most importantly, the Court must determine whether one or both of the following questions are "controlling question[s] of law as to which there is substantial ground for difference of opinion":

1. Does incorporation of the American Arbitration Association Consumer Rules (or those of another arbitration provider that delegates arbitrability to the arbitrator) in an arbitration provision in a consumer contract constitute the required "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability, even when one party to the consumer contract is unsophisticated?

2. How should the Ninth Circuit's recent decision in *Johnson v. Walmart*, 57 F.4th 677 (9th Cir. 2023) be applied when the claims at issue do not arise out of a contract containing an arbitration provision, but a contract previously entered into by the parties—negotiated separately, involving separate consideration, and, in some cases, between different parties—contains an arbitration provision that purports to cover "any aspect of the relationship between" the parties and/or "any resulting transaction or relationship"?

Because there are "substantial grounds" for disagreement on both questions and an immediate appeal will ultimately speed and simplify this litigation, Plaintiffs respectfully request that the Court certify its September 27, 2023 order for interlocutory review pursuant to 28 U.S.C. § 1292(b).

-1-

**INTRODUCTION**

Plaintiffs respectfully request that the Court certify its September 27, 2023 order (ECF No. 112) (the "Arbitration Order") for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In granting Tesla's motion to compel arbitration, the Court confronted two "controlling question[s] of law" with "substantial ground[s] for disagreement. 28 U.S.C. § 1292(b). Because of the difficulty and uncertainty surrounding these questions, and because "an immediate appeal from the order may materially advance the ultimate termination of the litigation," the Court's order strongly merits certification. *Id.*

The first controlling question is whether the incorporation of the American Arbitration Association ("AAA") Consumer Rules or similar rules of another arbitration provider in the arbitration provisions "constitute[d] clear and unmistakable evidence that [the] parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The Court answered yes as to plaintiffs Phillips' and Stoffal's Motor Vehicle Order Agreements. (Arbitration Order at 11:4-13.) However, the Ninth Circuit expressly left open the question of whether incorporation of  such arbitration rules sufficiently establishes a clear and unmistakable intent to delegate arbitrability in consumer contracts or where one party is unsophisticated, *id.*, district courts within the Ninth Circuit have split on the issue (with many courts in this District finding that it is not sufficient), *see* Appendix A attached hereto, and there is also a split on the issue among other circuit courts. The disagreement on this issue and the inconsistent outcomes in this Circuit favor certification.

The second controlling question is whether the arbitration provision contained within plaintiffs Philips', Stoffal's, and Thys' (collectively, the "MTC Plaintiffs") purchase, lease, or finance agreements for Tesla electric vehicles ("EVs") governed their claims in this action, which arise out of subsequent agreements for repair services and compatible parts. The Court determined that (a) the arbitration provisions in the purchase, lease, or finance agreements extended to the transactions for such services and parts, and (b) the agreements to purchase parts and services (even those to which Tesla was not a party) were interrelated to the previous purchase, lease, or finance agreements. Thus, the Court held that the arbitration provisions in

1    the first agreements applied to the MTC Plaintiffs' claims arising out of the second agreements.

2    But just this year, in *Johnson v. Walmart*, 57 F.4th 677 (9th Cir. 2023), the Ninth Circuit

3    reached a different conclusion on both issues in a closely analogous factual context: a prior

4    agreement for the purchase of tires, which contained an arbitration provision purporting to cover

5    "any aspect of the relationship between [the plaintiff] and Walmart," and a dispute arising out of

6    a subsequent agreement for maintenance services for those tires which did not contain an

7    arbitration provision. *Id.* at 680. Given the Ninth Circuit's brief analysis in that case, courts and

8    litigants alike (as well as contract drafters) would benefit from more guidance regarding (a)

9    when a dispute arising out of a transaction governed by an agreement without an arbitration

10   clause will nonetheless be subject to arbitration due to an arbitration clause contained in an

11   earlier agreement entered into in connection with a separate transaction, and (b) under what

12   circumstances two separate agreements governing two separate transactions will be deemed

13   interrelated.

14          These questions directly impact whether some portion of the putative class in this case

15   (*i.e.*, those who have a purchase, lease or finance agreement with Tesla) will resolve their claims

16   in this action or through thousands of individual arbitrations (potentially appealing this Court's

17   Arbitration Order thereafter), while another portion of the putative class (*i.e.*, those without such

18   agreements with Tesla) will resolve their claims through continued litigation in this action.

