**FREED KANNER LONDON & MILLEN LLC**
Matthew W. Ruan (SBN 264409)
Douglas A. Millen (appearing pro hac vice)
Michael E. Moskovitz (appearing pro hac vice)
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com

**SAVERI & SAVERI, INC.**
R. Alexander Saveri (SBN 173102)
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

*Attorneys for Plaintiffs and the Proposed Class*
[Additional counsel listed on signature page.]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| VIRGINIA M. LAMBRIX, *et al.*, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>TESLA, INC.,<br><br>　　　　　Defendant. | Case No. 3:23-cv-1145-TLT (Lead Case)<br><br>Case No. 3:23-cv-1496-TLT<br><br>Case No. 3:23-cv-1543-TLT<br><br>Case No. 3:23-cv-2035-TLT<br><br>Case No. 3:23-cv-2352-TLT<br><br>**PLAINTIFFS' MOTION REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER** |

## INTRODUCTION

In its September 27, 2023 order granting Tesla's motion to compel arbitration, the Court made three findings.[1] *First*, the Court found that Plaintiffs "agreed to arbitrate disputes" when they purchased, leased, or financed their Tesla electric vehicles. *Second*, it found Plaintiffs "agreed to delegate their disputes to an arbitrator," because Thys's arbitration provision contained an "express" delegation clause, and Tesla's incorporation of the AAA Consumer Arbitration Rules into Phillips' and Stoffal's agreements constituted "clear and unmistakable evidence" of delegation. And *third*, in determining whether an arbitration agreement *existed* that governed this dispute, the Court found that the arbitration provisions in Plaintiffs' purchase, lease, or finance agreements for Tesla electric vehicles applied to their antitrust claims arising from the subsequent purchase of aftermarket repair services and compatible parts—not only from Tesla, but also from third parties—because those purchases involved "separate" but "interrelated" transactions.[2]

As the Court later acknowledged in its Order Granting Plaintiffs' Motion for Certification of Interlocutory Appeal, these findings involved legal issues for which there was "substantial grounds for disagreement."[3] Since the Court issued its Arbitration Order, there have been several "change[s] of law" that counsel reconsideration of these close-call issues.[4]

To begin, two recent decisions support reconsideration of the existence of an agreement to arbitrate Plaintiffs' antitrust claims involving aftermarket purchases of repair services and compatible parts. In *Attia v. Oura Ring, Inc.*, 2024 WL 1382464, at *3–5 (N.D. Cal. Apr. 1, 2024), Judge Gilliam examined whether a broad arbitration provision in an investment agreement extended to a separate agreement for employment-related advisory services. Despite the arbitration provision's expansive language, the court analyzed the prior agreement "holistically," interpreted it so as to "give effect to the mutual intention of the parties at is existed at the time of contracting,"

---

[1] ECF No. 112 ("Arbitration Order").

[2] *Id.* at 7, 10–11, 15.

[3] ECF No. 123 at 4.

[4] Civil Local Rule 7-9.

-1-

PLAINTIFFS' MOT. REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER;
Case No. 3:23-cv-1145-TLT (Lead Case)

1   and found that it did not govern the advisory agreement. *Id.* at *3–4 (quoting *Revitch v. DIRECTV,*
2   *LLC*, 977 F.3d 713, 717 (9th Cir. 2020)). The court also reasoned that the two agreements were
3   "separate and not interrelated," because they dealt with different "subject matters, were negotiated
4   separately, and involve[d] different consideration," just like the separate agreements here. *Id.*
5   (quoting *Johnson v. Walmart Inc.*, 57 F.4th 677, 683 (9th Cir 2023)).

