SAVERI & SAVERI, INC.
R. Alexander Saveri (SBNY 173102)
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
rick@saveri.com

FREED KANNER LONDON & MILLEN LLC
Matthew W. Ruan (SBN 264409)
Douglas A. Millen (appearing pro hac vice)
Michael E. Moskovitz (appearing pro hac vice)
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

WILMER CUTLER PICKERING HALE AND DORR LLP
Ari Holtzblatt (SBN 354631)
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202) 663-6964
ari.holtzblatt@wilmerhale.com

David Gringer (*pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8864
david.gringer@wilmerhale.com

David Marcus (SBN 158704)
350 S. Grand Ave., Suite 2400
Los Angeles, CA 90071
Tel: (213) 443-5312
david.marcus@wilmerhale.com

*Attorneys for Defendant Tesla, Inc.*

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| VIRGINIA M. LAMBRIX, *et al.*,<br><br>    Plaintiff,<br><br>   v.<br><br>TESLA, INC.,<br><br>    Defendant. | Case No. 23-CV-01145-TLT-PHK<br><br>STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS AND SEARCH METHODOLOGY |

**I.    PURPOSE**

This Order ("ESI Protocol & Search Methodology Order") will govern discovery of

1

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT

electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. This binds all parties and their counsel of record in this Action (collectively, the "Parties"). The failure of this Protocol to address any issue is without prejudice to any position that a Party may take on that issue. To the extent that an issue is not addressed by a provision herein, the Federal Rules of Civil Procedure, the Northern District of California eDiscovery Guidelines, and other applicable Standing Orders and Guidelines of this Court control, unless the Parties agree otherwise or ask the Court to decide on a particular issue.

## II.  COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure and the Court's Guidelines for the Discovery of Electronically Stored Information ("ESI Guidelines"). Section 1.02 of the ESI Guidelines states that the Court expects cooperation on issues relating to the preservation, collection, search, review, and production of ESI, particularly in the earliest possible stages of discovery.

## III.  ESI LIAISONS

**A.  Designation**: Each Party has designated an ESI Liaison: Stephen Teti (Plaintiffs) and Arielle Herzberg (Defendant). Any Party is free to change its designated ESI Liaison by providing written notice to the other Parties.

**B.  Duties of ESI Liaison**: Each ESI Liaison will be knowledgeable about and responsible for discussing their respective ESI; will be or have reasonable access to personnel who are knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the Liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## IV.  GENERAL PROVISIONS

A.  **Limitations & Non-Waiver:** Pursuant to the terms of this ESI Protocol & Search Methodology Order, information regarding search process and ESI practices may be disclosed, but compliance with this ESI Protocol & Search Methodology Order does not constitute a waiver, by any Party, of any objection to the production of particular ESI for any reason, including that it is irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. Nothing in this ESI Protocol & Search Methodology Order shall be construed to affect the discoverability of information or the admissibility of discoverable information. Nor shall anything in this ESI Protocol & Search Methodology

Order be construed to affect the authenticity of any document or data. All objections to the discoverability, admissibility, authenticity, confidentiality, or production of any documents and ESI are preserved and may be asserted at any time. For the avoidance of doubt, a Party's compliance with this ESI Protocol & Search Methodology Order will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege. All Parties preserve all such privileges and protections, and all Parties reserve the right to object to any such privileges and protections.

B.      **Confidential Information:** For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated as confidential under the Protective Order (Dkt. 178).

C.      **Preservation:** The Parties agree that they shall continue to take reasonable steps to preserve relevant documents and ESI in accordance with their obligations under applicable law. The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Litigation and those that are not reasonably accessible or need not be preserved because of undue burden or cost or proportionality. By preserving or producing information for the purpose of this Litigation, the Parties are not conceding that such material is discoverable or admissible.

