Matthew W. Ruan (SBN 264409)
**FREED KANNER LONDON**
**& MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
mruan@fklmlaw.com

*Counsel for Plaintiffs and Interim Lead Counsel for the Proposed Class*

Ari Holtzblatt (SBN 354361)
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2100 Pennsylvania Ave., NW
Washington, DC 20037
Telephone:  (202) 663-6964
Facsimile:  (202) 663-6363

*Counsel for Defendant Tesla, Inc.*

[Additional counsel listed on signature page.]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| VIRGINIA M. LAMBRIX, *et al*., individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TESLA, INC.,<br><br>                    Defendant. | Case No. 3:23-cv-1145-TLT (Lead Case)<br>Case No. 3:23-cv-1496-TLT<br>Case No. 3:23-cv-1543-TLT<br>Case No. 3:23-cv-2035-TLT<br>Case No. 3:23-cv-2352-TLT<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Judge:      Honorable Trina L. Thompson |

Plaintiffs Virginia M. Lambrix, Anthony Adjuder, Sean Bose, Patrick Doyle, Philomena Nana-Anyangwe, and Jason Pratti (collectively, "Plaintiffs") and Defendant Tesla, Inc., ("Tesla", together with Plaintiffs, the "Parties") jointly submit this JOINT CASE MANAGEMENT STATEMENT pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9 in advance of the Case Management Conference scheduled for September 26, 2024.  *See* Dkt. 166.

1. **Jurisdiction and Service**

Plaintiffs assert that this Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (class action diversity jurisdiction), and 1337(a) (antitrust); and under 15 U.S.C. § 15 (antitrust). Tesla does not contest Plaintiffs' asserted statutory sources of subject-matter jurisdiction. There are no issues pending at this time regarding personal jurisdiction or venue, and no parties remain to be served.

2. **Facts**

**PLAINTIFFS STATE:**

Plaintiffs allege that Tesla has leveraged its market power in the United States electric vehicle ("EV") market to monopolize and restrain the United States markets for (a) compatible replacement parts ("Tesla-Compatible Parts") and (b) maintenance and repair services ("Tesla Repair Services") for Tesla EVs. Plaintiffs further allege that that Tesla leverages its market power in the Tesla-Compatible Parts market to maintain its monopoly in Tesla Repair Services market, and vice versa.

Tesla accomplishes this by, among other things:

(a) Designing its vehicle warranties and related policies to discourage Tesla owners from obtaining parts or services from anyone other than Tesla;

(b) Designing its vehicles so that maintenance and repairs require access to diagnostic and telematic information accessible only through remote management tools exclusively accessed by Tesla; and

(c) Limiting access to its manuals, diagnostic tools, vehicle telematic data, and original equipment manufacturer ("OEM") replacement parts.

As a result of this anticompetitive course of conduct, Tesla has prevented independent providers from entering the Tesla Repair Services market, prevented its original equipment manufacturer ("OEM") parts suppliers from producing Tesla-Compatible Parts for anyone other than Tesla, and prevented market entry by non-OEM Tesla-Compatible Parts manufacturers. These actions cause Tesla owners to suffer lengthy delays in repairing or maintaining their EVs, only to pay supracompetitive prices for those parts and repairs once they are finally provided.

**TESLA STATES:**

Over the last decade, Tesla has transformed the already highly competitive automotive industry. Through technological innovation, it has provided consumers affordable, long-lasting, zero-emissions car options, supported by its sprawling Supercharger network.  And through its innovative direct-to-consumer business model, it has eliminated the add-ons, mark-ups, and upsells imposed by third-party dealerships.  These developments have benefitted consumers and the planet itself in innumerable ways. Among those benefits, the average maintenance and repair costs over the lifespan of a Tesla vehicle are consistently among the lowest in the automobile market.

Tesla has never attempted to restrain competition from others who seek to repair Tesla cars or manufacture non-OEM replacement Tesla parts.  In fact, Tesla has actively encouraged independent repair facilities to service Tesla vehicles, and facilitated their ability to do so by making service manuals, diagnostic software, and other vehicle information widely available.  Tesla has taken these measures not only because it is the best way to serve its customers, but also because the company does not stand to benefit by monopolizing these aftermarkets—indeed, it often loses money providing those services itself directly to customers.  For these and many other reasons, Plaintiffs' allegations are entirely without merit.

**3.  Legal Issues**

**PLAINTIFFS STATE:**

Additional legal issues may emerge through discovery, and Plaintiffs reserve the right to modify their position on these points as further information becomes available.  At this time, the legal issues in this case include:

(i)     Whether Tesla has violated Section 2 of the Sherman Act by monopolizing or attempting to monopolize the aftermarkets for Tesla-Compatible Parts and Tesla Repair Services throughout the United States using the anticompetitive Repair Restrictions described in the Second Consolidated Amended Complaint ("SCAC");

(ii)    Whether Tesla has violated Section 1 of the Sherman Act by (a) leveraging its market power in the EV market to coerce Plaintiffs and the proposed class into purchasing Tesla Repair Services and Tesla-Compatible Parts only from Tesla and/or its Tesla-Approved

Collision Centers ("TACCs"), (b) leveraging its market power in the Tesla-Compatible Parts market to coerce Plaintiffs and the proposed class into purchasing Tesla Repair Services only from Tesla and its TACCs, and/or (c) leveraging its market power in the Tesla Repair Services market to coerce Plaintiffs and the proposed class into purchasing Tesla-Compatible Parts only from Tesla or its TACCs;