19   These questions further impact a broad range of consumer relationships not at issue in this

20   litigation, in which consumers enter into multiple agreements covering different transactions

21   with the same business (or with different businesses, but the transactions are otherwise

22   somehow related). An immediate appeal would greatly conserve the judicial and party resources

23   in this case and provide a level of certainty in consumer transactions that would benefit all sides

24   and the public at large. For these reasons, Plaintiffs respectfully request that this Court certify its

25   September 27, 2023 Arbitration Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

26

27

28

1

**<u>BACKGROUND</u>**

2   Plaintiffs' Consolidated Amended Class Action Complaint alleges that Tesla—through a

3   variety of anticompetitive policies, acts, and restrictions—has leveraged its market power in the

4   United States EV market to enhance and maintain its market power in the aftermarkets for

5   repair and maintenance services and replacement parts. (ECF No. 63, "CAC," ¶ 4.) As a result,

6   Plaintiffs allege they were harmed when they purchased Tesla repair services and parts from

7   Tesla or a Tesla Authorized Collision Center, because they were forced to pay supracompetitive

8   prices for those services and parts and suffered lengthy delays in receiving them. (*Id.* ¶ 7.)

9   When the MTC Plaintiffs purchased, leased, or financed EVs from Tesla, they entered

10  into contracts that contained arbitration provisions. (*Id.* ¶¶ 15, 17–18; ECF No. 75, "MTC," at

11  4:15–19, 5:11–17). The terms and conditions of these agreements were, on their face, limited to

12  the purchase of the EV itself.  (*See* ECF No. 75-3 at p. 3 ("You agree to purchase the vehicle

13  (the 'Vehicle') described in your Vehicle Configuration from Tesla, Inc. or its affiliates ('we,'

14  'us' or 'our'), pursuant to the terms and conditions of this Agreement."); ECF No. 75-4 at p. 3

15  (same); and ECF No. 75-2 at pg. 2 ("By signing this contract, you choose to buy the vehicle on

16  credit under the agreements on all pages of this contract.").) However, with slight variations in

17  language, they also purported to require arbitration between these plaintiffs and Tesla of "any

18  dispute arising out of or relating to any aspect of the relationship between [the plaintiff] and

19  Tesla." (ECF No. 75-3 at p. 4; ECF No. 75-4 at p. 5; ECF No. 75-5 at pg. 4; *see also* ECF No.

20  75-2 at p. 8 ("Any claim or dispute…between you and us or our employees, agents, successors

21  or assigns, which arises out of…this contract or any resulting transaction or relationship…shall,

22  at your or our election, be resolved by neutral, binding arbitration").)

23  Sometime later, the MTC Plaintiffs—in separate transactions resulting from a different

24  set of negotiations, each requiring their own mutual assent and consideration—purchased repair

25  services and parts from either Tesla or a third party (*i.e.*, a Tesla-authorized collision center).

26  (CAC ¶¶ 3, 15, 17–18.) These subsequent transactions were not conducted according to

27  agreements that included arbitration provisions and, indeed, Tesla has not offered any evidence

28

1    of *any* written contract entered into by these plaintiffs with Tesla or the applicable third-party

2    collision centers.

3         Tesla moved to compel the MTC Plaintiffs to arbitrate their antitrust claims based on the

4    arbitration provisions contained in the MTC Plaintiffs' lease, purchase, or finance agreements,

5    arguing that they covered *any* disputes arising out of all interactions (previous or subsequent)

6    not only with Tesla, but its affiliates and third parties. (MTC at 4:15–19, 5:11–17.) Plaintiffs

7    argued in response that the MTC Plaintiffs' antitrust claims did not arise out their agreements to

8    purchase, lease, or finance their EVs, but rather from subsequent transactions for repair services

9    and parts which were governed by separate agreements. (ECF No. 80, "Opp.," at 10.)

10        In its September 27, 2023 order, the Court granted Tesla's motion and stayed the

11   proceedings for the MTC Plaintiffs. (ECF No. 112, the "Arbitration Order," at 1). The Court

12   held that: (1) "Plaintiffs agreed to arbitrate disputes about their vehicles," (2) "Plaintiffs agreed

13   to delegate their disputes to an arbitrator," and (3) "Plaintiffs' arbitration agreements encompass

14   their causes of action." (*Id.* at 7, 10–11.) For the reasons discussed below, the Court should

15   certify this Order for interlocutory appeal.

16

17                                     **LEGAL STANDARD**

18        "[A]n order compelling arbitration may in appropriate circumstances be appealed 'as

19   otherwise provided in section 1292(b) of title 28,' which governs appeals of interlocutory orders

20   generally." *Lee v. Postmates Inc.*, 2019 U.S. Dist. LEXIS 70270, at *5 (N.D. Cal. Apr. 25,

21   2019) (quoting 9 U.S.C. § 16(b)); *accord Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th

22   Cir. 1996). Under 28 U.S.C. § 1292(b), a federal district court may certify an order compelling

23   arbitration for interlocutory review where: (1) the "order involves a controlling question of

24   law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an

25   immediate appeal from the order may materially advance the ultimate termination of the

26   litigation." 28 U.S.C. § 1292(b).

27

28

1

## **ARGUMENT**

2   As the Court's Order involves two "controlling question[s] of law," concerning  issues

3   for "which there [are] substantial ground[s] for difference of opinion," and an "immediate

4   appeal may materially advance the ultimate termination of the litigation," Plaintiffs satisfy all

5   three requirements for certification. 28 U.S.C. § 1292(b).