6         Notably, that decision emphasized the parties' lack of "mutual intent," concluding that the
7   parties did *not* mutually intend for the previous investment agreement to govern the later agreement
8   for advisory services. *Id.* The temporal disconnect between the purchase or lease of a Tesla and
9   later aftermarket services is similar, as the Court recently ruled in denying Tesla's motion to dismiss.
10  This Court found—based on Plaintiffs' revised allegations—that Plaintiffs "sufficiently [pled] that
11  they 'did *not* knowingly enter a contract' that would lock them into the aftermarkets associated with
12  their foremarket Tesla EV," and "that Plaintiffs and consumers, generally, were not aware of the
13  repair restrictions and service center limitations described in the complaint." June 17, 2024 Order
14  ("MTD Order") at 16–17, ECF No. 156. Given that Plaintiffs were in the dark about the operative
15  restraints here—the restrictions on repair services and compatible parts—it follows that they also
16  did not *intend* to arbitrate disputes regarding these later purchases. Indeed, this Court found that
17  Plaintiffs and other consumers did not even know they would be "locked into" a tied aftermarket.
18  *Id.* at 23. There can be no "mutual intention" to arbitrate in these circumstances. Thus, the Court's
19  MTD Order is another basis for reconsideration.

20        Likewise, two recent decisions justify reconsideration of the delegation issue. In *Fli-Lo*
21  *Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1200–01 (2024), the Ninth Circuit clarified that
22  district courts need only find that incorporation of arbitration rules constitutes "clear and
23  unmistakable evidence" of delegation when both parties are "sophisticated." And in *Keeton v. Tesla,*
24  *Inc.*, 2024 WL 3175244, at *4 (Cal. Ct. App. June 26, 2024), a decision involving the same defendant
25  and the same material facts, the California Court of Appeal held that Tesla's incorporation of an
26  arbitration provider's rules into an employment contract was *not* "clear and unmistakable evidence"
27  that the parties intended to delegate arbitrability to an arbitrator, because this did not give an
28  unsophisticated employee "much of a clue that that she [was] giving up her usual right to have the

court decide whether the arbitration provision [was] enforceable." Because Plaintiffs Phillips and Stoffal are unsophisticated consumers, both these decisions point toward a different conclusion on delegation than that reached in the Arbitration Order. *See* Arbitration Order at 11.

Given the natural implications of these recent decisions, Plaintiffs respectfully request that they be granted leave to move for reconsideration of the Court's Arbitration Order.

## **LEGAL STANDARD**

Under Rule 54(b) of the Federal Rules of Civil Procedure, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised *at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b) (emphasis added). Indeed, "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001).

In the Northern District of California, reconsideration of interlocutory orders is governed by Civil Local Rule 7-9, which provides three grounds for reconsideration: "(1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments." *Hamm v. Mercedes-Benz USA, LLC*, 2023 WL 4186013, at *2 (N.D. Cal. Jun. 23, 2023) (citing Civil L.R. 7-9(b)).

Here, Plaintiffs rely on the first and second prongs, because there are "material difference[s] . . . in law" and "change[s] of law" from when the Court issued its Arbitration Order.[5] And since

---

[5] With regards to the "material difference . . . in law" and "change in law" prongs of Civil L.R. 7.9(b), it is not required that the new or changed law be binding or controlling. *See generally, e.g.*, *NCUA Bd. v. Goldman Sachs & Co.*, 2013 WL 12306438, at *3 (C.D. Cal. Jul. 11, 2013) ("Nowhere does the rule mention that 'controlling' or 'binding' law is needed for reconsideration; indeed, there need only be a 'material difference in ... law' or a 'change of law' to warrant reconsideration." (citing C.D. Cal. L.R. 7-18)); *Tongson v. Cnty. of Maui*, 2007 WL 2377355, at *2 n.1 (D. Haw. Aug. 15, 2007) (explaining that binding precedent is not

-3-

PLAINTIFFS' MOT. REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER;
Case No. 3:23-cv-1145-TLT (Lead Case)

Plaintiffs rely on decisions that were just recently issued, they exercised "reasonable diligence" in bringing this motion. Civil L.R. 7-9(b).