V.      **GENERAL PRODUCTION FORMAT PROTOCOLS**

A.      **TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image, pursuant to Paragraph II(E). Original document orientation and attributes should be maintained to the extent reasonably practicable and technologically possible for a producing Party's vendor (*i.e.*, portrait to portrait and landscape to landscape). The imaged data shall retain all attributes of the native or hard-copy file, such as document breaks, to the extent reasonably practicable. To the extent reasonably practicable, produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating: "Document Produced Natively." A producing Party retains the option to produce ESI in alternative formats, which may include native format, or a combination of native and TIFF formats.

B.      **Text Files:** Each ESI item produced under this ESI Protocol & Search Methodology Order shall be accompanied by a text file as set out below. All text files shall be provided as

a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

    i. **OCR:** A producing Party shall scan and OCR paper documents. The Parties will endeavor to generate accurate OCR and will utilize OCR processes and technology of sufficient quality to enable the generation of utilizable text files. OCR text files should indicate page breaks where possible. When OCR is used by a producing Party, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. For redacted documents, the document shall undergo OCR after the text has been redacted in order to remove redacted text.

    ii. **ESI:** With the exception of redacted documents, emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available. For redacted documents, the text files shall not contain the text of the redacted portions.

**C.     Production of Native Items:** Spreadsheet-application files (*e.g.*, MS Excel), presentation files (*e.g.*, MS PowerPoint), personal databases (*e.g.*, MS Access), XML files, and multimedia audio/visual files such as voice and video recordings (*e.g.*, .wav, .mpeg, and .avi), and other documents that are difficult to render in TIFF shall be produced in native format if reasonably practicable. When producing the above file types in native format, the producing Party shall produce a single-page TIFF slip sheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. Through the pendency of the Litigation, the producing Party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata. Where native items need to be redacted, they may be redacted in their native formats with each redaction clearly indicated, and produced in their native formats.

**D.     Requests for Other Native Files:** Other than as specifically set forth above, a producing Party need not produce documents in native format. If a Party would like a particular document produced in native format and this ESI Protocol & Search Methodology Order does not require the production of that document in its native format, the Party making such a request shall explain the reason for its request that the document be produced in its native format. The requesting Party will provide a specific Bates range for documents it wishes to be produced in native format. The parties shall meet and confer to attempt to resolve the problem. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

**E.     Bates Numbering:**

1. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters, embedded spaces, hyphens, or underscores; (4) be sequential within a given document; and (5) identify the producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2. If a Bates number or set of Bates numbers is skipped in a production, the producing Party will so note in a cover letter or production log accompanying the production.

3. The producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

**F.     Parent-Child Relationships:** Parent-child relationships (*i.e.*, the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved. For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order immediately following the e-mail.

**G.     Entire Document Families:** Subject to Paragraph V(K)(1) below, entire document families must be produced, even if only the parent email or an attachment to an email is responsive, except (1) junk files and non-user-created content routinely excluded during processing, and (2) documents that are properly logged and withheld on the basis of attorney-client privilege or work product protection.

**H.     Load Files:** All production items will be provided with a delimited data file, or "load file," which will include both an image cross-reference load file (such as an Opticon file) and a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production.

**I.     Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting Party may, in good faith, request that a reasonable number of documents or ESI items be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). Requests that a document be produced in color will not be unreasonably denied by the producing Party. If a producing Party wishes to object, it may

5

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

do so by responding in writing and setting forth its objection(s) to the production of the requested document in color. Documents must be produced in color, or a written objection to their production must be provided, within a reasonable timeframe of receiving a written request as set forth in this Paragraph.

**J.     Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to the terms of the Protective Order entered by the Court in the Litigation (Dkt. 178), or to any applicable federal, state, or common law (*e.g.*, Personally Identifiable Information or Protected Health Information), the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. To the extent reasonably practicable, this designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Requesting Parties shall take reasonable steps to ensure that the confidentiality claim follows the document regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol & Search Methodology Order, any protective order or confidentiality order, or any confidential stipulation shall not waive any protection or confidential treatment.