(iii)   Whether Tesla has violated the Cartwright Act, California Business & Professions Code § 16720 *et seq.*,  by (a) leveraging its market power in the EV market to coerce Plaintiffs and the proposed class into purchasing Tesla Repair Services and Tesla-Compatible Parts only from Tesla and/or its Tesla-Approved Collision Centers ("TACCs"), and/or (b) leveraging its market power in the Tesla-Compatible Parts market to coerce Plaintiffs and the proposed class into purchasing Tesla Repair Services only from Tesla and its TACCs;

(iv)   Whether Tesla has violated the Cartwright Act, California Business & Professions Code § 16720 *et seq.*,  by (a) requiring its parts suppliers to enter into *de facto* exclusivity agreements which, among other things, prevent those suppliers from manufacturing Tesla-Compatible Parts for anyone other than Tesla, and or (b) requiring its TACCs to enter into de facto exclusivity agreements which, among other things, require them to adhere to Tesla's Repair Restrictions and prevent them from conducting repairs/maintenance for Tesla EVs using Tesla-Compatible Parts other than those sold and supplied by Tesla;

(v)   Whether Tesla's anticompetitive conduct as alleged in the SCAC violates the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*; and

(vi)   Whether Tesla should be enjoined from engaging in the Repair Restrictions alleged in the SCAC;

(vii)   Whether Plaintiffs and the proposed class should be awarded damages, treble damages, pre- and post-judgment interest, reasonable attorneys' fees and costs, and any other injunctive or other equitable relief necessary to protect Plaintiffs and the proposed class.

**TESLA STATES:**

While reserving the right to timely raise other issues during the litigation, Tesla expects the case to implicate the following legal issues:

(i)     Whether Plaintiffs can establish that a class can be certified under Federal Rule of Civil Procedure 23 in light of the individualized issues and substantial consumer benefits that are apparent even on the face of Plaintiffs' Complaint;

(ii)    Whether Plaintiffs can establish an "EV-only" foremarket;

(iii)   Whether Plaintiffs can establish that Tesla has substantial market power in any cognizable foremarket;

(iv)    Whether Plaintiffs can establish cognizable single-brand aftermarkets for Tesla repair services or non-OEM Tesla parts or whether those services and parts are part of the broader market for the sale or lease of passenger vehicles;

(v)     Whether Plaintiffs can establish that Tesla's conduct was unlawful under any applicable antitrust standard;

(vi)    Whether the enormous procompetitive benefits that have emerged from Tesla's growth and innovation outweigh any alleged anticompetitive harms that Plaintiffs may identify;

(vii)   Whether Plaintiffs' claim are barred, in whole or in part, by the Sherman Act's statute-of-limitations;

(viii)  Whether Plaintiffs' claims and those of putative class members are barred, in whole or in part, because the claims are subject to arbitration or another form of alternative dispute resolution.

**4.   Motions**

There is currently only one pending motion: Plaintiffs' Motion Requesting Leave to Move for Reconsideration of Arbitration Order filed on July 16, 2024. *See* Dkt. 175.

**PLAINTIFFS STATE:**

As discussed in Sections 8 and 15 below, there are also discovery-related motions that can be reasonably anticipated given the positions the Parties have already taken in correspondence and in meet

and confers.  These motions will be brought before Magistrate Kang in accordance with the Court's July 25, 2024 Order of Reference.  (Dkt. 181.)

In addition, after receiving sufficient discovery, Plaintiffs intend to file a motion for class certification and will consider the appropriateness of further dispositive motion practice.

**TESLA STATES:**

Tesla remains committed to conferring in good faith about discovery-related issues, so it is disappointed that Plaintiffs already anticipate discovery-related motions.  Tesla is unaware of any issue requiring motion practice.  Tesla intends to oppose Plaintiffs' motion for class certification and expects to file a motion for summary judgment if necessary.

**5.** **Amendment of Pleadings**

**PLAINTIFFS STATE:**  Plaintiffs currently have no intention of future pleading amendments, though they reserve the right to amend their complaint if and when they discover facts justifying or requiring amendment.  Tesla's suggestion that Plaintiffs' last day to amend the complaint be set for October 29, 2024 ignores that Tesla has only just recently started producing documents and has indicated that it will need until that day to substantially complete its production in response to Plaintiffs' first requests for production of documents. There is no cause to abridge Plaintiffs' rights to amend in this way.

**TESLA STATES:**  The Court should set a deadline of October 29, 2024 for Plaintiffs to amend their Complaint.

**6.** **Evidence Preservation**

The Parties certify that their counsel have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and confirm that they met and conferred pursuant to Federal Rule of Civil Procedure 26(f) on May 24, 2023 (the "Rule 26(f) conference").  Discussion of the matters raised in the Rule 26(f) conference are ongoing.

**7.  Disclosures**

The Parties exchanged initial disclosures on July 10, 2023.

**TESLA STATES**:  Shortly after the discovery stay was lifted in this case, Tesla reached out to Plaintiffs to explain that Plaintiffs' initial disclosures were deficient because they failed to provide a damages calculation.  Plaintiffs then served amended Initial Disclosures on August 1, 2024.  Those disclosures remain deficient.  In particular, Plaintiffs' damages disclosures list only three generic categories of damages and two broadly formulated damages theories, devoid of any computation, even for the named plaintiffs.  The parties had a lead trial counsel's meeting per Magistrate Judge Kang's standing order on September 6, 2024, and Plaintiffs informed Tesla on the date of this filing that they will be serving a set of amended disclosures later today.  Tesla will review the amended disclosures promptly and, if necessary, seek to meet and confer further with Plaintiffs.