6   **I.      The Court's Arbitration Order Involves Two Controlling Questions of Law.**

7   A controlling question of law need not "determine[] who will win on the merits";

8   "'issues collateral to the merits' may be the proper subject of an interlocutory appeal" as well.

9   *Kuehner*, 84 F.3d at 319 (quoting *In re Cement Antitrust Litigation,* 673 F.2d 1020, 1027 n.5

10  (9th Cir. 1982)). The Ninth Circuit has recognized that "an order may involve a controlling

11  question of law if it could cause the needless expense and delay of litigating an entire case in a

12  forum that has no power to decide the matter." *Id.*

13  That is precisely what is at stake here: no arbitrator hearing the MTC Plaintiffs' claims

14  would have the power to determine whether the Court was correct in sending the MTC

15  Plaintiffs' claims to them for arbitration. And while the Court's Arbitration Order technically

16  applies to just three persons (*i.e.*, the MTC Plaintiffs), there are thousands of other persons with

17  similar claims and similar prior contracts with Tesla who fall within the proposed class and who

18  could come before this or other courts. And for all of these persons there are "substantial

19  ground[s]" for disagreement on issues of delegation by incorporation of arbitration rules and the

20  proper application of the Ninth Circuit's decision in *Johnson*. 28 U.S.C. § 1292(b). If Plaintiffs

21  are correct that arbitration is improper with regards to these three persons, an immediate appeal

22  would save "needless expense and delay," not only for their claims, but also the claims for all

23  those similarly situated. *Kuehner*, 84 F.3d at 319. On the other hand, if Plaintiffs are wrong, the

24  parties and the district courts within the Ninth Circuit will have greater certainty moving

25  forward.

26  In granting a similar motion for certification in *Postmates*, Chief Magistrate Judge Spero

27  noted that an order compelling arbitration in a putative class action is "particularly significant,"

28  because it "bars Plaintiffs from proceeding with the class action that they sought in their

1    complaints, an outcome for which courts have broad authority to certify [an] interlocutory

2    appeal[] when it arises more directly from the denial of a motion for class certification." 2019

3    U.S. Dist. LEXIS 70270, at *7 (citations omitted). The significance of this Court's Arbitration

4    Order and the practical advantages of an immediate appeal likewise favor certification for

5    interlocutory appeal. *See id.*

6

7    **II.    There are Substantial Grounds for Differences of Opinion on the Issues of Delegation and Interrelatedness.**

8            To determine if there is "substantial ground for difference of opinion" under 28 U.S.C. §

9    1292(b), "courts must examine to what extent the controlling law is unclear." *Couch v.*

10   *Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). For example, "[c]ourts traditionally will find

11   that a substantial ground for difference of opinion exists where the circuits are in dispute on the

12   question and the court of appeals of the circuit has not spoken on the point, if complicated

13   questions arise under foreign law, or if novel and difficult questions of first impression are

14   presented." *Id.* (citations and internal quotations omitted). While showing a "sufficient number

15   of conflicting and contradictory opinions would provide substantial ground for disagreement," a

16   district court need not "await[] development of contradictory precedent" to conclude that a

17   question presents a "substantial ground for difference of opinion." *Couch*, 611 F.3d at 1130–31,

18   1133–34 (citations omitted). Indeed, when "novel legal issues are presented," the substantial

19   grounds prong is satisfied when "fair-minded jurists might reach contradictory conclusions."

20   *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022)

21   (citing *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).

22           Here, "the controlling law is unclear" in two respects. *Couch*, 611 F.3d at 633. First, it is

23   unclear whether delegation of arbitrability can be accomplished by incorporating arbitration

24   rules by reference when the party opposing arbitration is not shown to be sophisticated. The

25   Ninth Circuit explicitly left this question unanswered in *Brennan*, which has led to a split in the

26   district courts. 796 F.3d at 1130. Such numerous "conflicting and contradictory opinions

27   provide substantial ground for disagreement." *Couch*, 611 F.3d at 633–34. Second, it is unclear

28   how the Ninth Circuit's decision in *Johnson* should be applied in situations where, as here, the

1   dispute does not arise out of transactions governed by an agreement between the parties

2   containing an arbitration provision (*i.e.*, transactions for EVs under the purchase, lease, or

3   financing agreements), but rather arises out of separate transactions governed by a subsequent

4   agreement that may or may not even involve the party seeking to compel arbitration (*i.e.*,

5   transactions for parts and services to repair or maintain those EVs). *See Johnson*, 57 F.4th at

6   681–83. As this "novel and difficult question[] of first impression" is one on which "fair-

7   minded jurists might reach contradictory conclusions," it warrants clarification from the Ninth

8   Circuit. *Couch*, 611 F.3d at 633; *Int'l Longshore*, 22 F.4th at 1130.

9
10          **A.      There is Substantial Ground for Difference of Opinion As to Whether the
                      Parties "Clearly and Unmistakably" Agreed to Arbitrate Arbitrability
11                    When Such Delegation Occurred By Incorporation of the Rules of an
                      Arbitration Provider**