## ARGUMENT

**I. Two Recent Decisions Bear Directly on the Existence (or Lack Thereof) of an Agreement to Arbitrate.**

**A. A Recent Decision by the Honorable Judge Haywood Gilliam Jr. Found that a Similarly Broad Arbitration Provision Did Not Govern a Separate Agreement.**

In *Oura Ring*, after a physician sued a health company for failing to compensate him for advisory work he performed, and the company moved to compel arbitration based on a preexisting investment agreement, the court held that the physician's "agreement to investment and his agreement to advise were 'separate and not interrelated,'" such that the parties "never formed an agreement to arbitrate the claims at issue." 2024 WL 1382464, at *3–5 (quoting *Johnson*, 57 F.4th at 683). In performing its analysis, the court applied California "state-law principles of contract interpretation," including that an arbitration provision must be interpreted "in connection with the rest of the agreement and not detached portions thereof," and that "a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting." *Id.* at *3 (quoting *Int'l Bhd. Of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (cleaned up); *Revitch*, 977 F.3d at 717).

So, despite the investment agreement's broad arbitration clause—which purported to cover "[a]ny dispute, controversy or claim arising out of or in connection with this Agreement or the transactions contemplated herein"—the court considered the investment agreement "holistically," and found that it did not "govern" the advisory agreement. *Id.* at *3-4. The court emphasized the parties' lack of "mutual intent," concluding that the parties did *not* mutually intend for the previous investment agreement to govern the later agreement for advisory services. *Id.* And likening this scenario to the one in *Johnson*, "which also dealt with two different transactions between the same

---

required to accept a motion for reconsideration, where the local rule does "does not require that the intervening change in law be an intervening change in *controlling* law," "unlike the local rules of some other districts."); *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1069 (C.D. Cal. 2010) (explaining that the court granted a motion to reconsider an order compelling arbitration based upon an *unpublished* Ninth Circuit decision).

-4-

1  two parties," the court found that the physician "agreed to arbitrate claims arising from his
2  relationship as a shareholder, but not those arising in other contexts." *Compare id.* at \*12 (citing 57
3  F.4th at 682), *with* Arb. Order at 17 ("[T]he separate agreements are not independent because the
4  purchases concern the same customers and are services for the vehicles purchased.").
5  Fundamentally, "[t]he point [was] that the agreements bear on fundamentally unrelated subject
6  matters, were negotiated separately, and involve[d] different consideration," and "[t]he fact that
7  they happen[ed] to both say the word 'options' and involve[d] the same parties [was] insufficient to
8  make these independent agreements interrelated." *Oura Ring,* 2024 WL 1382464, at \*4.

9        This decision is on point. Just as in *Oura Ring*, Plaintiffs' purchase, lease, or finance
10 agreements concern a different "subject matter" than their later transactions for repair services and
11 parts; they "were negotiated separately"; and they "involve[d] different consideration." *Id.* at \*4–5.
12 In fact, the transactions also involved separate parties insofar as many of the repair services and
13 compatible parts were purchased from Tesla-Approved Collision Centers rather than from Tesla
14 itself. *See* MTD Order at \*3, 7. And although Plaintiffs' agreements included similarly expansive
15 arbitration provisions, they also contained language that cabined their subject matter. *Compare Oura*
16 *Ring*, 2024 WL 1382464, at \*10–11, *with* ECF No. 75-3 at p. 3 ("You agree to *purchase the vehicle* (the
17 'Vehicle') described in your Vehicle Configuration from Tesla, Inc. or its affiliates ('we,' 'us' or
18 'our'), pursuant to the terms and conditions of this Agreement.") (emphasis added); ECF No. 75-4
19 at p. 3 (same); and ECF No. 75-2 at p. 2 ("By signing this contract, you choose to *buy the vehicle* on
20 credit under the agreements on all pages of this contract.") (emphasis added). When read
21 "holistically," with the parties' "mutual intent" in view, they do not govern Plaintiffs' antitrust
22 claims here. *Oura Ring*, 2024 WL 1382464, at \*3–5.