**K.     Redactions**

    1.     **Personal Data Redactions:** A producing Party may redact personal information to the extent that the information falls within one of the following categories:

        a. the information relates to medical or health issues of an individual; or

        b. social security numbers, taxpayer-identification numbers, driver's license numbers, birthdates, credit card information, passport numbers, financial-account numbers or other bank account information, or personal passcodes. Such redactions should be identified as "Redacted – Personal Data" on the document.

        c. Each Party reserves the right to make additional personal data redactions and each Party reserves the right to challenge those redactions.

L. **Production Media & Protocol:** Documents shall be produced by sharefile or FTP link, unless otherwise agreed by the parties or required to effectuate the production.

VI. **PAPER DOCUMENT PRODUCTION PROTOCOLS**

   A. **Scanning:** A producing Party shall scan and OCR paper documents.

   B. **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents produced by scan and OCR to the extent reasonably practicable: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N). Additionally, all paper documents will be produced with a coding field named "Paper Document" marked with a "Y."

   C. **Unitization of Paper Documents:** Paper documents should be logically unitized for production to the extent reasonably practicable.

VII. **ESI METADATA FORMAT AND PROCESSING ISSUES**

   A. **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.

   B. **Metadata Fields and Processing:** Appendix 1 sets forth the minimum metadata fields that must be produced. To the extent that metadata does not exist, is not reasonably accessible or available or would be unduly burdensome to collect, nothing in the ESI Protocol shall require any party to extract, capture, collect or produce such data, with the exception of the following fields to the extent reasonably practicable: (a) BegBates, (b) EndBates, and (c) Confidentiality, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

   **1. Date and Time:** No party shall intentionally modify the date or time as contained in any original ESI.

   **2. Auto Date/Time Stamps:** To the extent reasonably practicable if there is an automatic (non-manual) way of doing so without a party needing to find a custom solution, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

   C. **Redaction:** For redacted documents, text files shall not contain the text of the redacted portions. Any non-privileged metadata fields reasonably available shall be

provided.

**D.    Email Collection and Processing:**

  1.    **Email Threading:** The Parties may use email thread suppression to review only the most inclusive threads for responsive material..

  2.    **Email Domains:** Producing Parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources. To the extent a Party opts to exclude uniquely identifiable domain names as part of its initial filter of potentially responsive documents, the Parties agree to disclose domain names excluded under this Paragraph.

**E.    De-duplication:** A producing Party may de-duplicate any file globally (*i.e.*, across document custodians) or horizontally at the "family" level (*i.e.*, families should not be broken due to de-duplication). Each party may also de-duplicate emails in such a way as to eliminate earlier or incomplete chains of emails and therefore produce only the most complete iteration of an email chain.

Duplicate electronic documents shall be identified by a commercially accepted industry standard (*e.g.*, MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing Party shall use reasonable efforts to produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing Party is not obligated to extract or produce entirely duplicate ESI documents. For any de-duplicated document, the producing Party shall populate the following metadata fields, as set forth in Appendix 1: DupCust, CustodianOther, or CustodianAll.

**F.    Hidden Text:** ESI items shall be processed, in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

**G.    Embedded Objects:** Embedded objects will not be processed in such a way that they are extracted, except as to standalone Microsoft Excel, Microsoft Word, or similar documents. Such standalone Microsoft Excel spreadsheets (.xls), Microsoft Word, or similar documents that are embedded in Microsoft Word documents will be extracted as separate documents and treated as attachments to the document using a commercial software that can extract in an automated (non-manual) way. The Parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing Party (*e.g.*, such embedded objects will be produced within the document itself, rather than as separate attachments).

**H.     Hyperlinked Files:** A producing Party will conduct a reasonable search for responsive documents within any folder that employees of the producing Party identify as likely to contain hyperlinked documents responsive to agreed-upon document requests. To the extent the requesting Party identifies a reasonable number of additional hyperlinks within the documents that the other produces that they wish to examine, the Parties will meet and confer about attempting to obtain this reasonable set of hyperlinked documents.