**PLAINTIFFS STATE**: Plaintiffs' initial disclosures are not and have never been deficient.  On July 19, 2024—*i.e.*, over one year after Plaintiffs' served their initial disclosures, Tesla reached out to Plaintiffs complaining that their computation of damages was insufficient. Plaintiffs did not include a computation of damages because, as explained in the disclosures themselves, any such computation will necessarily rely on discovery—including expert discovery—which had not yet commenced. In particular, as in every antitrust class action, Plaintiffs intend to prove damages class-wide on an aggregate basis using transactional data not in Plaintiffs' possession, custody, or control and not yet produced by Tesla. As the commentary to Rule 26 itself notes, a party is not expected to provide a calculation of damages when that calculation depends on information in the possession of another party. Plaintiffs have met and conferred with Tesla on this issue and will continue to do so.

**8.  Discovery**

On June 28, 2024, the Court entered a Revised Case Management and Scheduling Order which, among other things, ordered "Substantial Completion of Production of Documents Responsive to First Set of Requests for Production" on "October 1, 2024" or "October 29, 2024 (if needed)."  *See* Dkt. 167. It also set the Fact Discovery Cut-Off at July 25, 2025.  *Id*.

The Parties have agreed upon a Joint Proposed Discovery Plan (Dkt. 179) and a Stipulated Protocol for Discovery of Electronically Stored Information and Paper Documents and Search Methodology (Dkt. 187).

### a) Discovery by Plaintiffs

Plaintiffs' First Set of Requests for Production to Defendant Tesla Inc. were served on November 3, 2023, but discovery was subsequently stayed on December 8, 2023 (Dkt. 132). This first set of requests contained 61 Requests for Production.

- On July 17, 2024, Tesla timely served its Responses and Objections to Plaintiffs' First Set of RFPs.
- On July 26, 2024, at Tesla's invitation, Plaintiffs identified priority RFPs that it viewed as related to a forthcoming motion for class certification.
- The parties met and conferred regarding all priority RFPs raised by Plaintiffs and Tesla's objections and responses thereto on August 2, 2024, August 5, 2024, August 26, 2024, and September 11, 2024.
    - o The Parties are continuing to meet and confer regarding Tesla's objections and responses.
    - o Plaintiffs have identified 23 RFPs as "priority" RFPs (*i.e.*, related to class certification expert report due on December 20, 2024).
- Tesla has made four productions of documents: September 5, 2024, September 6, 2024, September 16, 2024 and September 19, 2024.

Before the Fact Discovery Cut-Off, Plaintiffs intend to serve Tesla with additional sets of requests for production, interrogatories, and requests for admission.

### b) Discovery by Tesla

Tesla served each of the named Plaintiffs with a first set of requests for production on July 22, 2024. Plaintiffs Lambrix and Nana-Anyangwe were each served with 30 RFPs; Plaintiffs Adjuder, Bose, Doyle, and Pratti were each served with 28 RFPs.

- On August 21, 2024, each of the Plaintiffs timely served their objections and responses to Tesla's first set of RFPs.

- The Parties met and conferred regarding these RFPs and Plaintiffs' respective objections and responses thereto on August 26, 2024 and August 27, 2024. Plaintiffs agreed to search for and produce documents responsive to Tesla's requests.

- The six named Plaintiffs made a production of documents on September 5, 2024.
    - Plaintiffs intend to make additional productions.

Tesla served each of the named Plaintiffs with a first set of interrogatories on July 22, 2024. Each set contained eight interrogatories

- On August 28, 2024, after Tesla agreed to a one-week extension, Plaintiffs each served their respective objections and responses to Tesla's first set of interrogatories.  Tesla's review of Plaintiffs' responses are ongoing, and the parties will meet and confer should a need arise.

Tesla served Plaintiffs Bose and Pratti with a first set of requests for admission on September 12, 2024.  Each set contained only one RFA.

- Objections and responses to these first sets of RFAs are due on October 12, 2024.

**c) Non Party Discovery**

The Parties agree that at least some nonparty discovery will be required in this case.  *See* Dkt. 179.

**PLAINTIFFS STATE:**  Nonparty discovery has not yet been sought because the scope of that discovery will be largely dictated by the discovery available from the Parties themselves.  For example, Plaintiffs' need to obtain transactional data from Tesla-authorized collision centers will depend on what transactional data Tesla maintains, if any, regarding purchases of Tesla Repair Services and Tesla-Compatible Parts from Tesla-authorized collision centers. However, Tesla has failed to provide any information regarding the transactional data it maintains and intends to produce. As a result, while Plaintiffs were hoping to avoid subpoenaing these nonparties in order to obtain the transactional data needed, Plaintiffs have no choice but to do so and plan to subpoena such entities imminently.

**TESLA STATES:**   Tesla is actively researching publicly-available information to minimize the burden of discovery on nonparties, but anticipates that some nonparty discovery will be necessary.   Tesla

anticipates serving discovery on certain nonparties in the coming days and will keep the Court apprised of any disputes that threaten to delay the case schedule.

### d) Discovery Disputes

**PLAINTIFFS STATE**: Plaintiffs have identified multiple potential discovery disputes and are currently awaiting a response to their demand for a lead trial counsel meeting pursuant to Section H of Magistrate Kang's Standing Order for Discovery in Civil Cases in connection with Tesla's position that it will not be substantially complete production of documents responsive to all Requests in Plaintiffs' first set of RFPs by October 1, 2024 or October 29, 2024.

**TESLA STATES**: Tesla remains committed to conferring with Plaintiffs in good-faith to resolve potential discovery disputes without the need for motions practice. The "dispute" Plaintiffs have raised is manufactured, is not a dispute at all, and does not warrant burdening the Court.