12          Even where a valid and enforceable arbitration agreement exists, there is a heightened

13   standard for establishing that the parties delegated the issue of arbitrability to the arbitrator:

14   "Unless the parties *clearly and unmistakably* provide otherwise, the question of whether the

15   parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT-&-T Techs. v.*

16   *Commc'ns Workers*, 475 U.S. 643, 649 (1986) (emphasis added); *see also Oracle Am., Inc. v.*

17   *Myriad Group, A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) ("[As] there is a presumption that

18   courts will decide which issues are arbitrable," this is "an issue for judicial determination unless

19   the parties *clearly and unmistakably provide otherwise*.") (citations omitted; emphasis in

20   original).

21          In *Brennan*, the Ninth Circuit held that when an "experienced attorney and

22   businessman" entered into an executive-level employment contract with "a sophisticated,

23   regional financial institution," incorporation of the AAA rules in an arbitration agreement

24   "constitute[d] clear and unmistakable evidence that contracting parties agreed to arbitrate

25   arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) (quoting *Oracle*

26   *Am.*, 724 F.3d at 1075 & n.2). But the Ninth Circuit expressly left open the question of whether

27   incorporation of an arbitration provider's rules (*e.g.*, those of AAA or JAMS) is sufficient proof

28   on an intention to delegate arbitrability when the applicable contract is a consumer contract or

-8-

1    involves unsophisticated parties. *Id.*

2         In the wake of this decision, district courts in the Ninth Circuit have inconsistently

3    resolved this question. For example, Judge Chen observed, in *MacClelland v. Cellco P'ship*:

4    "Where at least one party is unsophisticated, courts in this district and elsewhere have routinely

5    found that the incorporation of the AAA rules is insufficient to establish a clear and

6    unmistakable agreement to arbitrate arbitrability." 609 F. Supp. 3d 1024, 1031 (N.D. Cal.

7    2022); *accord Villanueva v. Maxim Healthcare Servs.*, No. 23-cv-03403-JSC, 2023 U.S. Dist.

8    LEXIS 160506, at *5 (N.D. Cal. 2023); *Flora v. Prisma Labs, Inc.*, No. 23-cv-00680-CRB,

9    2023 U.S. Dist. LEXIS 138119, at *11-12 (N.D. Cal. 2023); *Magill v. Wells Fargo Bank*, N.A.,

10   No. 4:21-cv-01877-YGR, 2021 WL 6199649, at *5 (N.D. Cal. June 25, 2021); *Eiess v. USAA*

11   *Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1254 (N.D. Cal. 2019); *Ingalls v. Spotify USA, Inc.*, 2016

12   WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016); *Vargas v. Delivery Outsourcing, LLC*, No. 15-

13   cv-03408-JST, 2016 U.S. Dist. LEXIS 32634, *21 (N.D. Cal. 2016); *Mikhak v. Univ. of*

14   *Phoenix*, No. C16-00901 CRB, 2016 U.S. Dist. LEXIS 80705, at *5 (N.D. Cal. June 21, 2016);

15   *Meadows v. Dickey's Barbecue Rests., Inc.*, 144 F. Supp. 3d 1069, 1079 (N.D. Cal 2015).

16   However, Judge Seeborg, quoting Judge Henderson, made almost the opposite observation:

17   "'nearly every ... decision in the Northern District of California ... has consistently found

18   effective delegation of arbitrability regardless of the sophistication of the parties.'" *Cordas v.*

19   *Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) (quoting with modifications

20   *Zenelaj v. Handybook Inc.*, 82 F.Supp.3d 968, 973 (N.D. Cal. 2015)). A representative sampling

21   of the many decisions by district courts in the Ninth Circuit that have addressed this question

22   *post-Brennan* reveals a similar divergence. *See* Appendix A hereto.

23        In line with some of those decisions, this Court found that, because plaintiffs Phillips'

24   and Stoffal's EV agreements incorporated the AAA Consumer Rules, there was "clear and

25   unmistakable evidence that the parties delegated arbitrability to an arbitrator." Order at 11. But

26   as Judge Chen explained in a decision reaching the opposite result:

27

28

-9-

1
2
3

> For an unsophisticated plaintiff to discover she had agreed to delegate gateway
> questions of arbitrability, she would need to locate the arbitration rules at issue,
> find and read the relevant rules governing delegation, and then understand the
> importance of a specific rule granting the arbitrator jurisdiction over questions of
> validity—a question the Supreme Court itself has deemed "rather arcane."

4   *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (citation omitted);

5   *see also Allstate Ins. Co. v. Toll Bros., Inc.*, 171 F. Supp. 3d 417, 428-29 (E.D. Penn. 2016)

6   ("incorporating forty pages of arbitration rules into an arbitration clause is tantamount to

7   inserting boilerplate inside of boilerplate, and to conclude that a single provision contained in

8   those rules amounts to clear and unmistakable evidence of an unsophisticated party's intent

9   would be to take a good joke too far").