23     **B. The Arbitration Order is at Odds with the Court's Recent MTD Order.**

24       Since Plaintiffs' SCAC included revised allegations, the MTD Order considered and ruled
25 on facts that the Court could not have known when it issued the Arbitration Order. Specifically, the
26 Court found that Plaintiffs "sufficiently [pled] that they 'did *not* knowingly enter a contract' that
27 would lock them into the aftermarkets associated with their foremarket Tesla EV," and "that
28 Plaintiffs and consumers, generally, were not aware of the repair restrictions and service center

-5-

PLAINTIFFS' MOT. REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER;
Case No. 3:23-cv-1145-TLT (Lead Case)

limitations described in the complaint."[6]

These findings strongly suggest that the parties had no "mutual intention"—or "meeting of the minds"—regarding repair services and parts. *See Oura Ring*, 2024 WL 1382464, at *3–4; *Johnson*, 57 F.4th at 682 ("In California, '[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting.'" (quoting Cal. Civ. Code. § 1636); *see also* Cal. Civ. Code § 1580 ("Consent is not mutual unless the parties agree on the same thing in the same sense."); *Cortes v. Cabrillo Credit Union*, 2021 WL 2588858, at *6 (S.D. Cal. Jun. 24, 2021) ("This principle of knowing consent applies with particular force to provisions for arbitration." (citing *Windsor Mills, Inc. v. Collins & Aikman Corp.* 25 Cal. App. 3d 987, 993 (1972))). Plaintiffs could not have intended to arbitrate disputes about later purchases that they did not know they would be forced to make. *See* Arbitration Order at 7 ("In ruling on a motion to compel arbitration, a court's 'first principle' is that "[a]rbitration is strictly a matter of consent . . . and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original)). This conclusion is only strengthened by Plaintiffs' allegations that they were "unaware of the repair restrictions" because Tesla "mis[led] them." MTD Order at 16. So, while Plaintiffs' subsequent maintenance purchases were indeed "dependent on owning or leasing the EVs in the first place,"[7] Plaintiffs could not have grasped the full extent of the coercive "relationship" they were entering into. Arb. Order at 11, 17.

---

[6] MTD Order at 16–17 (emphasis added); *see also id.* at 17 ("Based on evidence cited by Plaintiffs, it is plausible that a significant portion of Tesla purchasers were unaware of their vehicles' forthcoming service and repair issues at the time of purchase."); *id.* at 26 ("That collision centers and body shops outside of Tesla are seeking to receive training, equipment, and parts suggests that, like the in-app purchasing platform in *Epic Games*, there is efficiency and separation between Tesla EVs and its aftermarkets.").

[7] Though, notably, these EV purchases could just as easily have been made on the secondary market rather than from Tesla itself; similarly, the repair services and compatible parts could have been and in fact were purchased from other parties rather than Tesla as well.

-6-

PLAINTIFFS' MOT. REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER;
Case No. 3:23-cv-1145-TLT (Lead Case)

**II.  Two Recent Decisions Counsel Reconsideration of the Delegation Issue.**

**A.  A Recent Ninth Circuit Decision Addressing Parties' Sophistication in the Arbitration Context Counsels Reconsideration.**

In affirming a district court's decision to grant Amazon's motion to compel arbitration, the Ninth Circuit recently considered whether a party's "sophistication" was relevant to a delegation provision's unconscionability. *Fli-Lo Falcon*, 97 F.4th at 1200. The court "assume[d], without deciding" that the answer was yes, citing two cases from the Northern District of California that found that incorporation of the AAA rules was insufficient evidence of delegation where plaintiffs were ordinary consumers. *Id.* (citing *Ingalls v. Spotify USA, Inc.*, 2016 WL 6679561, at *3–4 (N.D. Cal. Nov. 14, 2016); *Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1079 (N.D. Cal. 2015)). However, the court rejected the plaintiffs' argument that they were unsophisticated because the record showed they were "sophisticated business entities." *Id.* at 1201.