**I.     Password-Protected, Encrypted, or Proprietary-Software Files:** With respect to any ESI items that are password-protected or encrypted within the scope of review, the producing Party will take reasonable steps based on industry standards to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which a party identifies are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing Party shall advise the requesting Party and identify a reasonable number of such documents for the producing Party to attempt to open. The Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

## VIII. <u>SEARCH</u>

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**A.     Iterative Process:** The producing Party will propose a set of search terms and the requesting Party may provide proposed revisions and additions to the producing Party's search terms within 5 business days. The Parties will meet and confer on revising the search terms and the Parties will cooperate in good faith regarding the disclosure and formulation of appropriate search terms. The requesting Party shall not unduly delay these negotiations and must respond as soon as practicable regarding search terms in order for the producing Party to be able to meet deadlines. The producing Party and the requesting Party will work together in good faith to reasonably narrow the number of documents returned via search term hits and narrow the number of irrelevant documents captured as a result of the search terms. To the extent any disputes remain concerning the use of specific proposed search terms after good faith negotiations have occurred, either Party may request the assistance of the Court in resolving such disputes, but must proceed with haste so as not to block the producing Party from the ability to meet deadlines. The requesting Party can request the producing Party to consider applying additional search terms and the producing Party is under no obligation to run the terms. The Parties shall engage in good faith negotiations to resolve any disputes regarding a request for application of additional search terms. To the extent such good faith negotiations fail, either Party may request the assistance of the Court in resolving such a dispute.

9

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK

    **B.**    **TAR/CAL:** Should the parties desire to leverage Technology Assisted Review ("TAR") or Continuous Active Learning ("CAL"), search terms may be applied with these technologies. The Parties will meet and confer on any issues or disputes regarding the use of TAR/CAL. If a party uses TAR/CAL, it will disclose the following information: (a) the name of the TAR/CAL software and vendor, (b) a general description of the producing Party's TAR/CAL process (c) a general description of the categories or sources of the documents included or excluded from the TAR/CAL process, (d) population in the TAR/CAL model, and (e) what quality control measures will be taken. The Parties will meet and confer regarding validation procedures, including whether a validation protocol will be needed.

    **C.**    **Structured Data:** To the extent a response to discovery requires production of discoverable ESI contained in a structured database, the Parties shall meet and confer in an attempt to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file for review by the requesting Party.

**IX.**    **PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**X.**    **CLAIMS OF PRIVILEGE AND REDACTIONS**

    **A.**    **Production of Privilege Logs:** Except as provided otherwise below, for any document withheld in its entirety, the producing Party will produce privilege logs in MS Excel format or any other format that permits electronic sorting and searching, at a time mutually agreed upon by the parties.

    **B.**    **Exclusions from Logging Potentially Privileged Documents:** The following categories of documents do not need to be contained on a producing Party's privilege log, unless good cause exists to require that a Party do so.

    1.    Any communications exclusively between a producing Party and its outside counsel, any non-testifying experts in connection with specific litigation, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with specific litigation.

    2.    Any privileged materials or work product created by a Party's outside counsel, any non-testifying experts in connection with specific litigation, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with specific litigation.

C.   **Privilege Log Requirements:**

1. To the extent applicable, each Party's privilege log must provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information), an indication of the privilege or protection being asserted, identify any associated persons who are attorneys, and provide a brief description of the privileged or protected material.

   a. Objective metadata includes the following (as applicable to the document types as shown in Appendix 1):

      i. A unique privilege log identifier
      ii. Custodian
      iii. CustodianOther or CustodianAll (if applicable)
      iv. File Name (unless privileged itself)
      v. Email Subject (unless privileged itself)
      vi. Author
      vii. From
      viii. To
      ix. CC
      x. BCC
      xi. Date Sent
      xii. Time Sent
      xiii. Date Received
      xiv. Date Created
      xv. Bates Number (for documents produced as WIF slipsheets)

   b. In addition to the objective metadata fields, a Party must also:

      i. Indicate which privilege or protection is being asserted;

      ii. To the extent such information is not contained in the objective metadata for a document that the responding Party has identified as significant, a responding Party can request that the producing Party provide the author and date of the document, and the parties will meet and confer about adding such information manually.

   iii. Identify which persons associated with the document (*i.e.*, senders, recipients, or authors) are attorneys; and

   iv. Provide a brief description of the privileged or protected material.

 c. With respect to the "Email Subject" or "File Name" field, the producing Party may substitute a description of the document where the contents of these fields may reveal privileged information. In the privilege log(s), the producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "File Name" field.