### 9. Class Actions

Plaintiffs have brought their respective cases on behalf themselves and a proposed Class defined as: All persons or entities in the United States who paid for Tesla Repair Services or Tesla-Compatible Parts from March 2019 to the present (the "Class Period").

The Court has ordered a schedule related to class certification and related expert reports. (*See* Dkt. 167.)

The Parties have reviewed the Procedural Guidance for Class Action Settlements.

### 10. Related Cases

There are currently six related cases pending before this Court. These cases are:

(1) *Lambrix v. Tesla, Inc.*, 3:23-cv-01145-TLT (lead case);

(2) *Orendain v. Tesla, Inc.*, 3:23-cv-01157-TLT;

(3) *Bose v. Tesla, Inc.*, 3:23-cv-01496-TLT;

(4) *Doyle v. Tesla, Inc.*, 3:23-cv-1543-TLT;

(5) *Nana-Anyangwe v. Tesla, Inc.*, 23-cv-2035-TLT; and

(6) *Ragone v. Tesla, Inc.*, 5:23-cv-02352-TLT.

**11. <u>Relief</u>**

**<u>PLAINTIFFS STATE</u>:**

Each of the Plaintiffs seek the same or nearly the same relief, namely that the Court:

(a) Certify a nationwide class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b) Adjudge and decree that the misconduct alleged violates Sections 1 and 2 of the Sherman Act, and Section 102(c) of the Magnuson-Moss Warranty Act;

(c) Grant injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the proposed class, including, among other things (i) an order permanently enjoining and restraining Tesla, and its officers, directors, agents, servants, employees, attorneys and all other persons acting or claiming to act on their behalf from continuing to engage in the wrongful acts alleged in the complaints and (ii) requiring Tesla to provide access to manuals, diagnostic tools, and vehicle telematic data, at a reasonable cost, to individuals and independent repair shots;

(d) Award damages to Plaintiffs and the proposed class to the maximum amount allowed, and that judgment in favor of Plaintiffs and the proposed class be entered against Tesla in an amount to be trebled to the extent the law permits;

(e) Award pre- and post-judgment interest, as provided by law, and that such interest be awarded at the highest legal rate from and after the date of services of the complaints;

(f) Award plaintiffs and the proposed class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(g) Grant such other further relief as the Court deems appropriate.

Plaintiffs seek to recover all damages flowing from Tesla's alleged misconduct, including at least the following: (a) overcharges paid for Tesla Repair Services and Tesla-Compatible Parts (calculated as the difference between the amounts paid by the proposed class for Tesla Repair Services and Tesla-Compatible Parts during the proposed class period to and the amounts they would have paid for such Tesla Repair Services and Tesla-Compatible Parts absent Tesla's anticompetitive conduct); and (b) injuries to the proposed class caused by the wait times for Tesla Repair Services and Tesla- Compatible

Parts in excess of the wait times the proposed class would have experienced absent Tesla's anticompetitive conduct. The amount of such damages cannot be calculated at this time because the information needed to perform such calculations is not within Plaintiffs' possession, custody, or control and will instead be obtained through discovery.

**TESLA STATES:**

Plaintiffs are not entitled to any relief in this case. Tesla reserves the right to seek recovery of all costs and fees to the maximum extent permitted under the law.

**12. Settlement and ADR**

The Parties submitted a Stipulation and Proposed Order Selecting ADR Process on November 15, 2023. (Dkt. 120.) They selected to participate in Mediation under ADR L.R. 6 and have been ordered by the Court to complete this process by November 24, 2025. (Dkt. 167.)

**13. Other References**

The Parties do not believe these cases are suitable for reference to a special master or the Judicial Panel on Multidistrict Litigation.

The Court granted Defendant's Motion to Compel Arbitration pertaining to Plaintiffs Thys, Phillips, and Stoffal on September 27, 2023 (Dkt. 112), and the Parties stipulated and it was later ordered that the Court's arbitration order applied to Plaintiffs' Ferreira and Shore, though the parties reserved appellate rights as to same (Dkt. 133).

**14. Narrowing of Issues**

Now that the Court has issued its motion to dismiss order (Dkt. 156), the Parties will meet and confer regarding ways to narrow the legal issues raised in this action.

The Parties do not believe these cases are of the type to be handled under the Expedited Trial Procedure of General Order 64, Attachment A.

**15. Scheduling**

The Court entered a Revised Case Management and Scheduling Order on June 28, 2024. (Dkt. 167.)

**PLAINTIFFS STATE**:

On June 28, 2024, the Court ordered that "Substantial Completion of Production of Documents Responsive to First Set of Requests for Production" be completed by October 1, 2024.[1] (Dkt. 167 (the "Revised Case Management and Scheduling Order").) Because Tesla expressed reservations regarding its ability to meet this deadline at the last case status conference, the Court indicated both at the conference and in the Revised Case Management and Scheduling Order that Tesla may be granted an extension of this deadline until October 29, 2024 "if needed." *Id.* At the same status conference, Plaintiffs requested that they receive a commensurate extension of all class certification-related deadlines in the event Tesla was given the extension, which the Court acknowledged and indicated it would address at the next status conference (*i.e.*, the upcoming status conference scheduled for September 26, 2024) in the event Tesla in fact needed the October 29, 2024 extension.