10          It serves no one to have such inconsistency in the law. At this point, it is essentially a

11   spin of the wheel whether a non-sophisticated consumer plaintiff will be forced to arbitrate the

12   arbitrability of his or her claims simply because a corporation incorporated an arbitration

13   provider's rules into their agreement. Accordingly, this is precisely the type of situation where

14   an interlocutory appeal is not just appropriate, but needed. *See Couch*, 611 F.3d at 633–34

15   (explaining that "identification of a sufficient number of conflicting and contradictory opinions

16   would provide substantial ground for disagreement") (citing *Union County v. Piper Jaffray &*

17   *Co.*, 525 F.3d 643, 647 (8th Cir. 2008).

18          Allowing for an interlocutory appeal would also provide more clarity nationally. While

19   it is true that most circuits that have addressed this issue have held that incorporation of

20   arbitration rules, such as those of AAA, which contain a provision vesting the arbitrator with the

21   authority to determine threshold issues of arbitrability demonstrates clear and unmistakable

22   evidence that the parties agreed to delegate arbitrability to the arbitrator, nearly all of them did

23   so specifically within the context of commercial contracts entered into by sophisticated business

24   organizations, not individual consumers. *See Petrofac, Inc. v. DynMcDermott Petroleum*

25   *Operations Co*., 687 F.3d 671 (5th Cir.2012); *Qualcomm Inc. v. Nokia Corp*., 466 F.3d 1366

26   (Fed.Cir.2006); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir.2005);

27   *Contec Corp. v. Remote Solution Co*., 398 F.3d 205, 208 (2d Cir.2005).  *See also Allstate*, 171

28   F. Supp. 3d at 428 ("The matter appears to be an open question in [the Third] [C]ircuit, and this

-10-

1   Court concludes that a cross-reference to a set of arbitration rules containing a provision that

2   vests an arbitrator with the authority to determine his or her own jurisdiction does not

3   automatically constitute clear and unmistakable evidence that the parties intended to arbitrate

4   threshold questions of arbitrability—at least where those parties are unsophisticated.").

5       While the Ninth Circuit, in *Brenan*, explicitly did not answer the question with respect to

6   unsophisticated parties, 796 F.3d at 1131, other circuits have split on this more specific

7   question. *Compare Fallo v. High–Tech Institute,* 559 F.3d 874, 878 (8th Cir.2009) (finding it

8   effective) *with Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 and n. 1

9   (10th Cir. 1998) (finding it ineffective). Given the nation-wide reach of many businesses that

10  use contracts which employ this type of delegation by incorporation language in their arbitration

11  clauses, it would be beneficial for all if the Ninth Circuit made clear where it stood on this issue.

12  More generally, "where the circuits are in dispute on the question and the court of appeals of the

13  circuit has not spoken on the point" is "traditionally" recognized as a basis for allowing

14  interlocutory appeal. *Couch*, 611 F.3d at 633.

15      Certifying the Arbitration Order for interlocutory appeal would give the Ninth Circuit

16  the opportunity to firmly decide this specific issue one way or the other, engendering greater

17  consistency and stability in the lower courts and greater predictability for those who transact

18  business in the states within the Circuit.

19  **B.    There is Substantial Ground for Difference of Opinion on How *Johnson***
20  **Should be Applied When Claims Do Not Arise Out of Transactions**
     **Governed by Contracts Containing Arbitration Provisions, But Previous**
21  **Transactions Are Governed by Contracts Which Do Contain Arbitration**
     **Provisions that Purportedly Cover "Any Aspect of the Relationship**
     **Between" the Parties and/or "Any Resulting Transaction or Relationship**
22

23      Under the FAA, an arbitration provision in a contract is only enforceable with respect to

24  a "controversy [that] thereafter aris[es] out of such contract." 9 U.S.C. § 2; *see also Moritz v.*

25  *Universal City Studios LLC*, 54 Cal. App. 5th 238, 248 (2020) ("The FAA requires no

26  enforcement of an arbitration provision with respect to disputes unrelated to the contract in

27  which the provision appears."). This requirement is consistent with the "first principle" of

28  arbitration: that it is "strictly a matter of consent." *Granite Rock Co. v. Int'l Bhd. of Teamsters*,

-11-

1    561 U.S. 287, 299 (2010) (citation omitted). Thus, an arbitration provision does not apply to

2    every dispute between parties, but "*only [to] those disputes* . . . that the parties have agreed to

3    submit to arbitration." *Id.* (citations omitted; emphasis in original). The party seeking to compel

4    arbitration bears the burden of proving the existence of an agreement to arbitrate by a

5    preponderance of the evidence. *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir.

6    2014).