Notably, the court distinguished such "business entities" from "unsophisticated consumers" whose "lack of sophistication impacts their ability to discern their contractual obligations." *Id.* Indeed, the court summarized *Brennan v. Opus Bank*, 796 F.3d 1125, 1130–31 (9th Cir. 2015) as "holding that 'incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability' *between sophisticated parties*." *Id.* (emphasis added). This is a narrower proposition than the one this Court relied on in its Arbitration Order. *Compare id.*, *with* Arb. Order at 11 (stating that incorporation of the AAA rules "constitute[s] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability," without addressing parties' sophistication) (citing *Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013)). And because in *Fli-Lo Falcon* the Ninth Circuit "found that plaintiffs [were] sophisticated," it concluded that it "*must* enforce the delegation provision under *Brennan*." 97 F.4th at 1201 (citing 796 F.3d 1125, 1130–31) (emphasis added). The obvious implication is that courts could and *should* find otherwise if parties are unsophisticated. *See id.*

In sum, not only did the Ninth Circuit leave the door open for district courts to find parties' lack of sophistication dispositive—it encouraged it. *See id.* And because Phillips and Stoffal are "unsophisticated consumers," this decision counsels reconsideration. *Id.*

-7-

PLAINTIFFS' MOT. REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER;
Case No. 3:23-cv-1145-TLT (Lead Case)

**B. A Recent State Appellate Court Decision—Ruling Against Tesla Itself in a Case with the Same Material Facts—Also Supports Reconsideration.**

In *Keeton v. Tesla, Inc.*, the California Court of Appeal held that Tesla's incorporation of the JAMS rules into the plaintiff's employment contract did *not* constitute "clear and unmistakable evidence" that the parties intended to delegate arbitrability to an arbitrator. 2024 WL 3175244, at *4.[8] The court emphasized that the arbitration agreement contained "no express language delegating arbitrability issues to the arbitrator." *Id.* And while incorporation of arbitration rules "might be sufficient indication of the parties' intent in other contexts," the court reasoned that it did not give an unsophisticated employee—who was "not a lawyer"—"much of a clue that that she [was] giving up her usual right to have the court decide whether the arbitration provision [was] enforceable." *Id.* (quoting *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 790 (2012) (finding the same when an employer incorporated the AAA rules).

Crucially, the court explained that it was "not enough" that the "ordinary rules of contract interpretation" would lead to delegation; "[r]ather, the result must be clear and unmistakable, because the law is solicitous of the parties actually *focusing* on the issue." *Id.* (emphasis in original). Since there was "no evidence" that the employee "knowingly agreed" to delegate arbitrability, Tesla failed to clear the "heightened," clear-and-unmistakable standard. *Id.*

This decision is squarely on-point with respect to Phillips and Stoffal. Just as in *Keeton*, Tesla snuck delegation provisions into their consumer contracts via incorporation. *See id.* Likewise, there is "no evidence" that these plaintiffs "knowingly agreed" to delegate arbitrability. *See id.* So, even though the "ordinary rules of contract interpretation" would normally lead to delegation, that is not "enough" to establish "clear and unmistakable" evidence for these unsophisticated consumers. *Compare id.*, *with* Arbitration Order at 10–11 (finding delegation purely by contract interpretation).

---

[8] Though this language comes from unpublished text and thus is not decisional law, the Court may still consider it for "persuasive reasoning" and because California Rule of Court 977(a) is not binding on federal courts. *See Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F. Supp. 2d 1084, 1103 n.7 (N.D. Cal. 2005); *see also Jerry Beeman & Pharmacy Servs., Inc. v. Anthem Prescription Mgmt., LLC*, 652 F.3d 1085, 1093 (9th Cir. 2011) ("[W]e are not precluded from considering these unpublished decisions as a possible reflection of California law").

-8-

PLAINTIFFS' MOT. REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER;
Case No. 3:23-cv-1145-TLT (Lead Case)

## **CONCLUSION**

Plaintiffs respectfully request that they be granted leave to move for reconsideration of the Court's Arbitration Order.