D. **Documents Redacted for Privilege:** Redacted documents need not be logged as long as the nature of the privilege asserted is noted on the face of the document in the redacted area. Furthermore, for emails, the objective metadata (*i.e.*, to, from, cc, bcc, recipients, date, and time) shall not be redacted, unless the privilege or protection is contained in these fields. In accordance with this Paragraph, the producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information. After receipt of the production, the requesting Party may request in good faith that the producing Party create a privilege log for specific redacted documents, by Bates number, if the basis for the redaction is not clearly indicated on the document. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

E. **Challenges to Privilege Claims:** Following the receipt of a privilege log or redacted document, a requesting Party may identify, in writing (by Bates/unique identification number), the particular documents that it believes require further explanation. The producing Party shall respond to such a request. If the Parties cannot arrive at a mutually agreeable solution, then the matter may be brought to the Court.

XI. **CLAWBACK ORDER**

**A. Non-Waiver:** Pursuant to Federal Rule of Evidence 502(d), the production of any documents and accompanying metadata ("Protected Documents"), protected from discovery, including under the attorney-client privilege, work product doctrine, opinion work product doctrine, the joint defense or common interest privilege, privacy laws and regulations, or any other immunity from discovery (collectively, "privilege or protection"), shall not be deemed to waive any privilege or protection, including subject matter waiver, associated with such Protected Documents as to the receiving party or any third parties in this or in any other state or federal proceeding solely by virtue of such production or disclosure. Nothing in this Paragraph is intended to or shall serve to limit a Party's right to conduct a review of any material or information for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

**B. Assertion of a Clawback:** Any Party or non-Party may request the return of any Protected Document(s) on the grounds of privilege or protection by identifying it, stating the basis for withholding such material or information from production, and providing any other information that would be listed on a supplemental privilege log, subject to Paragraph XI(C) below.

**C. Clawback Process:** Federal Rule of Civil Procedure 26(b)(5)(B) shall govern the clawback of Protected Documents on the grounds of privilege or protection. If a Party or non-Party requests the return of such a Protected Document then in the custody of one or more Parties, the possessing Parties shall within 7 business days:

1. Destroy or return to the requesting Party or non-Party the Protected Document(s) and all copies thereof, and expunge from any other document or material information derived solely from the produced material or information; or

2. Notify the producing Party or non-Party that it wishes to challenge the claim of privilege or protection and has sequestered the material until the issue can be resolved. The Parties agree to meet and confer within 3 days regarding the claim of privilege or protection. If, at the conclusion of the meet and confer process, the Parties are still not in agreement, they may bring the issue to the Court. A Party challenging a clawback request under this Paragraph may use the content of the clawed-back document for the sole purpose of filing a motion with the Court under seal, consistent with Local Rule 5, that challenges whether or not the document is privileged or protected.

**D. Implementation of a Clawback:** Where a Party agrees to or is ordered to destroy a clawed back document, the Party must instruct their e-discovery vendor to delete the document entirely from their e-discovery database and delete other copies of the clawed back document. To the extent that it is not technologically feasible for a receiving Party to destroy a clawed back document (for example, if the clawed-back document is part of a production provided on read-only Production Media such that the clawed-back document cannot be destroyed without destroying the entire Production Media), the Parties will meet and confer as to an acceptable alternative approach.

## XII. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

IT IS SO STIPULATED, through Counsel of Record.