Tesla has since taken the position that, not only does it need the October 29, 2024 extension, but that Tesla also has interpreted the Court's Revised Case Management and Scheduling Order as ordering that Tesla need only substantially complete production of documents responsive to certain "priority" RFPs. *See, e.g.,* Letter from D. Gringer, Sept. 11, 2024, at pg. 2 ("Tesla will use its best efforts to produce documents related to Plaintiffs' priority RFPs (subject to its objections and as narrowed through the ongoing meet and confer process), by October 1, 2024."); email from D. Gringer, Sept. 17, 2024 ("[Tesla is] comfortable now stating that we can be substantially complete with the priority requests by the "if needed" deadline of 10/29."). This position is not consistent with the plain language of the Revised Case Management and Scheduling Order or the Court's instructions at the last status conference.  (Dkt. 167.)

---

[1] While the Court did not explicitly specify that this provision applied only to Plaintiffs' first set of RFPs directed to Tesla, Tesla had not yet served a first set of RFPs as of the date of that order. Therefore, Plaintiffs have interpreted this provision to apply only to Plaintiffs' first set of RFPs directed to Tesla. Tesla states that this position is "outrageous" because a prior proposed schedule proposed a deadline for "Substantial Completion of Documents Responsive to *Each Side's* First Set of Requests for Production." (emphasis by Tesla). The fact that the Court was asked to enter an order that used the language "Each Side's" but decided not to include that language is in fact indicative that the Court made a conscious decision not to hold Plaintiffs to a substantial completion date for discovery that had not yet been served. The Court did not know when it would be served, Nor did the Court know how broad it would be.

In any event, Plaintiffs are nonetheless concerned that Tesla has not and will not timely produce all the discovery Plaintiffs are entitled to and need for purposes of class certification. The reasons for this concern are twofold.

**1. Not Only Has Tesla Failed to Produce Any of the Transactional Data Plaintiffs' Experts Require for Their Class Certification Opening Report, Tesla Has Yet to Even Tell Plaintiffs What Transactional Data it Maintains.**

First, as Plaintiffs have repeatedly made clear to Tesla, the most critical request for production made by Plaintiffs is currently the request for the transactional data upon which Plaintiffs' experts intend to base their opening class certification expert report.[2] This transactional data is what Plaintiffs' experts will primarily rely upon in drafting their report. In addition, Plaintiffs identified 23 out of Plaintiffs' first set of 61 RFPs (inclusive of transactional data-related requests) as "priority" requests because they potentially relate to class certification, with the hope that issues related to these requests could be resolved first. At no time did Plaintiffs indicate or agree that, by identifying these "priority" requests, Plaintiffs were agreeing with Tesla to modify the Court's Revised Case Management and Scheduling Order (Dkt. 167) requiring that Tesla substantially complete production of documents responsive to Plaintiffs' first set of RFPs by October 1, 2024. In fact, the Court's order specifically states: "No provision of this order may be changed except by written order of this Court upon its own motion or upon motion of one or more parties made pursuant to Civil Local Rule 7-11 with a showing of good cause." *Id*. at *3.

Despite the impending substantial completion deadline and repeated requests from Plaintiffs, Tesla has failed to provide even the most basic information regarding the transactional databases it keeps and the fields those databases maintain. This is standard information that poses no burden to share and is typically provided quickly at the start of all antitrust class actions so that the parties can efficiently negotiate the scope of production. While Tesla has agreed to share this information with Plaintiffs, it has

---

[2] *See, e.g.*, Letter from M. Ruan, Aug. 29, 2024, at pg. 1 ("Because the next major deadline in the Court's schedule is Plaintiffs' opening expert report regarding class certification due on December 20, 2024, Plaintiffs have agreed to prioritize discussion of those RFPs related to class certification in the Parties' meet and confers. *The most important of these Requests is RFP 24, which seeks **transactional data** concerning the EVs, repair services, and parts at issue in this case.* However, until the Court orders otherwise, Tesla must still substantially complete production of *all* documents responsive to *all* RFPs by October 1, 2024.") (emphasis added).

yet to do so despite 321 days having passed since Plaintiffs served their first set of RFPs and 94 days since the discovery stay was lifted.

In contrast, there are only 93 days until Plaintiffs' class certification expert opening report is due on December 20, 2024. That means, even if Tesla produced all the transactional data and other documents Plaintiffs and their experts require for class certification today, Plaintiffs would have one fewer day to review, analyze, and draft an expert report utilizing the information contained in those materials than it took Tesla to produce them (or, more accurately, to simply ask the proper employees what transactional data it maintains and report back to Plaintiffs). And that assumes that the transactional data Tesla produces will be complete and that Plaintiffs will not need to query Tesla about its data or take a Rule 30(b)(6) to understand the data.[3] For example, if the transactional data produced does not encompass purchases of Tesla Repair Services and Tesla-Compatible Parts from Tesla-authorized collision centers, Plaintiffs would have fewer than 93 days to obtain such transactional data from nonparties through subpoenas and then incorporate the responsive data and documents into their analysis.

Tesla's position statement claims that Plaintiffs' concerns regarding the pace at which Tesla has produced documents is "untethered from reality," pointing to its production of almost 76,000 pages of documents. What Tesla fails to mention is that 65,000 of those pages were not produced until three days ago and 6,000 of those pages were produced this very evening. While Plaintiffs have not yet had an opportunity to substantively review the two most recent productions, Plaintiffs note that at least 75% of the production (more than 50,000 of the approximately 65,000 pages) is comprised of parts manuals and owner's manuals—"go-get" documents that were just produced for purposes other than to respond diligently to Plaintiffs' priority requests. Similarly, Tesla's first production of documents on September 5, 2024 was only made after Plaintiffs produced documents to Tesla earlier that same day[4], and comprised

---

[3] Plaintiffs intend to serve Tesla with a Rule 30(b)(6) notice that includes a topic regarding these issues and have requested dates for Tesla to produce a corporate designee.