7         Just this year, in *Johnson v. Walmart*, the Ninth Circuit provided new—but limited—

8    guidance to lower courts on whether an arbitration provision contained in a contract entered into

9    in connection with one transaction can apply to disputes arising out of a subsequent contract or

10   transaction. 57 F.4th at 681–83. When the plaintiff in *Johnson* bought tires from Walmart's

11   website, he agreed to the website's "Terms of Use." *Id.* at 679. This agreement contained a

12   broad arbitration provision requiring that "all disputes arising out of or related to these Terms of

13   Use or any aspect of the relationship between you and Walmart . . . will be resolved through

14   final and binding arbitration." *Id.* Later, plaintiff purchased services related to those tires from a

15   Walmart store, but the agreement covering that transaction, the Service Agreement, did not

16   contain an arbitration provision. *Id.* at 680. After plaintiff was denied services on several

17   occasions, he filed a putative class action, and Walmart moved to compel arbitration pursuant to

18   the arbitration provision in the earlier agreement. *Id.*

19        On appeal, the Ninth Circuit found that plaintiff's "claim against Walmart [did] not arise

20   out of the contract containing the arbitration agreement; it [arose] out of an entirely separate

21   transaction at a Walmart store." *Id.* at 681. Thus, the court concluded that "only if the Service

22   Agreement itself is subject to the Terms of Use does an agreement to arbitrate claims arise out

23   of that in-store purchase." *Id.* Interpreting the Terms of Use as a whole, the court found that—

24   despite the arbitration clause's sweeping language—this agreement only covered the use of

25   Walmart's websites, and that the plaintiff "did not assent to arbitrate claims that might arise out

26   of a separate, in-store purchase." *Id.* at 682. The court further concluded that the first contract

27   for the purchase of tires was not sufficiently "interrelated" to the second contract for purchase of

28   services for those tires, such that the arbitration provision in the first did not apply disputes

-12-

1    arising out of the second. *Id.* at 683 (citing *Int'l Ambassadors Prog. v. Archexpo*, 68 F.3d 377,

2    340 (9th Cir. 1995)).

3         Here, Plaintiffs argued that *Johnson* was directly on-point and controlling, given the

4    factual parallels and similarly broad arbitration provisions at issue. (Opp. at 2, 6–9 (citing 57

5    F.4th at 681–83).) The Court found that *Johnson* was distinguishable, reasoning that "the

6    arbitration clause in the purchase or lease agreement controls the second agreement for services

7    and parts," while the arbitration clause in *Johnson* did not extend to the second agreement.

8    (Order at 16 (citing 57 F.4th at 683).) Plaintiffs respectfully contend that *Johnson*'s analysis of

9    whether a broad, pre-existing arbitration provision applies to a later agreement or transaction

10   has made the controlling law "unclear" to a vast "extent," making this issue proper for

11   interlocutory appeal. *Couch*, 611 F.3d at 633.

12        First, *Johnson*'s analysis regarding whether claims or transactions "arise" under a

13   contract requires further clarification. *See* 57 F.4th at 681. The FAA provides that an arbitration

14   provision in a contract is only enforceable if a "controversy thereafter aris[es] out of such

15   contract." 9 U.S.C. § 2. *Johnson* reiterated this requirement and then explained that the

16   plaintiff's claim did *not* "arise out of the contract containing the arbitration agreement." 57

17   F.4th at 681. But then *Johnson* noted that "only if the Service Agreement itself is subject to the

18   Terms of Use does an agreement to arbitrate claims *arise* out of that in-store purchase." *Id.*

19   (emphasis added). This suggests either that a dispute can arise under a contract with an

20   arbitration provision if a later *contract* is "subject to" to the first contract, or if a later

21   *transaction* is subject to the earlier arbitration provision. *Id.* It is not clear which.

22        This begets the second point of confusion: whether courts should be concerned with

23   "contracts" or "transactions." 57 F.4th at 681, 683. At one point, the *Johnson* court explains that

24   the plaintiff's "claim against Walmart [did] not arise out of the *contract* containing the

25   arbitration agreement; it [arose] out of an entirely separate *transaction* at a Walmart store." *Id.*

26   at 681 (emphasis added). Later, discussing interrelatedness, the court addresses whether

27   "Johnson's two *purchases* are 'merely interrelated *contracts* in an ongoing series of

28   transactions' such that the arbitration agreement of the first necessarily applies to the second."

-13-

1    *Id.* at 682 (quoting *Archexpo*, 68 F.3d at 340) (emphasis added). These statements make it

2    difficult to discern whether courts should focus on contracts or transactions when analyzing

3    where claims "arise" or when applying the interrelatedness test. *See, e.g.*, Order at 13–14

4    (finding that the MTC Plaintiffs' arbitration agreements extended to subsequent *transactions*

5    regarding the upkeep of their vehicles).

6           Third, *Johnson* is unclear regarding whether non-interrelated contracts or transactions

7    must only be "separate" or must be both "separate" and "independent." 57 F.4th at 682–83. At

8    one point, the Ninth Circuit explains that "[w]here two contracts are 'separate,' 'the lack of an

9    arbitration clause means disputes over the agreement are not subject to arbitration.'" *Id.* (citing

10   *Archexpo*, 68 F.3d at 340). Then the court notes that "[s]ubstantial evidence supports that the

11   two contracts between Johnson and Walmart are separate, independent agreements." *Id.* at 683.