Dated: July 16, 2024

**FREED KANNER LONDON & MILLEN LLC**

By: <u>/s/ Matthew W. Ruan</u>
Matthew W. Ruan (SBN 264409)
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com

Douglas A. Millen
Michael E. Moskovitz
**FREED KANNER LONDON & MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com

Kimberly A. Justice
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, Pennsylvania 19428
Telephone: (610) 234-6486
kjustice@fklmlaw.com

*Interim Lead Counsel for the Proposed Class*

R. Alexander Saveri (SBN 173102)
**SAVERI & SAVERI, INC.**
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

*Interim Liaison Counsel for the Proposed Class*

-9-

PLAINTIFFS' MOT. REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER;
Case No. 3:23-cv-1145-TLT (Lead Case)

Stuart G. Gross (SBN 251019)
**GROSS KLEIN PC**
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Telephone: (415) 671-4628, ext.10
sgross@grossklein.com

Richard D. McCune
David C. Wright
**McCUNE LAW GROUP, McCUNE WRIGHT AREVALO VERCOSKI KUSEL WECK BRANDT, APC**
3281 East Guasti Road, Suite 100
Ontario, California 91761
Tel: (909) 557-1250
rdm@mccunewright.com
dcw@mccunewright.com

Derek Y. Brandt
Connor P. Lemire
**McCUNE LAW GROUP, McCUNE WRIGHT AREVALO VERCOSKI KUSEL WECK BRANDT, APC**
231 North Main Street, Suite 20
Edwardsville, IL 62025
Tel: (618) 307-6116
dyb@mccunewright.com
cpl@mccunewright.com

Jill M. Manning (State Bar No. 178849)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94111
Telephone: (415) 433-9000
Facsimile: (415) 433-9008
jmanning@pwfirm.com

Daniel L. Warshaw (State Bar No. 185365)
Michael H. Pearson (State Bar No. 277857)
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
dwarshaw@pwfirm.com
mpearson@pwfirm.com

-10-

PLAINTIFFS' MOT. REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER;
Case No. 3:23-cv-1145-TLT (Lead Case)

Jon A. Tostrud (State Bar No. 199502)
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 278-2640
Facsimile: (310) 278-2640
jtostrud@tostrudlaw.com

Brian P. Murray
Lee Albert
**GLANCY PRONGAY & MURRAY, LLP**
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
bmurray@glancylaw.com
lalbert@glancylaw.com

Blaine Finley
**FINLEY PLLC**
1455 Pennsylvania Ave., NW, Suite 400
Washington, DC 20004
Telephone: (281) 723-53407904
bfinley@finley-pllc.com

Matthew S. Weiler (SBN 236052)
Braden R. Leach (SBN 348871)
**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
MWeiler@schneiderwallace.com
Bleach@schneiderwallace.com

Michelle C. Clerkin
**SPIRO HARRISON & NELSON**
228 Park Avenue South
New York, NY 10003
Telephone: (917) 634-2244
mclerkin@shnlegal.com

Peggy Wedgeworth
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN**
100 Garden City Plaza
Garden City, NY 11530
Telephone: (646) 515-1269
pwedgeworth@milberg.com

-11-

Arthur Stock
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
astock@milberg.com

Brian D. Clark
Kyle Pozan
Eura Chang
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Ave S, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Fax: (612) 339-0981
bdclark@locklaw.com
kjpozan@locklaw.com
echang@locklaw.com

William G. Caldes
Jeffrey J. Corrigan
Icee N. Etheridge
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
Fax: (215) 496-6611
BCaldes@srkattorneys.com
JCorrigan@srkattorneys.com
IEtheridge@srkattorneys.com

Garrett D. Blanchfield
Brant D. Penney
**REINHARDT WENORD & BLANCHFIELD**
First National Bank Building, Suite W1050
332 Minnesota Street
St. Paul, MN 55101
Telephone: (651) 287-2100
g.blanchfield@rwblawfirms.com
b.penney@rwblawfirm.com

*Attorneys for Plaintiffs and the Proposed Class*

-12-

PLAINTIFFS' MOT. REQUESTING LEAVE TO MOVE FOR RECONSIDERATION OF ARBITRATION ORDER;
Case No. 3:23-cv-1145-TLT (Lead Case)