Dated: August 16, 2024

*/s/ Ari Holtzblatt*
Ari Holtzblatt (SBN 354631)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2100 Pennsylvania Ave. NW
Washington, DC 20037
Tel: (202) 663-6964
ari.holtzblatt@wilmerhale.com

David Gringer (*pro hac vice*)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel: (212) 230-8864
david.gringer@wilmerhale.com

David Marcus (SBN 158704)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
350 S. Grand Ave., Suite 2400
Los Angeles, CA 90071
Tel: (213) 443-5312
david.marcus@wilmerhale.com

Allison Bingxue Que (SBN 324044)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, California 94306
Tel: (650) 858-6000
allison.que@wilmerhale.com

Christopher C. Wheeler (SBN 224872)
**FARELLA BRAUN + MARTEL LLP**
One Bush Street, Suite 900
San Francisco, California 94104
Telephone:  (415) 954-4979
cwheeler@fbm.com

*Attorneys for Defendant Tesla, Inc.*

| | | |
|---|---|---|
| Dated: August 16, 2024 | | */s/ Matthew W. Ruan*  <br>Matthew W. Ruan (SBN 264409)  <br>**FREED KANNER LONDON & MILLEN LLC**  <br>100 Tri-State International, Suite 128  <br>Lincolnshire, IL 60069  <br>Telephone: (224) 632-4500  <br>mruan@fklmlaw.com  <br><br>*Counsel for Plaintiffs and Interim Lead Counsel for the Proposed Class* |
| Dated: August 16, 2024 | | */s/ Stephen J. Teti*  <br>Stephen J. Teti (*pro hac vice*)  <br>**LOCKRIDGE GRINDAL NAUEN PLLP**  <br>265 Franklin Street, Suite 1702  <br>Boston, MA 02110  <br>Telephone: (617) 456-7701  <br>sjteti@locklaw.com  <br><br>*Counsel for Plaintiffs* |

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: August 26, 2024

_____
HON. PETER H. KANG
United States Magistrate Judge

# Appendix 1: ESI Metadata and Coding Fields

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| BegBates | All | Control Numbers. |
| EndBates | All | Control Numbers. |
| BegAttach | All | Control Numbers (First production Bates number of the first document of the family). |
| EndAttach | All | Control Numbers (Last production Bates number of the last document of the family). |
| Custodian | All | Custodian name (ex. John Doe). |
| DupCust, CustodianOther, or CustodianAll | All | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| LogicalPath | All ESI Items | The directory structure of the original file(s). Any container name is included in the path. |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| Email Thread ID | Email | Unique identification number that permits threading of email conversations.  For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. |
| DateMod | Email, Edoc | Date the document was modified. |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol & Search Methodology Order.

1

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| | | email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. |
| FileName | Email, Edoc | File name of the edoc or email. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| DocExt | All | File extension of the document. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Withheld Placeholder | All | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y." |
| Privilege Asserted | All | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (*e.g.*, "Redacted – Attorney Client Privileged" or "Withheld – Attorney Client Privileged"). |
| Paper | All | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Attachment Count | Email, Edoc | Identifies the number of attachments to an email (if present/applicable). |
| Page Count | All | Indicates the number of pages within the document. |
| Attachment Names | Email, Edoc | Identifies the file names of all attachments to an email (if present/applicable). |

| Field Name[1] | Populated For (*Email, Edoc, Calendar, Contact, Cellphone, or All*) | Field Description |
|---|---|---|
| Calendar Date Begin | Calendar | Identifies the begin date of a calendar entry (if present). |
| Calendar Date End | Calendar | Identifies the end date of a calendar entry (if present). |
| Calendar Time Begin | Calendar | Identifies the begin time of a calendar entry (if present). |
| Calendar Time End | Calendar | Identifies the end time of a calendar entry (if present). |
| Production Volume | All | Identifies the unique production volume ID of the delivery (*e.g.*, ABC001). |
| Is Hyperlinked | Email, Edoc | Descriptor for documents that are shared via hyperlink within another document as distinct from embedded or attached documents (where applicable). |

## ATTORNEY ATTESTATION

I, Ari Holtzblatt, am the ECF User whose ID and password are being used to file this joint stipulation. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each signatory.

| | |
|---|---|
| Dated:  August 22, 2024 | By:  */s/ Ari Holtzblatt*<br>          Ari Holtzblatt |

19

STIPULATED PROTOCOL AND [PROPOSED] ORDER FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS
AND SEARCH METHODOLOGY
CASE NO. 23-CV-01145-TLT-PHK