[4] Plaintiffs served their first set of RFPs on November 3, 2023 and the discovery stay was lifted on June 17, 2024.  Tesla did not serve their first set of RFPs until July 22, 2024 – 262 days after Plaintiffs' served their first set of RFPs – yet on September 5, 2024, Plaintiffs were the first Party to produce documents and Tesla clearly hurried to produce documents that same day.

4,564 pages of documents—85% of which were publicly available SEC filings.[5]

Tesla's position statement also disingenuously tells the Court that it produced "107,326 lines of data," hoping to create the false impression that Tesla has at least begun producing the transactional data it knows Plaintiffs and their experts need, and which Tesla's experts likely have had access to from the very outset of this litigation. But as Tesla's production letter itself states, what was actually produced was "an employee headcount report" that Tesla produced in lieu of organizational charts. To refer to this as "data" is, at best, misleading.

A "substantial completion" deadline does not mean that Plaintiffs should have to wait until that date to receive any meaningful discovery. This issue is amplified by the fact that Tesla is now taking the position that it need only substantially complete production of documents responsive to "priority" RFPs, rather than the complete first set of RFPs as ordered by Court.[6] (Dkt. 167.) Simply put: even with a substantial completion deadline of October 1, 2024 or October 29, 2024, Plaintiffs expected to receive much more discovery from Tesla—in particular, transactional data and documents responsive to their "priority" RFPs needed for class certification—by this stage of the litigation.

> **2. Tesla Has Been Limiting the Discovery It is Willing to Produce, Not Based on Relevance or Proportionality, But Rather on Its Ability to Review Them Prior to the Substantial Completion Deadline.**

Second, the Parties' current state of negotiations indicate that motion practice will almost certainly be necessary before Plaintiffs will be able to submit their class certification opening expert report. Tesla has indicated that, due to time constraints, it is not utilizing technology-assisted review such as predictive coding. Instead, Tesla is utilizing search terms to identify responsive documents, which Tesla maintains it will need to review manually for relevance and privilege before producing. But rather

---

[5] As Plaintiffs already informed Tesla, Plaintiffs requested documents relating to Tesla's financial statements as a contingency in the event certain categories of transactional data were unavailable, and suggested that the Parties meet and confer about this request after Tesla produced transactional data.

[6] Tesla's misinterpretation of the Court's Revised Case Management and Scheduling Order is also why Tesla claims it is somehow inconsistent that Plaintiffs would agree to prioritize certain RFPs they need for class certification while also expecting Tesla to comply with the substantial completion deadline. There is no inconsistency between those two positions unless one misinterprets the Revised Case Management and Scheduling Order as permitting Tesla to limit substantial completion to "priority" RFPs.

than making search-term decisions based on their potential to hit upon responsive documents, Tesla has instead been making such decisions based purely on the number of documents those search terms hit upon (and without even disclosing to Plaintiffs which terms in fact generated the supposedly "high" numbers). That is because, as Tesla acknowledged more than once in the course of meeting and conferring with Plaintiffs, the number of documents it is willing to produce depends not on the *number of relevant/responsive documents* that exist but rather on the amount of *time* Tesla has to produce them because, despite having negotiated a clawback provision in the ESI Protocol (*see* Dkt. 182 at 12-13), Tesla insists upon manually reviewing all documents that hit the agreed upon search terms for privilege and responsiveness prior to production.[7] Thus, Tesla is eschewing potentially responsive documents, prioritizing instead a *timely* production over a *defensible* production. For whatever reason, Tesla refuses to ask the Court for the time it needs to comply with the Federal Rules of Civil Procedure.

For these reasons, if the Court grants Tesla an extension until October 29, 2024 for substantial completion, shifting the remaining deadlines back 28 days such that the deadline for Plaintiffs' class certification expert report moves from December 20, 2024 to January 17, 2025—a shift largely subsumed by the holiday season—is of little solace to Plaintiffs. Rather, given the substantial delays Plaintiffs have already experienced in obtaining the documents and transactional data needed for class certification, as well as the likely delays associated with the anticipated motions to compel, a more realistic extension for Plaintiffs' class certification expert report and all other class certification-related deadlines is warranted. Another alternative, as Plaintiffs proposed during the last CMC, would be to combine class certification and merits reports and to adjust all deadlines in accordance therewith. Such a change would potentially allow the Parties the additional time they need to complete discovery while also keeping the Court's June

---

[7] Tesla's position statement states that Plaintiffs' have suggested that Tesla produce documents without reviewing them for privilege. This is incorrect. Plaintiffs' position is that Tesla need not conduct a manual, document-by-document privilege review of every collected document; rather, Tesla should utilize technology assisted review or search terms to identify, isolate, then review potentially protected documents. This is but one example of topics that Plaintiffs attempted to address in the ESI protocol, but that Tesla refused and decided instead to kick the can down the road. As Plaintiffs anticipated, this has resulted in inefficiencies and wasted efforts which will likely need to be litigated in front of Magistrate Kang.

15, 2026 trial date. At the Court's discretion, Plaintiffs could propose alternative schedules adopting one or both of these approaches.

**TESLA STATES**:

Tesla had expected to use this joint case-management statement to (1) update the Court on the significant progress the parties have made in response to Plaintiffs' 61 Requests for Production; (2) inform the Court that the parties do in fact need the additional time provided by the Scheduling Order's alternative, "as needed" substantial-completion deadline of October 29, but that they do not anticipate needing any additional time for substantial completion of documents based on the current scope of agreed-upon productions; and (3) propose that the parties confer after the October 29 deadline to determine whether any further modifications to the schedule are necessary.  But because Plaintiffs have decided to accuse Tesla of indolence and claim that drastic changes to the schedule are already necessary, Tesla has no choice but to correct the record.