12   Here, the Court found that "[a]lthough Plaintiffs' transactions were separate, they were not

13   independent." Order at 15; *see also id.* at 18 ("As a result, Plaintiffs' arguments fall short of the

14   evidence required to substantially prove that the agreements are independent.") Plaintiffs

15   respectfully contend that *Johnson* is unclear on whether contracts or transactions must merely

16   be separate, or must be *both* separate *and* independent so as not to be deemed interrelated. *See*

17   57 F.4th at 682–83.

18          Finally, *Johnson*'s interrelatedness analysis left many important questions unanswered.

19   Most importantly, the Ninth Circuit should clarify if and how courts should interpret contracts

20   with arbitration provisions in this context. *Compare Johnson*, 57 F.4th at 683 (analyzing the

21   contract's language before analyzing interrelatedness), *with Archexpo*, 68 F.3d at 340 (not

22   analyzing the contractual language at all). Next, the Ninth Circuit should elucidate the precise

23   factors that courts should consider when determining if agreements or transactions are

24   interrelated. The brief analyses in *Johnson* and *Archexpo* were not exactly alike, and it remains

25   uncertain whether courts should consider *only* the factors they identified, or whether those

26   factors are non-exclusive. *See* 57 F.4th at 683; 68 F.3d at 340. The Ninth Circuit should also

27   clarify how interrelatedness interacts with questions of unconscionability, as courts regularly

28   refuse to interpret arbitration clauses purporting to cover "any dispute" literally, because an

-14-

1   agreement that broad "would clearly be unconscionable." *In re Jiffy Lube Int'l, Inc., Text Spam*

2   *Litig.*, 847 F. Supp. 2d 1253, 1262–63 (S.D. Cal. 2012); *see, e.g.*, *Revitch v. DirecTV, LLC*, No.

3   18-CV-01127-JCS, 2018 WL 4030550, at \*15–17 (N.D. Cal. Aug. 23, 2018), *aff'd*, 977 F.3d

4   713 (9th Cir. 2020) (denying motion to compel where arbitration clause purported to cover all

5   "claims arising out of or relating to any aspect of the relationship between us," including those

6   that arose before and after the agreement, because "[n]o reasonable consumer would enter into

7   such a contract" if interpreted literally).

8        Given the manifold uncertainties created by *Johnson*, "fair-minded jurists might reach

9   contradictory conclusions" when claims do not arise out of contracts containing arbitration

10  provisions, but parties' previous contracts contain broad arbitration provisions. *Int'l Longshore*,

11  22 F.4th at 1130. This "novel and difficult question" is immensely important, determining if and

12  how consumers are bound by pre-existing arbitration agreements in disputes regarding

13  subsequent contracts or transactions. *Couch*, 611 F.3d at 633. This inquiry—which determines

14  whether millions of people must arbitrate their disputes and how the contracts between them

15  and businesses who play a large role in our nation's economy should be interpreted—deserves

16  greater clarity.

17

18  **III.     An Immediate Appeal Will Ultimately Speed and Simplify this Litigation.**

19        Finally, Plaintiffs satisfy the third element for certification: "an immediate appeal from

20  the order may materially advance the ultimate termination of the litigation." 28 U.S.C.

21  § 1292(b). If the Ninth Circuit finds that the MTC Plaintiffs are correct, then "resolving all such

22  potential plaintiffs' claims through a class action could be far more efficient than piecemeal

23  litigation and arbitration of individual claims." *Postmates*, 2019 U.S. Dist. LEXIS 70270, at

24  \*10. And if Plaintiffs prevail on appeal *after* a class is already certified, this arduous task may

25  have to be totally redone. Conversely, if Tesla prevails on appeal, there will be "clearer

26  precedent" in further litigation against Tesla and on the interrelatedness and delegation

27  doctrines generally. *Id.* at \*11.

28        While an immediate appeal *could* take "more time and effort" than arbitrations of three

-15-

1  Plaintiffs' claims, this is not at all obvious given the complexity of the claims at issue. *Id.* at *9.

2  Nor does it account for the thousands of similarly situated putative class members who now

3  may also feel obliged to arbitrate their claims. Regardless, an appeal before arbitration would

4  still be more efficient than "requiring arbitration to run its course before the appeal begins." *Id.*

5  Just as Judge Spero recognized in *Postmates*, the potential for an interlocutory appeal to speed

6  and simplify this litigation "greatly outweighs the risk" of delay. *Id.* at *11.

7

8                                   **<u>CONCLUSION</u>**

9          Because all three elements of 28 U.S.C. § 1292(b) are satisfied, Plaintiffs respectfully

10  request that the Court grant this motion and certify its Order for interlocutory appeal.