So far, Tesla has produced roughly 76,000 pages of documents from at least nine Tesla custodians and 107,236 lines of data, while the six named plaintiffs have produced just about 100 documents.  All of these produced documents, moreover, are documents that Tesla found while searching for documents responsive to RFPs that Plaintiffs have identified as priorities for class certification.  And Tesla continues to confer with Plaintiffs in good faith, collect documents, and prepare additional rolling productions—with at least one additional and larger production anticipated by October 1.  Plaintiffs now complain that portions of the produced materials were "SEC filings" and "parts manuals and owner's manuals."  But those documents are squarely responsive to RFPs seeking "documents sufficient to Identify each Tesla-Compatible Part"; "documents sufficient to Identify all manuals;" and documents relating to "public annual, quarterly, and monthly financial statements."  To the extent Plaintiffs now view those materials as irrelevant, it is unfortunate that they served those requests.  To be sure, there remains work to be done; as discussed during the last case-management conference, many of Plaintiffs' RFPs (including priority ones) are extraordinarily broad, so they require the parties to work together to identify a reasonable scope, and then require Tesla to collect, review,

and produce large swaths of documents.[8]  This takes time.  Plaintiffs' complaints that Tesla is not producing documents *faster* are untethered from that reality.  Indeed, Plaintiffs go as far as to say that Tesla should be producing documents before it reviews them for privilege—a suggestion that is, for a case of this magnitude, stunning.  Plaintiffs have subsequently tried to retreat from that suggestion by claiming that their position is merely that Tesla should employ efficiencies like "search terms to identify, isolate, then review potentially protected documents."  That is precisely what Tesla is doing.

In reality, Plaintiffs' request for drastic changes is an attempt to cover for their own inactivity and disorganization.  Tesla could not actually produce documents in this case until three weeks ago because an ESI protocol was not entered until August 26.  This was the result of Plaintiffs' approach to ESI protocol negotiations, in which they proposed an ESI protocol that was more than ten times the length of the model ESI protocol for the Northern District of California and attempted to micromanage each element of Tesla's discovery process.  Now that the parties have come to agreement on a more reasonable ESI protocol that the Court has entered, Tesla has produced tens of thousands of pages of discovery.  By contrast, Plaintiffs have produced only about 100 pages of documents (49 documents) in total among *six* named plaintiffs—a small fraction of the scope of material that Tesla sought in its RFPs.  And Plaintiffs have taken the position that the Court's substantial-completion deadline applies only to Tesla, not them.  That is an outrageous position given the clarity of the Court's Order, *see* Dkt. 167 (as amended by Dkt. 170), and the Parties' own prior joint case-management statement, which proposed a deadline for "Substantial Completion of Documents Responsive to *Each Side*'s First Set of Requests for Production," *see* Dkt. 161 at 3 (emphasis added).  Plaintiffs were promptly served Tesla's RFPs on July 22—over three months before the October 29 as-needed deadline.  There is no conceivable reason Plaintiffs cannot meet that deadline.  In all events, regardless of the formal deadline, Plaintiffs have not committed to *any* timeline for substantially completing their productions, even though their production obligations are far more manageable than Tesla's.  That position is untenable under Plaintiffs' own logic, given that Tesla's targeted discovery requests are—just like the priority

---

[8] For example, Plaintiffs request *all communications* between anyone at Tesla and *any other person* regarding difficulties in repairing EVs or obtaining parts (RFP 48).

Plaintiff RFPs—designed to obtain documents and information that are highly relevant to class certification.

Beyond this lack of diligence,  Plaintiffs' approach to discovery has created significant inefficiencies, as Tesla explained to Plaintiffs in a September 11 letter.  Over the course of roughly a half-dozen meet-and-confers, Plaintiffs have consistently been represented by five to ten attorneys across several different law firms.  From this larger group, Plaintiffs have rotated the role of lead representative—creating confusion about whose word is authoritative.  And on more than one occasion, members of the Plaintiffs' group have contradicted one another on the same subject matter.  For example, for several RFPs, certain of Plaintiffs' lawyers have asserted that Tesla must produce documents dating back to the company's founding in 2003, even though the RFPs themselves do not seek documents going back that far.  Likewise, as noted, across three separate meet-and-confers in August, Plaintiffs purported to identify the RFPs that are priorities for class certification, but then in an August 29 letter, they turned around and claimed that they expect Tesla to *all* documents responsive to *all* RFPs by October 1.  As Tesla explained in its September 11 letter, this scattershot approach to discovery and abandonment of prior positions only serves to delay.

As to data, below is the RFP Plaintiffs served, which they now claim supports a request for transactional data and information about data:

> *All **Documents**, including, **without limitation**, transactional data that is contained in Your financial and accounting systems and databases, in which You have recorded the details of Your EV, Tesla Repair Services, and/or Tesla-Compatible Parts businesses: including, but not limited to, **the following categories of documents** and transactional data:*
> *(A) Research and development costs (organized by month, quarter, or year);*
> *(B) Plant and equipment investment, capacity, and utilization rates;*
> *(C) Detailed financial records (e.g., general ledger data, balance sheets, income statements);*
> *(F) Profits, losses, and margins (gross and net);*
> *(G) Cost tables;*
> *(H) Raw materials, labor, manufacturing, and general overhead, and any other fixed and variable costs;*
> *(I) Average costs ;*
> *(J) Detailed customer information, including, but not limited to, tax identification number, customer number, products sold, quantity sold, net and gross price charged, sold-to name, and ship-to name and address, sales terms, ship to and sold to parent company, and identification of subsidiaries, affiliates, and joint ventures; and*