11

    Dated: October 18, 2023
12

13                                   **FREED KANNER LONDON & MILLEN LLC**

14                        By:    */s/ Matthew W. Ruan*
                                 Matthew W. Ruan (SBN 264409)
15                               100 Tri-State International, Suite 128
                                 Lincolnshire, IL 60069
16                               Telephone: (224) 632-4500
                                 mruan@fklmlaw.com
17

18                               Douglas A. Millen
                                 Michael E. Moskovitz
19                               Nia-Imara Atu Barberousse Binns
                                 **FREED KANNER LONDON & MILLEN LLC**
20                               100 Tri-State International, Suite 128
                                 Lincolnshire, IL 60069
21                               Telephone: (224) 632-4500
                                 dmillen@fklmlaw.com
22                               mmoskovitz@fklmlaw.com
                                 nbinns@fklmlaw.com
23

24                               Kimberly A. Justice
                                 **FREED KANNER LONDON & MILLEN LLC**
25                               923 Fayette Street
                                 Conshohocken, Pennsylvania 19428
26                               Telephone: (610) 234-6486
                                 kjustice@fklmlaw.com
27

28                               *Interim Lead Counsel for the Proposed Class*

R. Alexander Saveri (SBN 173102)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

*Interim Liaison Counsel for the Proposed Class*

Stuart G. Gross (SBN 251019)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Telephone: (415) 671-4628, ext.10
sgross@grossklein.com

Richard D. McCune
David C. Wright
**McCUNE LAW GROUP, McCUNE WRIGHT
AREVALO VERCOSKI KUSEL WECK
BRANDT, APC**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Tel: (909) 557-1250
rdm@mccunewright.com
dcw@mccunewright.com

Derek Y. Brandt
Leigh M. Perica
Connor P. Lemire
**McCUNE LAW GROUP, McCUNE WRIGHT
AREVALO VERCOSKI KUSEL WECK
BRANDT, APC**
231 North Main Street, Suite 20
Edwardsville, IL 62025
Tel: (618) 307-6116
dyb@mccunewright.com
lmp@mccunewright.com
cpl@mccunewright.com

Jill M. Manning (State Bar No. 178849)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94111
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

-17-

1    jmanning@pwfirm.com
     Daniel L. Warshaw (State Bar No. 185365)
2    Michael H. Pearson (State Bar No. 277857)
     **PEARSON WARSHAW, LLP**
3    15165 Ventura Boulevard, Suite 400
     Sherman Oaks, California 91403
4    Telephone: (818) 788-8300
     Facsimile: (818) 788-8104
5    dwarshaw@pwfirm.com
     mpearson@pwfirm.com
6

7    Jon A. Tostrud (State Bar No. 199502)
8    **TOSTRUD LAW GROUP, P.C.**
     1925 Century Park East, Suite 2100
9    Los Angeles, California 90067
     Telephone: (310) 278-2640
10   Facsimile: (310) 278-2640
     jtostrud@tostrudlaw.com
11

12   Brian P. Murray
     Lee Albert
13   **GLANCY PRONGAY & MURRAY, LLP**
     230 Park Avenue, Suite 358
14   New York, NY 10169
     Telephone: (212) 682-5340
15   Facsimile: (212) 884-0988
     bmurray@glancylaw.com
16   lalbert@glancylaw.com

17

18   Blaine Finley
     **CUNEO GILBERT & LADUCA, LLP**
19   4725 Wisconsin Ave., N.W., Suite 200
     Washington, D.C. 20016
20   Telephone: (202) 789-3960
     Facsimile: (202) 589-1813
21   bfinley@cuneolaw.com

22   Matthew S. Weiler (SBN 236052)
     **SCHNEIDER WALLACE COTTRELL**
23   **KONECKY, LLP**
     2000 Powell Street, Suite 1400
24   Emeryville, CA 94608
     Telephone: (415) 421-7100
25   MWeiler@schneiderwallace.com
26

27   Michelle C. Clerkin
     **SPIRO HARRISON & NELSON**
28   228 Park Avenue South

-18-

New York, NY 10003
Telephone: (917) 634-2244
mclerkin@shnlegal.com

Peggy Wedgeworth
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN**
100 Garden City Plaza
Garden City, NY 11530
Telephone: (646) 515-1269
pwedgeworth@milberg.com

Arthur Stock
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
astock@milberg.com

Brian D. Clark
Kyle Pozan
Eura Chang
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
bdclark@locklaw.com
kjpozan@locklaw.com
echang@locklaw.com

William G. Caldes
Jeffrey J. Corrigan
Icee N. Etheridge
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Fax: (215) 496-6611
BCaldes@srkattorneys.com
JCorrigan@srkattorneys.com
IEtheridge@srkattorneys.com

Garrett D. Blanchfield
Brant D. Penney
**REINHARDT WENORD & BLANCHFIELD**
First National Bank Building, Suite W1050

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

332 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 287-2100
g.blanchfield@rwblawfirms.com
b.penney@rwblawfirm.com

*Attorneys for Plaintiffs and the Proposed Class*

-20-