*(K) The prices You charged and the prices Your customers paid , including any discounts, rebates, or other payments, invoice and ship date, product descriptions, unit price information currency, transportation charges or terms, surcharges, or any other charges, costs per unit or transaction, invoice number and invoice line-item number (M) Bids (e.g., submissions in response to Requests for Quotations or "RFQs")and other prices You submitted to Your customers or potential customers (including, but not limited to, OEMs and Tier suppliers) to produce and supply Tesla-Compatible Parts.*

This Request, bizarrely missing subparts (d), (e), and (l), is as incomprehensible as it is overbroad. Tesla should be commended for working with Plaintiffs on identifying responsive information, not castigated for not immediately complying with a Request for every transaction the company has ever made.  Had Tesla chosen to object and stand on its wholesale objection to this blunderbuss Request, it surely would have been sustained.  Tesla will instead continue to meet and confer regarding its objections to this Request, and assess if and how it can reasonably respond.

Likewise, Plaintiffs are wrong in arguing that Tesla is violating the Revised Scheduling Order by declining to commit to produce *all* responsive documents to *all* 61 RFPs by the substantial-completion deadline.  On its face, a deadline for "*substantial* completion" (Dkt. 167 at 2) does not require "*full*" or "*total*" completion.  Consistent with that understanding, at the June 27 case-management conference, the Court encouraged the Parties to work to narrow and prioritize the RFPs for the October 1/29 deadline.  Across multiple meet-and-confers in August, Plaintiffs themselves appeared to understand that instruction, agreeing to prioritize requests relevant to class certification so that those documents would be produced by the substantial-completion deadline.  Plaintiffs' more recent position reflected in this joint statement reflects an abandonment of that prior position.  Moreover, as Plaintiffs well know, Tesla asserted timely objections to the non-priority RFPs on the bases of scope, relevance, and proportional need (among others).  Tesla has repeatedly informed Plaintiffs (including as recently as two days ago, September 17) that it is prepared to confer about non-priority RFPs when Plaintiffs choose to do so.  To date, however, Plaintiffs have focused all meet-and-confers exclusively on priority requests.  Against this backdrop, Plaintiffs' claim that Tesla is violating the Scheduling Order falls entirely flat.  Tesla has not agreed to produce responsive documents to these

non-priority RFPs absent further conferring of the parties, and thus its productions in response to the priority requests will constitute substantial completion.

Tesla does not intend to burden the Court with exhaustive responses to Plaintiffs' remaining grievances because those issues are best raised in further meet-and-confers, or if necessary, before Magistrate Judge Kang. One of Plaintiffs' most specious claims require brief discussion, though. The parties have not "only begun" discussing search terms. Tesla proposed terms nearly a month ago, on August 22, after Plaintiffs had identified its priority RFPs and before the ESI protocol was entered in the case on August 26. Those proposed terms were crafted specifically to address the substance of those RFPs, not "purely the number of documents those search terms hit upon." Plaintiffs proposed revisions to the search terms proved to be vastly overbroad: They hit on 1,540,382 documents with families. Tesla's counterproposals, which Tesla sent to Plaintiffs on September 11 and 13, incorporated some of Plaintiffs' suggestions, while simultaneously balancing the need to avoid overbreadth. Plaintiffs provided another set of counterproposals yesterday, which hit on 1,152,215 documents. The parties' discussions on this issue remain ongoing, and (contrary to Plaintiffs' suggestions) Tesla at least hopes that the parties can avoid motion practice.

According to Plaintiffs, resort to the October 29 "as needed" deadline requires significant unidentified revisions to the rest of the case schedule. Tesla's understanding from the June 27, 2024 case-management conference was that the Court crafted the October 29 alternative deadline based on its understanding that it would *not* require further revisions to other deadlines. As of now, Tesla sees no reason why an October 29 substantial completion deadline would require further changes to the schedule. Tesla repeatedly encouraged Plaintiffs to serve more tailored and focused discovery and Plaintiffs have refused. Nonetheless, Tesla has repeatedly offered to confer with Plaintiffs if they feel changes are needed, to discuss and understand why they believe that is necessary and the changes they believe are appropriate.

**16. Trial**

Plaintiffs have all demanded a jury trial.  The Parties agree it is difficult to estimate the length of a trial (if any) at this stage of the litigation.

**17. Disclosure of Non-Party Interested Entities or Person**

The Parties are not aware of any non-party interested entities or persons.  The Parties have all filed a "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15.

**18. Professional Conduct**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.


Dated: Sept. 19, 2024                    */s/ Matthew W. Ruan*

                                        Matthew W. Ruan
                                        **FREED KANNER LONDON & MILLEN LLC**
                                        *Counsel for Plaintiffs and Interim Lead Class Counsel for the Proposed Class*


                                        R. Alexander Saveri
                                        **SAVERI & SAVERI, INC.**
                                        *Counsel for Plaintiffs and Interim Liaison Counsel for the Proposed Class*


Dated: Sept. 19, 2024                    */s/ David Gringer*

                                        David Gringer
                                        Ari Holtzblatt
                                        Allison Bingxue Que
                                        **WILMER CUTLER PICKERING HALE AND DORR LLP**

                                        Christopher C. Wheeler
                                        **FARELLA BRAUN + MARTEL LLP**

                                        *Counsel for Defendant Tesla, Inc.*

**E-FILING ATTESTATION**

I, Matthew W Ruan, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Matthew W. Ruan*